IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES KRIK, | ) | **MDL No. 875** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No.  11-CV-63473 |
| | ) | |
| BP AMERICA, INC., et al., | ) | |
| | ) | |
| Defendants | ) | |

## <u>DEFENDANT WEIL-McLAIN'S WITNESS DISCLOSURE</u>

Defendant, Weil-McLain, discloses the following lay witnesses who may testify at trial in this matter:

**1.**     **Paul H. Schuekle, , P.E., Director, Technical Services of Weil-McLain.**

Mr. Schuelke will testify regarding the corporate history, product line, sale and distribution, installation, maintenance, repair and dismantling of Weil-McLain products.

**2.**     Any and all fact witnesses disclosed by Plaintiff or any Codefendant.

Defendant, Weil-McLain, discloses the following controlled expert witnesses who may testify at trial in this matter:

**1.**     **<u>FREDERICK WILLIAM BOELTER, C.I.H.</u>**
        **333 W. Wacker Drive, Suite 2700**
        **Chicago, IL  60606**

Mr. Boelter is a certified industrial hygienist and registered professional engineer.  He will provide testimony regarding his experience and his testing of this defendant's products or type of products and will provide opinions that these products have been used safely in a workplace environment, that they are not unreasonably dangerous, that they do not pose an occupational hazard and that no warning label is required to be placed on them.

He will give testimony on the fiber release from this defendant's products in the occupational setting.  He will testify regarding exposure assessments performed on this defendant's products or similar products, including assessments and testing he has performed on this defendant's products.

He has been or will be provided with product exposure information and other case specific data in this case, including, but not limited to, plaintiff's(s') deposition (s) and co-worker depositions.  He will review plaintiff's(s') exposures, if any, to this defendant's products as well as plaintiff's(s') exposure to

other manufacturers' products.  He will quantify plaintiff's exposure to the asbestos-containing products of this defendant, as well as exposures to asbestos containing products manufactured by other companies, and provide opinions regarding the significance of each exposure.  He has also reviewed and will rely upon air sampling data and other literature regarding exposure to other asbestos-containing products.   He will discuss historical uses of both Weil-McLain's and other companies' asbestos containing products and how they are manufactured.  He will quantify exposures to all asbestos-containing products to which plaintiff(s)  may have been exposed and discuss the distinction between friable and non-friable products.  Mr. Boelter's opinion is that Weil-McLain's products do not create an occupational hazard. Mr. Boelter will testify that foreseeable use of Weil-McLain's products does not cause any occupational hazard.  He will provide testimony about the type of asbestos fiber and other fiber used in this defendant's products as applicable to this case.  He will also testify about the types of asbestos fibers found in other companies' products.

He will discuss ambient air exposure to asbestos, the sources of ambient air asbestos exposure, quantification studies and the presence of asbestos in drinking water and provide his opinion that these exposures, if any, are not harmful or hazardous.  He may discuss reentrainment and fiber drift.

He will further provide testimony about the role of the industrial hygienist in assessing risk, generally, and with respect to asbestos-containing products.  He will provide current and historical information regarding air and dust sampling methods for asbestos in occupational settings, including, but not limited to, the NIOSH 7400 and 7402 methods, the OSHA reference method, as well as EPA, AHERA and ASTM methods.  He will provide expert testimony on the proper use and application of all such methodology.  He will also provide testimony regarding the proper and improper methods for occupational sampling of asbestos and may comment on the methods employed by plaintiffs' experts as it relates to any evidence offered against this defendant.

He will provide testimony that the standard and accepted occupational exposure methodologies for asbestos require the use of validated scientific air sampling and analytical methods.  He will testify that the standards for occupational exposure determination to asbestos are the NIOSH and OSHA established methods.  In this methodology, air samples are collected in conformance with the OSHA methodology which has specific criteria for air sampling, filter preparation and fiber counting rules.   Scientifically reliable samples are prepared by "direct" preparation techniques as opposed to "indirect" preparation techniques and  are counted by phase contrast microscopy (PCM).

He will further provide testimony regarding governmental regulations affecting maximum allowable concentrations or asbestos exposures in an occupational setting.  He will also provide testimony regarding the ACGIH threshold limit values.

He will testify that the current regulation for the industry is found at 29 CFR 1910.1001 and the regulation for construction trades is found at 29 CFR 1926.1101.  The current OSHA permissible exposure level, published in 1994, is 0.1 fibers per cubic centimeter (f/cc), as an eight-hour time weighted average.  The OSHA permissible level from 1986 to 1994 was 0.2 f/cc, as an eight-hour time weighted average.  The OSHA permissible level from 1976 to 1986 was 2 f/cc, as an eight-hour time

weighted average.  The OSHA permissible level from 1971 to 1976 was 5 f/cc, as an eight-hour time weighted average.

He will also provide testimony regarding historical literature and other applicable government regulations of asbestos and their importance to this defendant's products, including, but not limited to the EPA and NESHAP.  He will provide an opinion that thermal insulation products are unreasonably dangerous and that this defendant's products are not.  He will provide an opinion that, unliked this defendant's products, certain non-friable materials do release significant fiber concentrations under certain normal conditions.  The basis for his testimony will be his experience, his education, research, testing, review of the appropriate scientific literature and, review of case materials supplied to him.

Mr. Boelter will give testimony on the typical methods for installation, repair and removal of this defendant's products.

For further clarification of Mr. Boelter's testimony, he will be made available for deposition at a mutually convenient time by contacting Defendant's counsel.

**2.**    **JAMES RASMUSON, C.I.H.**
          **10201 West 43rd Avenue**
          **Wheat Ridge, CO  80033**

Mr. Rasmuson is a certified industrial hygienist and a toxicologist.  He will provide testimony regarding his experience and his testing of this defendant's products or type of products and will provide opinions that these products have been used safely in a workplace environment, that they are not unreasonably dangerous, that they do not pose an occupational hazard and that no warning label is required to be placed on them.

He will give testimony on the fiber release from this defendant's products in the occupational setting.  He will testify regarding exposure assessments performed on this defendant's products or similar products, including assessments and testing he has performed on this defendant's products.

He has been or will be provided with product exposure information and other case specific data in this case, including, but not limited to, plaintiff's(s') deposition (s) and co-worker depositions.  He will review plaintiff's(s') exposures, if any, to this defendant's products as well as plaintiff's(s') exposure to other manufacturers' products.  He will quantify plaintiff's exposure to the asbestos-containing products of this defendant, as well as exposures to asbestos containing products manufactured by other companies, and provide opinions regarding the significance of each exposure.  He has also reviewed and will rely upon air sampling data and other literature regarding exposure to other asbestos-containing products.  He will discuss historical uses of both Weil-McLain's and other companies' asbestos containing products and how they are manufactured.  He will quantify exposures to all asbestos-containing products to which plaintiff(s)  may have been exposed and discuss the distinction between friable and non-friable products.  Mr. Rasmuson's opinion is that Weil-McLain's products do not create an occupational hazard. Mr. Rasmuson will testify that foreseeable use of Weil-McLain's products does not cause any occupational hazard.  He will provide testimony about the type of asbestos

fiber and other fiber used in this defendant's products as applicable to this case.  He will also testify about the types of asbestos fibers found in other companies' products.

He will discuss ambient air exposure to asbestos, the sources of ambient air asbestos exposure, quantification studies and the presence of asbestos in drinking water and provide his opinion that these exposures, if any, are not harmful or hazardous.  He may discuss reentrainment and fiber drift.

He will further provide testimony about the role of the industrial hygienist in assessing risk, generally, and with respect to asbestos-containing products.  He will provide current and historical information regarding air and dust sampling methods for asbestos in occupational settings, including, but not limited to, the NIOSH 7400 and 7402 methods, the OSHA reference method, as well as EPA, AHERA and ASTM methods.  He will provide expert testimony on the proper use and application of all such methodology.  He will also provide testimony regarding the proper and improper methods for occupational sampling of asbestos and may comment on the methods employed by plaintiffs' experts as it relates to any evidence offered against this defendant.

He will provide testimony that the standard and accepted occupational exposure methodologies for asbestos require the use of validated scientific air sampling and analytical methods.  He will testify that the standards for occupational exposure determination to asbestos are the NIOSH and OSHA established methods.  In this methodology, air samples are collected in conformance with the OSHA methodology which has specific criteria for air sampling, filter preparation and fiber counting rules. Scientifically reliable samples are prepared by "direct" preparation techniques as opposed to "indirect" preparation techniques and  are counted by phase contrast microscopy (PCM).

He will further provide testimony regarding governmental regulations affecting maximum allowable concentrations or asbestos exposures in an occupational setting.  He will also provide testimony regarding the ACGIH threshold limit values.

He will testify that the current regulation for the industry is found at 29 CFR 1910.1001 and the regulation for construction trades is found at 29 CFR 1926.1101.  The current OSHA permissible exposure level, published in 1994, is 0.1 fibers per cubic centimeter (f/cc), as an eight-hour time weighted average.  The OSHA permissible level from 1986 to 1994 was 0.2 f/cc, as an eight-hour time weighted average.  The OSHA permissible level from 1976 to 1986 was 2 f/cc, as an eight-hour time weighted average.  The OSHA permissible level from 1971 to 1976 was 5 f/cc, as an eight-hour time weighted average.

He will also provide testimony regarding historical literature and other applicable government regulations of asbestos and their importance to this defendant's products, including, but not limited to the EPA and NESHAP.  He will provide an opinion that thermal insulation products are unreasonably dangerous and that this defendant's products are not.  He will provide an opinion that, unlike this defendant's products, certain non-friable materials do release significant fiber concentrations under certain normal conditions.  The basis for his testimony will be his experience, his education, research, testing, review of the appropriate scientific literature and, review of case materials supplied to him.

4

Mr. Rasmuson will give testimony on the typical methods for installation, repair and removal of this defendant's products.

For further clarification of Mr. Rasmuson's testimony, he will be made available for deposition at a mutually convenient time by contacting Defendant's counsel.

**3.      ERIC RASMUSON, C.I.H.**
         **10201 West 43rd Avenue**
         **Wheat Ridge, CO  80033**

Mr. Rasmuson is a certified industrial hygienist.  He will provide testimony regarding his experience and his testing of this defendant's products or type of products and will provide opinions that these products have been used safely in a workplace environment, that they are not unreasonably dangerous, that they do not pose an occupational hazard and that no warning label is required to be placed on them.

He will give testimony on the fiber release from this defendant's products in the occupational setting.  He will testify regarding exposure assessments performed on this defendant's products or similar products, including assessments and testing he has performed on this defendant's products.

He has been or will be provided with product exposure information and other case specific data in this case, including, but not limited to, plaintiff's(s') deposition (s) and co-worker depositions.  He will review plaintiff's(s') exposures, if any, to this defendant's products as well as plaintiff's(s') exposure to other manufacturers' products.  He will quantify plaintiff's exposure to the asbestos-containing products of this defendant, as well as exposures to asbestos containing products manufactured by other companies, and provide opinions regarding the significance of each exposure. He has also reviewed and will rely upon air sampling data and other literature regarding exposure to other asbestos-containing products.  He will discuss historical uses of both Weil-McLain's and other companies' asbestos containing products and how they are manufactured.  He will quantify exposures to all asbestos-containing products to which plaintiff(s) may have been exposed and discuss the distinction between friable and non-friable products.  Mr. Rasmuson's opinion is that Weil-McLain's products do not create an occupational hazard. Mr. Rasmuson will testify that foreseeable use of Weil-McLain's products does not cause any occupational hazard.  He will provide testimony about the type of asbestos fiber and other fiber used in this defendant's products as applicable to this case.  He will also testify about the types of asbestos fibers found in other companies' products.

He will discuss ambient air exposure to asbestos, the sources of ambient air asbestos exposure, quantification studies and the presence of asbestos in drinking water and provide his opinion that these exposures, if any, are not harmful or hazardous.  He may discuss reentrainment and fiber drift.

He will further provide testimony about the role of the industrial hygienist in assessing risk, generally, and with respect to asbestos-containing products.  He will provide current and historical information regarding air and dust sampling methods for asbestos in occupational settings, including, but not limited to, the NIOSH 7400 and 7402 methods, the OSHA reference method, as well as EPA,

AHERA and ASTM methods.  He will provide expert testimony on the proper use and application of all such methodology.  He will also provide testimony regarding the proper and improper methods for occupational sampling of asbestos and may comment on the methods employed by plaintiffs' experts as it relates to any evidence offered against this defendant.

He will provide testimony that the standard and accepted occupational exposure methodologies for asbestos require the use of validated scientific air sampling and analytical methods.  He will testify that the standards for occupational exposure determination to asbestos are the NIOSH and OSHA established methods.  In this methodology, air samples are collected in conformance with the OSHA methodology which has specific criteria for air sampling, filter preparation and fiber counting rules. Scientifically reliable samples are prepared by "direct" preparation techniques as opposed to "indirect" preparation techniques and  are counted by phase contrast microscopy (PCM).

He will further provide testimony regarding governmental regulations affecting maximum allowable concentrations or asbestos exposures in an occupational setting.  He will also provide testimony regarding the ACGIH threshold limit values.

He will testify that the current regulation for the industry is found at 29 CFR 1910.1001 and the regulation for construction trades is found at 29 CFR 1926.1101.  The current OSHA permissible exposure level, published in 1994, is 0.1 fibers per cubic centimeter (f/cc), as an eight-hour time weighted average.  The OSHA permissible level from 1986 to 1994 was 0.2 f/cc, as an eight-hour time weighted average.  The OSHA permissible level from 1976 to 1986 was 2 f/cc, as an eight-hour time weighted average.  The OSHA permissible level from 1971 to 1976 was 5 f/cc, as an eight-hour time weighted average.

He will also provide testimony regarding historical literature and other applicable government regulations of asbestos and their importance to this defendant's products, including, but not limited to the EPA and NESHAP.  He will provide an opinion that thermal insulation products are unreasonably dangerous and that this defendant's products are not.  He will provide an opinion that, unliked this defendant's products, certain non-friable materials do release significant fiber concentrations under certain normal conditions.  The basis for his testimony will be his experience, his education, research, testing, review of the appropriate scientific literature and, review of case materials supplied to him.

Mr. Rasmuson will give testimony on the typical methods for installation, repair and removal of this defendant's products.

For further clarification of Mr. Rasmuson's testimony, he will be made available for deposition at a mutually convenient time by contacting Defendant's counsel.

6

4.      **ROBERT SAWYER, M.D.**
        **149 Prospect Avenue**
        **Guilford, CT  06437**

Dr. Sawyer will testify concerning the medical condition of any plaintiff and in the case of a deceased plaintiff, may give testimony as to the cause of death.  He will further testify as to whether plaintiff or plaintiff's decedent had a condition or illness caused by asbestos exposure.  He may also testify on the latency period related to each type of asbestos-related disease and the carcinogenic potential of the types of asbestos.

Dr. Sawyer will generally testify concerning asbestos-related biologic effects and the effects of exposure to various asbestos containing products upon persons in occupational and other settings.  He will further testify regarding the criteria for diagnosis of asbestos-related disease, the epidemiology of asbestos diseases, as well as the existence of a dose response relationship between exposure to asbestos and asbestos-related diseases.  He may also testify regarding asbestos-containing products generally, including their asbestos fiber content, manufacture, use and their respective ability to cause or contribute to disease, including quantification of exposures attributed to asbestos thermal system insulation products and other asbestos products generally used by plaintiff.  He may testify specifically regarding the content and fiber type of the asbestos-containing products to which plaintiff was exposed.  He may further testify regarding the propensity of various asbestos fiber types to contribute to mesothelioma or other asbestos-related disease.  He may also testify regarding the determination of the relative risks of suffering personal injury or death as a result of exposure to various asbestos-containing products in occupational settings.  He will explain the dose response relationship between exposure to asbestos and asbestos-related disease for each type of disease alleged.  Dr. Sawyer's opinion is that the foreseeable use of Weil-McLain boilers during an occupational life span cannot produce an appreciable risk of any asbestos related disease and cannot be a producing cause of any asbestos related disease.

He may also testify regarding the existence or non-existence of any alleged asbestos-related effect in the plaintiff(s), including but not limited to pleural changes, asbestosis, lung cancer, mesothelioma, laryngeal cancer, and gastrointestinal cancer, where applicable.  He will also testify on general medicine issues regarding asbestos-related diseases including, but not limited to, lung physiology, lung function, lung defense mechanisms and the mechanisms by which asbestos fibers do or do not cause a particular disease. He may also testify that background levels of asbestos fibers in human tissue do not present a risk of disease.  He will further testify that any asbestos-related disease allegedly suffered by plaintiff(s) was not proximately caused by exposure to Weil-McLain's asbestos-containing products.  He may also testify regarding government regulations applicable to defendant's products and whether these products are unreasonably dangerous. Dr. Sawyer's opinion is that Weil-McLain boilers are not unreasonably dangerous.

He may also testify on the health consequences of smoking and the relationship between smoking and alleged asbestos-related diseases, generally and with respect to this plaintiff.  He will testify regarding the relative contribution if any, of smoking and asbestos, if any, to this plaintiff's disease.

Generally and with respect to particular plaintiffs, he may testify as to his review and interpretation of x-ray films, review and interpretation of pulmonary function testing, the nature and extent of any impairment or disability, whether a condition is progressive and whether other diseases or conditions are present in plaintiffs.

He may also testify on increased risk of cancer issues and whether a particular plaintiff has a reasonable fear of cancer due to exposure to asbestos.

He will give an opinion that plaintiff's use, installation, removal or contact, if any, with Weil-McLain's products cannot and did not cause or contribute and were not a substantial factor or producing cause of this plaintiff's asbestos related disease.

Dr. Sawyer's testimony will be based on one or more of the following:  his training, experience, education, publications and review of the medical, governmental and scientific literature and various air sampling studies, work facility inspections and documents, where applicable, as well as review of medical records, fiber burden or digestion studies, radiographic reports, and  pathology examination information.  Dr. Sawyer will rely upon all of the testing of each industrial hygienist disclosed on Weil-McLain's exhibit list, including but not limited to, testing done by Mesers Mangold, Liukonen, Balzer (to the extent Mr. Balzer has conducted any testing), Spencer, and Boelter, and Ms. Ringo.  Such testing is incorporated by reference.  Dr. Sawyer may review plaintiff and co-worker deposition testimony and rely upon them as a basis for his opinions.  He may also provide testimony consistent with the disclosure of any other expert disclosed by this defendant or any other party to this case.  Weil-McLain's exhibits will be made available upon request.

Based on his education, training, work experience, and review of the medical/scientific literature, Dr. Sawyer will render opinion testimony about the relationship between the level of asbestos exposure in air and its effect on human health, if any.  Dr. Sawyer will compare the level of asbestos exposure from these tests to the levels of asbestos found in other environments, and he will render opinion testimony concerning the health hazards, if any, an individual would be subject to as a result of his use and/or exposure to Weil-McLain's boilers.

Dr. Sawyer has worked in the fields of inhalation toxicology and epidemiology.  Based upon his work in these fields and his review of the literature, Dr. Sawyer will give an opinion that the minimum cumulative level of asbestos exposure associated with asbestosis or an increased risk of lung cancer is an estimated 20 fiber years and that asbestos does not play a role in the development of lung cancer at cumulative asbestos exposure levels below 20 fiber years.  Dr. Sawyer will give opinion testimony, based on his work and his review of the medical literature, that exposure to Weil-McLain products will not cause or contribute to the development of mesothelioma.  It is Dr. Sawyer's opinion that it would take an individual hundreds or even thousands of years of working with Weil-McLain products to approach any level of appreciable risk of asbestos related disease from using these gaskets and packing materials.

Dr. Sawyer's opinion is that Weil-McLain's products are not unreasonably dangerous and pose no occupational hazard with typical use in the workplace.

He has been or will be provided with product association information and other case specific data in this case, including, but no limited to, plaintiff deposition(s) and co-worker depositions. He will review plaintiff exposures, if any, to this defendant's asbestos containing products as well as plaintiff exposure to other manufacturers' products. He will quantify plaintiff exposure to the asbestos-containing products of this defendant, as well as exposures to asbestos containing products manufactured by other companies, and provide opinions regarding the significance contribution to risk of each exposure. He has also reviewed and will rely upon air sampling data and other literature regarding exposure to other asbestos containing products, both friable and nonfriable. He will discuss historical uses of both Weil-McLain products and asbestos containing products of other companies and how they are manufactured. He will quantify exposures to asbestos containing products to which plaintiff may have been exposed and discuss the distinction between the classifications of friable and non-friable. He will further provide testimony about the manner in which this defendant's asbestos containing products are manufactured. Dr. Sawyer will testify that foreseeable use of Weil-McLain products does not cause any occupational hazard. He will provide testimony about the type of asbestos fiber and other fiber used in this defendant's products as applicable to this case. He may also testify about the types of asbestos fibers found in the products of other companies.

He will discuss ambient air exposure to asbestos and also discuss the sources of ambient air asbestos exposure, quantification studies and the presence of asbestos in drinking water and provide his opinion that these exposures, if any, are not harmful or hazardous. Dr. Sawyer's opinion is that exposure to Weil-McLain's products is comparable to ambient air exposure. He may also discuss reentrainment and fiber drift.

He will provide current and historical information regarding air and dust sampling methods for asbestos in occupational settings, including, but not limited to, the NIOSH 7400 and 7402 methods, the OSHA reference method, as well as EPA, AHERA and ASTM methods. He will provide expert testimony on the proper use and application of all such methodology. He will also provide testimony regarding the proper and improper methods for occupational sampling of asbestos. He may also provide testimony that the use of settled dust methods or Tyndall or refractive light methods do not provide a proper scientific basis for sampling and have no value in assessing occupational risk to asbestos exposure.

He will provide testimony that the standard and accepted occupational exposure methodologies for asbestos require the use of validated scientific air sampling and analytical methods. He will testify that the standards for occupational exposure determination to asbestos are the NIOSH and OSHA established methods. In this methodology, air samples are collected in conformance with the OSHA methodology which has specific criteria for air sampling, filter preparation and fiber counting rules. Scientifically reliable samples are prepared by "direct" preparation techniques as opposed to "indirect" preparation techniques and are counted by phase contrast microscopy (PCM).

He will provide testimony, reviewing and criticizing the tests performed on gaskets and packings by plaintiff experts, Longo and Hatfield. Dr. Sawyer's opinion is that these plaintiffs' experts have used inappropriate methodologies. He will testify that the indirect sample preparation technique is not validated or reliable for occupational exposure determination or health hazard assessments. Dr.

9

Sawyer's opinion is that use of Tyndall or stage lighting is not an acceptable industrial hygiene practice for the evaluation of occupational exposure nor is it a reliable or relevant method of quantification of asbestos fibers. Dr. Sawyer's opinion is that none of these methods would be relied upon by any health or safety professional in performing an exposure assessment. Dr. Sawyer's opinion is that most of what is seen is non-respirable. The Longo and Hatfield tests provide no basis for the determination of whether the visible dust is respirable or not. Tests by these plaintiffs' experts do not accurately simulate typical work practice or duration of tasks encountered in occupational settings. Thus, the measurement of fibers on clothing worn in the simulation is not a validated or reliable method for determining exposure of airborne asbestos and is not reliable in providing any information on the health effects of asbestos under these circumstances. He will provide testimony that neither use of settled dust methods nor Tyndall or refractive light methods provides a proper scientific basis for assessing occupational risk to exposure to asbestos.

He will further provide testimony regarding governmental regulations affecting maximum allowable concentrations or asbestos exposures in an occupational setting. He will also provide testimony regarding the ACGIH threshold limit values.

He will testify that the current regulation for the industry is found at 29 CFR 1910.1001 and the regulation for construction trades is found at 29 CFR 1926.1101. The current OSHA permissible exposure level, published in 1994, is 0.1 fibers per cubic centimeter (f/cc), as an eight-hour time weighted average. The OSHA permissible level from 1986 to 1994 was 0.2 f/cc, as an eight-hour time weighted average. The OSHA permissible level from 1976 to 1986 was 2 f/cc, as an eight-hour time weighted average. The OSHA permissible level from 1971 to 1976 was 5 f/cc, as an eight-hour time weighted average.

He will also provide testimony regarding historical literature and other applicable government regulations of asbestos and their importance to this defendant's products, including, but not limited to those of the EPA and the NESHAPS regulations. He will provide an opinion that depending upon typical work procedures thermal and other insulation products are unreasonably dangerous and gaskets and packing products are not. The basis for his testimony will be his experience, his education, research, testing, review of the appropriate scientific literature and, review of case materials supplied to him.

Dr. Sawyer will give testimony on the typical methods of installation and removal of Weil-McLain products.

Dr. Sawyer will also give the following opinions. There is a dose-response relationship for development of any asbestos related disease, and the dose is the most significant factor in causation of an asbestos related disease. The risk is proportional to the dose: the greater the accumulated dose, the greater the risk. The dose is produced by various exposures accumulating over time. The dose is measured in fiber years, i.e., the product of exposure (f/cc) over time (years). As an example, an individual exposed at a continuous level of 1 f/cc for 20 years will have amassed 20 fiber years of exposure. There are threshold levels of dose necessary before asbestos diseases will develop. As an example, at least 20 fiber years of dose is required for the development of clinically and radiologically

evident asbestosis.  At the current OSHA PEL of 0.1 f/cc, 200 years would elapse to attain the 20 fiber year level associated with risk of asbestosis, and increased risk of cancer.

It is also his opinion that the non-occupationally exposed general public is not at risk for the development of an asbestos related disease, even though there is asbestos in the ambient air.  Thus, because of the doses associated with an asbestos related disease, a single asbestos fiber does not substantially contribute to such disease.

Dr. Sawyer believes to a reasonable degree of medical and scientific probability that the level of exposure, if any, to asbestos resulting from the use, handling, installation, and removal of Weil-McLain is insufficient to provide a dose adequate to create risk of an asbestos related disease, does not pose a risk to human health, and does not cause or substantially contribute to the cause of asbestos related conditions or diseases.

For further clarification of his testimony, Dr. Sawyer will be made available for deposition at a mutually convenient time by contacting Defendant's counsel.

5.   **RACHEL P. MAINES, Ph.D.**
     **237 Langmuir Lab**
     **Cornell Research Park**
     **Ithaca NY 14850**

Dr. Maines is a historian with a doctorate in applied history and social science.  She has researched and written on issues relating to the history of the use of asbestos and asbestos-containing products.  She may give testimony regarding the purposes for which engineers, and particularly boiler engineers, used asbestos-containing products, including how and when such products were used. Additionally, she may provide a historical overview of how asbestos was used commercially in many different kinds of products and the purposes it served.  Dr. Maines' testimony may reference her review of engineering and technical literature and journals, including but not limited to materials published by the ASME.

Dr. Maines may further testify as to historical tragedies in American and international history relating to fire and carbon monoxide and how asbestos and asbestos-containing products were developed in response to then-prevailing efforts to reduce such tragedies.  Dr. Maines may testify as to the dangers of fire and carbon monoxide presented specifically by boilers and how asbestos-containing products were used by boiler manufacturers and specified by local and state governments in response to these concerns.

Dr. Maines may testify as to the communications, or lack thereof, to Weil-McLain by manufacturers of asbestos-containing products employed by Weil-McLain at one time in the design and assembly of its boilers.

For further clarification of Dr. Maines' testimony, she may be made available for deposition at a mutually convenient date and time by contacting Defendant's counsel.

Weil-McLain reserves the right to designate representatives of any site, corporation or employer where it is alleged that any Plaintiff was exposed to Weil-McLain products, and/or to designate additional fact witnesses at such time Plaintiffs or any other party offers additional evidence in the form of specific product identification, including the specific model of a Weil-McLain product at a specific location, and/or at such time as additional or different information is offered by Plaintiffs or any other party.

Weil-McLain reserves the right to call all custodians of records or other documents of Plaintiffs' unions and locals; Plaintiffs' employers; job sites or corporations where/for which Plaintiff worked; supply houses or other entities from which products were purchased for use at the locations/jobs where Plaintiffs' alleged exposure to any Weil-McLain product occurred.

Weil-McLain reserves the right to designate and call all witnesses necessary to lay the foundation for and/or authenticate any and all exhibits and all witnesses necessary for rebuttal.

Respectfully submitted,

Segal McCambridge Singer & Mahoney, Ltd.

By: _____

Attorney for Defendant, WEIL-McLAIN

Edward J. McCambridge (ARDC # 1812343)
Cameron D. Turner, Esq.  (ARDC # 6244032)
Segal McCambridge Singer & Mahoney, Ltd.
233 S. Wacker Dr., Suite 5500
Chicago, IL 60606
312-645-7800