UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | } | MDL DOCKET NO. MDL 875 |
| LIABILITY LITIGATION (No. VI) | } | |
| | } | |
| _____ | } | |
| | } | |
| THIS DOCUMENT RELATES TO: | } | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHARLES KRIK, | } | E.D. Pa. No. 2:11-cv-63473 |
| | } | |
| **Plaintiff,** | } | |
| | } | **Transferor District Court:** |
| v. | } | **Northern District of Illinois** |
| | } | **Case No. 10-07435** |
| BP AMOCO CHEMICAL COMPANY, et | } | |
| al., | } | |
| | } | |
| **Defendants.** | } | |

## DEFENDANT CRANE CO.'S MOTION FOR SUMMARY JUDGMENT

Defendant Crane Co., by and through its undersigned counsel, hereby moves for summary judgment as to all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 56. In support of this motion, Crane Co. states the following:

1.      Plaintiff originally filed this Complaint in the United States District Court for the Northern District of Illinois on November 18, 2010, and it was subsequently transferred to the MDL 875 in the United States District Court for the Eastern District of Pennsylvania. Plaintiff alleges that he developed lung cancer as a result of exposure to asbestos-containing materials through his service in the United States Navy from 1954 until 1970, and while working as a pipefitter at various commercial and industrial locations in Illinois—part-time while serving in the Navy and full-time after serving in the Navy and up until 2001.

2.      Crane Co. is entitled to summary judgment as a threshold matter because the record evidence in this case is undisputed: Plaintiff has failed to show that he worked with or around an *asbestos-containing* product manufactured or supplied by Crane Co.

3.      Furthermore, Crane Co. is entitled to summary judgment, because, Crane Co. has no duty to warn about, and cannot be held liable for, asbestos-containing gaskets, packing, or insulation manufactured by third-parties and used with its products post-sale.

4.      Also, to the extent that Plaintiff attempts to hold Crane Co. liable for his alleged exposures to "Crane" packing or gasket materials, Crane Co. is entitled to summary judgment because those materials are not products manufactured or supplied by Crane Co.; those products just happen to include the "Crane" name.

5.      Plaintiff alleges exposure to deaerating feed tanks manufactured by Cochrane and contends that Crane Co. should be held liable for those exposures. However, Mr. Krik testified that he was exposed to Cochrane equipment between the years 1958 and 1961 and there is no evidence that any of that equipment was new. Crane Co. is not legally responsible for any Cochrane product manufactured prior to late 1960 because Crane Co. did not acquire Cochrane's assets until November 2, 1960. Plaintiff cannot demonstrate that he was exposed to any asbestos-containing Cochrane product manufactured in late 1960 or after. Accordingly, Crane Co. cannot be held liable for Plaintiff's alleged exposures to Cochrane products. Furthermore, if the Court finds a genuine issue of material fact regarding whether any Cochrane product with which Mr. Krik may have worked was manufactured in November 1960 or later, Crane Co. is still entitled to partial summary judgment for claims arising from any alleged exposures to Cochrane products that were manufactured prior to 1960.

6.     Finally, with respect to all allegations of exposure to Crane Co. products while serving in the Navy, Crane Co. is entitled to summary judgment because Crane Co. is immune to Plaintiff's state tort law claims pursuant to the government contractor defense.

7.     Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

8.     Here, Plaintiff has failed to establish a genuine issue of material fact on the issue of causation, because Plaintiff has failed to produce any evidence establishing that Crane Co. manufactured or supplied any asbestos-containing product to which he may have been exposed. Moreover, Crane Co. cannot be held liable for products it did not make, design, or sell. Also, the "Crane" gasket and packing materials to which Mr. Krik was allegedly exposed were not Crane Co. products. Crane Co. is not legally responsible for alleged exposures to Cochrane products that were manufactured prior to late 1960 because Crane Co. did not purchase Cochrane's assets until late 1960. Finally, Plaintiff's claims with respect to his alleged exposures to Crane Co. products while serving in the Navy are barred by the government contractor defense. Accordingly, Crane Co. is entitled to summary judgment on Plaintiff's claims.

WHEREFORE, Crane Co. respectfully requests entry of summary judgment in its favor and against Plaintiff and all other Defendants.

Dated:    January 6, 2012                    Respectfully submitted,

**K&L GATES LLP**

/s/ Michael J. Zukowski
Michael J. Zukowski, (Pa. I.D. 84136)
Syed D. Ali (Pa. I.D. 206719)

K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
T:  412-355-6500
F:  412-355-6501

*Attorneys for Defendant Crane Co.*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | } | MDL DOCKET NO. MDL 875 |
| LIABILITY LITIGATION (No. VI) | } | |
| | } | |
| _____ | } | |
| | } | |
| THIS DOCUMENT RELATES TO: | } | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHARLES KRIK, | } | E.D. Pa. No. 2:11-cv-63473 |
| | } | |
| **Plaintiff,** | } | |
| | } | **Transferor District Court:** |
| v. | } | **Northern District of Illinois** |
| | } | **Case No. 10-07435** |
| BP AMOCO CHEMICAL COMPANY, et | } | |
| al., | } | |
| | } | |
| **Defendants.** | } | |

## DEFENDANT CRANE CO.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Crane Co. ("Crane Co.") respectfully submits this Memorandum of Law in support of its motion for summary judgment dismissing Plaintiff's Complaint and any cross-claims asserted against Crane Co.

Summary judgment should be granted for the following reasons:

- As a threshold matter, Plaintiff must prove that he was exposed to asbestos released from a product for which Crane Co. is legally responsible. Plaintiff has failed to do so. Indeed, there is no evidence of record that Mr. Krik worked with or around any asbestos-containing product associated with Crane Co.

- Crane Co. cannot be held liable for products it did not make, sell or design.

- The "Crane" gasket and packing materials to which Mr. Krik was allegedly exposed were not Crane Co. products.

- Crane Co. is not legally responsible for alleged exposures to any Cochrane product that was manufactured prior to November 2, 1960.

- With respect to Mr. Krik's alleged exposures to Crane Co. products while serving in the Navy, Crane Co. is immune from Plaintiff's state tort law claims pursuant to the government contractor defense, and Plaintiff's negligence and strict liability claims are therefore barred as a matter of law.

Accordingly, Plaintiff has failed to draw the requisite causal link between a Crane Co. product and his alleged asbestos exposures. Consequently, Crane Co.'s motion for summary judgment should be granted.

## II.   BRIEF STATEMENT OF FACTS

Plaintiff originally filed this Complaint in the United States District Court for the Northern District of Illinois on November 18, 2010, and it was subsequently transferred to the MDL 875 in the United States District Court for the Eastern District of Pennsylvania. Plaintiff alleges that he developed lung cancer as a result of exposure to asbestos-containing materials through his service in the United States Navy from 1954 until 1970, and while working as a pipefitter at various commercial and industrial locations in Illinois—part-time while serving in the Navy and full-time after serving in the Navy and up until 2001.

Mr. Krik was deposed in this matter on July 18, 2011 and August 4, 2011.[1] Mr. Krik testified that he worked with Crane Co. valves aboard Navy vessels and also at various jobsites in Illinois.[2] He further testified that his work with Crane Co. valves was substantially the same at all his jobsites; he worked with packing and gaskets used in conjunction with those valves that he

---

[1] Crane Co. has attached true and correct copies of these transcripts: Videotaped Deposition of Charles Krik, July 18, 2010 ("Krik Dep. I"), is attached as Exhibit "A"; Videotaped Deposition of Charles Krik, August 4, 2011 ("Krik Dep. II"), is attached as Exhibit "B."

[2] *See* Krik Dep. I, at 57:20-58:7; 65:11-19; 74:10-24; 123:20-124:12; and 126:13-17.

alleges contained asbestos.[3] Moreover, Mr. Krik testified that the packing and gasket materials he removed from Crane Co. valves were not original to those valves.[4] The packing and gasket materials were the only asbestos-containing materials that Mr. Krik alleges he worked with on Crane Co. valves, but there is no evidence that Crane Co. made, supplied, or otherwise placed those materials into the stream of commerce. Plaintiff cannot put forth any legal theory that would hold Crane Co. legally responsible for exposures to products it did not place into the stream of commerce.

As noted, Plaintiff cannot put forth any evidence that Crane Co. actually manufactured any packing and gaskets to which he alleges exposure. Instead, Plaintiff will likely contend that, because he recalls some packing and gaskets were made by a company with the name "Crane" as part of its name, then Crane Co. can be held responsible because Crane Co. has the name "Crane" in it.[5] This is simply not enough to hold any company liable for a product. Crane Co. has put forth affirmative evidence that it never manufactured *any* packing or gasket materials used in valves, much less the packing and gaskets actually at issue here.[6] There are other companies that include the "Crane" name that manufactured such materials used in valves, but those companies are not related to Crane Co. and Crane Co. is not legally responsible for those

---

[3] *Id.*

[4] *Id.*, at 162:6-11.

[5] *See* Krik Dep. II, at 110:19-111:19.

[6] *See, e.g.*, Deposition of Anthony Pantaleoni (Crane Co.'s corporate representative), dated October 25, 2007, in *Martin v. Bayer Cropscience, Inc., et al.*, No. 07-CP-23-02483 (Ct. Com. Pl., Greenville C'ty, S.C.), at 62:24-63:3, a copy of which is attached as Exhibit "C."

products.[7] Accordingly, Crane Co. is entitled to summary judgment with respect all allegations of exposure to "Crane" gaskets or packing materials.

Lastly, Plaintiff alleges that he was exposed to Cochrane deaerating feed tanks and air injectors for which he alleges Crane Co. is legally responsible. Mr. Krik testified that he was exposed to external insulation and manhole gaskets used with Cochrane products, but he stated that those materials were not original to the Cochrane products and there is no evidence that Crane Co. manufactured or supplied those materials.[8] While Crane Co. is not liable for any of Mr. Krik's exposures to third-parties' external insulation or manhole gaskets used in conjunction with Cochrane products, more importantly, Crane Co. is not legally responsible for any Cochrane products to which Mr. Krik alleges exposures because Crane Co. purchased assets from Cochrane in November 1960 and it is not legally responsible for any exposures to those products prior to that time.[9] Mr. Krik's alleged exposures to Cochrane products took place in 1958 to 1961, and there is no evidence that any of those products were new or manufactured in late 1960 or after.[10] Accordingly, Crane Co. is entitled to summary judgment with respect to Mr. Krik's alleged exposures to Cochrane products.

In sum, the evidence of record fails to create a genuine issue of material fact regarding whether Mr. Krik worked with or near any Crane Co. product that may have released asbestos. Instead, the record affirmatively supports the opposite proposition; the record establishes that

---

[7] Crane Co. **is not** the successor to Crane Packing Company; in fact, Crane Co. is not and never was related to Crane Packing Company. *See, e.g.*, Deposition of Anthony Pantaleoni (Crane Co.'s corporate representative), dated March 10, 2010, in *Ayer v. A.W. Chesterton Co., et al.*, No. 275284 (Sup. Ct. of California, San Francisco County), at 59:5-19, a copy of which is attached as Exhibit "D."

[8] *See* Krik Dep. I, at 157:12-158:20.

[9] *See generally* the Purchase Agreement ("Agreement") attached as Exhibit "E."

[10] *Id.*, at 156:3-157:11.

Mr. Krik was not exposed to any asbestos-containing product manufactured or supplied by Crane Co.

### III.   ARGUMENT

#### A.   Summary Judgment Standard

Summary judgment exists "to isolate and dispose of factually unsupported claims." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

#### B.   Plaintiff has failed to establish that exposure to a Crane Co. product caused his injuries.

Under maritime and Illinois law—both of which are applicable here—a plaintiff must prove that he worked with or around a particular defendant's product sufficiently to establish that that defendant's product was the cause of the plaintiff's injury.[11] *See, e.g., Lindstrom v. A-C Prods. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (under maritime law, to establish causation, "[w]e have required that a plaintiff show, for each defendant, that (1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered."); *Johnson v. Owens-Corning Fiberglass Corp.*, 672 N.E.2d 885, 889 (Ill. App. Ct. 1996) ("It is essential to plaintiff's case that she establish that [her decedent] was exposed to an injury-causing, asbestos-containing product which was manufactured or supplied by a particular defendant."). Indeed, it is not enough to show that a defendant's product was present at a

---

[11] Maritime law applies to the claims against Crane Co. in this case with regard to Mr. Krik's alleged exposures to Crane Co. products while serving in the Navy, because (i) his alleged work around Crane Co. products was performed on board U.S. Navy vessels on navigable waters, (ii) his alleged asbestos exposures are potentially disruptive to maritime commerce, and (iii) his work bore a substantial relationship to maritime activity. *See, e.g., Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995); *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 253 (1972). Mr. Krik's alleged exposures to Crane Co. products outside of his service in the Navy all took place in Illinois; therefore, Illinois law should be applicable to claims arising from those alleged exposures.

plaintiff's place of work; a plaintiff must also show that he or she had contact with asbestos from a defendant's products. Accordingly, summary judgment based upon insufficient product identification is appropriate where there is no evidence that a plaintiff worked regularly and frequently in the vicinity of asbestos-containing products supplied or manufactured by a particular defendant. *See, e.g., Lindstrom*, 424 F.3d at 492 ("[W]e have permitted evidence of substantial exposure for a substantial period of time to provide a basis for the inference that the product was a substantial factor in causing the injury. 'Minimal exposure' to a defendant's product is insufficient.") (internal citations omitted).

The evidence in this case fails to create a genuine issue of material fact on the issue of causation. As already discussed, throughout the course of discovery, Plaintiff did not offer any evidence that Mr. Krik worked with or around a single asbestos-containing Crane Co. product. Mr. Krik testified that he worked with Crane Co. valves during his career, but he failed to identify any asbestos-containing product actually manufactured or supplied by Crane Co., just metal valves. *See supra* § II. Furthermore, he stated that he did not know the maintenance history of any of those valves and that the packing and gasket material in the valves he did work with were likely replaced previously. *Id.* Mr. Krik also testified that he was exposed to Cochrane products, but the only potentially asbestos-containing material he worked with in conjunction with those products were insulation and manhole gaskets which were not original to the Cochrane products and were not manufactured or supplied by Crane Co. *Id.* Viewed in the light most favorable to Plaintiff, the evidence does not demonstrate that he was exposed to asbestos released from a Crane Co. product. Accordingly, the Court should grant summary judgment in favor of Crane Co.

**C.** **Crane Co. is not liable for asbestos-containing materials that it did not manufacture, sell, design, or otherwise place into the stream of commerce.**

Even if Plaintiff can demonstrate that he worked with or around any asbestos-containing materials in conjunction with Crane Co. valves or Cochrane feed tanks, Crane Co. is entitled to summary judgment because it did not manufacture, sell, or design the asbestos-containing products to which Plaintiff alleges exposure. It is important to note that Plaintiff is not contending, and there is no evidence, that any asbestos fibers emanated from the actual valves made by Crane Co. or products made by Cochrane. Instead, Plaintiff is contending that he was exposed to asbestos from packing, gaskets, and insulation allegedly used with those valves and the feed tanks. But there is no evidence that Crane Co. made, sold, or otherwise placed any of those products into the stream of commerce. Moreover, Crane Co. valves did not require asbestos-containing components to operate properly. Many Crane Co. valves remain in common use today, while asbestos-containing component parts do not. Plaintiff is attempting to hold Crane Co. responsible for products made and sold by a third-party. Yet there is no evidence and no legal theory under which Crane Co. can be held legally responsible for those materials.

Plaintiff cannot meet his burden to demonstrate that a legal theory exists under maritime or Illinois law, or any law for that matter, to hold Crane Co. legally responsible in these circumstances. In fact, under both maritime and Illinois law, it is clear that a defendant *does not* have a duty to warn of the danger of asbestos exposure arising from asbestos-containing products that the defendant did not manufacture or distribute—Plaintiff's proposed legal theory has already been rejected. *See, e.g., Lindstrom v. A-C Prod. Liability Trust*, 424 F.3d 488, 493-97 (6th Cir. 2005) (rejecting the plaintiff's claim that the manufacturers of valves and pumps used on maritime vessels were liable under maritime law for external insulation, gaskets, and packing material manufactured and supplied by others that were used with its equipment post-sale, and

affirming that a manufacturer "cannot be held responsible for asbestos containing material that []

was incorporated into its product post-manufacture");[12] *see also Niemann v. McDonnell Douglas*

*Corp.*, 721 F. Supp. 1019 (S.D. Ill. 1989) (holding that the manufacturer of an airplane cannot be

held liable for negligence for plaintiff's exposure to asbestos-containing chafing strips because

there was no evidence that plaintiff was exposed to chafing strips originally supplied with the

airplane, as opposed to replacement parts); *Prompt Air, Inc. v. Firewall Forward, Inc.*, 707

N.E.2d 235, 238 (Ill. App. Ct. 1999) (holding that a product manufacturer can only be held

strictly liable for products if it is in the products' "original chain of distribution"); *see also Keen*

*v. Dominick's Finer Foods, Inc.*, 364 N.E.2d 502, 504 (Ill. App. Ct. 1977) ("Liability will not be

imposed upon a defendant who is not a part of the original producing and marketing chain."). Put

simply, Crane Co. was not in the chain of distribution of the alleged injury-causing asbestos-

containing materials at issue in this case, and it should not bear liability for them.

　　　　Here, Crane Co. did not manufacture, sell, or distribute any asbestos-containing materials

to which Mr. Krik may have been exposed. *See supra* § II. Even if Plaintiff was exposed to

Crane Co. products, the valves manufactured and sold by Crane Co. were made of metal and

were not dangerous on their own. Crane Co. valves did not require asbestos-containing

components to operate properly. Many Crane Co. valves remain in common use today, while

asbestos-containing component parts do not. Crane Co. cannot be liable for asbestos-containing

products that it did not manufacture or sell, and which were used with its valves post-sale.

Similarly, Mr. Krik does not allege that he was exposed to asbestos that actually emanated from

---

[12] The Court adopted and applied this holding in *Sweeney v. Saberhagen Holdings, et al.*, No. 09-64399, *Delatte v. A.W. Chesterton Co.*, et al., No. 09-69578,  and *Ferguson v. Lorillard Tobacco Co., Inc.*, No. 09-91161. Crane Co. refers the Court to the Report & Recommendation of Magistrate Judge Strawbridge in the *Sweeney* matter (docket entry 49 in *Sweeney*, the "*Sweeney* R&R") and the Order of the Court adopting the *Sweeney* R&R (docket entry 53), as well as to the Order of the Court in *Delatte*, docket entry 241 (the "*Delatte* Order") and the Order in *Ferguson*, docket entry 235 (the "*Ferguson* Order").

a Cochrane product, only asbestos that emanated from third-parties' external insulation and manhole gaskets used in conjunction with Cochrane products. But Crane Co. cannot be held liable for those third-parties' products.

This principle is consistent with the majority view nationwide on this issue. *See, e.g., Taylor v. Elliott Turbomachinery Co.*, 171 Cal. App. 4th 564, 592-96 (2009) (holding that whether the claim is grounded in concepts of strict liability or negligence, California law does not impose liability upon an equipment manufacturer, like Crane Co., for insulation, gaskets, or packing material that it did not manufacture, design, or sell); *Simonetta v. Viad Corp.*, 197 P.3d 127, 138 (Wash. 2008) (en banc) (holding that a Navy equipment manufacturer cannot be liable for insulation manufactured and supplied by others and used with its products); *Braaten v. Saberhagen Holdings*, 198 P.3d 493, 504 (Wash. 2008) (en banc) (holding that Navy equipment manufacturer cannot be held liable for packing and gaskets manufactured and supplied by others).[13]

---

[13] The "majority view nationwide" is articulated in numerous opinions from courts across the country, including *Kealoha v. E.I. Du Pont De Nemours & Co.*, 844 F. Supp. 590, 594 (D. Haw. 1994) (awarding summary judgment to the defendant component part manufacturer on the ground that it was not liable for later-added parts under Hawaii law and holding "[t]he alleged foreseeability of the risk of the finished product is *irrelevant* to determining the liability of the component part manufacturer because imposing such a duty would force the supplier to retain an expert in every finished product manufacturer's line of business") (emphasis added); *Ford Motor Co. v. Wood*, 703 A.2d 1315, 1331-32 (Md. Ct. Spec. App. 1998) (car manufacturer is not liable for replacement brakes that it did not manufacture, design or supply), *abrogated on other grounds by John Crane, Inc. v. Scribner*, 800 A.2d 727, 743 (Md. 2002) (cap on non-economic damages issue); *Sanders v. Ingram Equipment, Inc.*, 531 So.2d 879, 880 (Ala. 1988) (manufacturer of garbage packer not liable for chassis affixed to the packer); *Mitchell v. Sky Climber, Inc.*, 487 N.E.2d 1374 (Mass. 1986) (manufacturer of an electrically powered lift motor had no duty to provide instructions regarding rigging to use with scaffolding where manufacturer did not manufacture, design or assemble the scaffolding); *Franklins v. Performance Site Mgmt.*, No. 03AP-784, 2004 WL 1196140 (Ohio Ct. App. June 1, 2004) (holding that manufacturer had no duty to warn of potentially dangerous condition created when its product was used with another from a different manufacturer); *Frich v. Owens-Corning Fiberglas Corp.*, 618 So.2d 473 (La. App. 1993) (manufacturer had no duty to warn about product it neither manufactured nor sold); *Walton v. Harnischfeger*, 796 S.W.2d 225, 227 (Tex. Ct. App. 1990) (holding crane manufacturer not liable for injuries caused by defective rigging used with crane); *Spencer v. Ford Motor Co.*, 367 N.W.2d 393, 396 (Mich. App. 1985) (ruling manufacturer was not liable for defective wheel rim component added after sale); *Rastelli v. Goodyear Tire & Rubber*

Crane Co. is not liable for Mr. Krik's alleged injury, because Crane Co. did not manufacture, supply, or design any asbestos-containing product to which Mr. Krik alleges exposure. Therefore, Crane Co. is entitled to summary judgment on Plaintiff's claims.

**D.      The "Crane" packing and gaskets materials to which Mr. Krik alleges exposure were not Crane Co. products.**

Mr. Krik testified that he worked with packing and gaskets that he believes were manufactured by a company with the "Crane" name, but his only reason for believing Crane Co., the valve maker, may have manufactured those gaskets and packing materials is that they both had the "Crane" name.[14] This is not sufficient evidence to hold Crane Co. liable.[15] Crane Co. is primarily a manufacturer of industrial equipment—mainly steel and metal valves. Crane Co. has affirmative evidence that it *did not* manufacture *any* packing or gasket materials used in valves—let alone the particular materials to which Mr. Krik was allegedly exposed. *See supra* § II, fn.6. While Mr. Krik testified that he worked with "Crane" packing and gasket materials, he did not distinguish whether those materials were manufactured by Crane Co. or some other entity with the word "Crane" in its name, such as Crane Packing Company for whose products Crane Co.

---

*Co.*, 591 N.E.2d 222, 225 (N.Y. Ct. App. 1992) (refusing to hold that tire manufacturer had duty to warn of defective rim manufactured and supplied by another, simply because defendant's tire was compatible with the defective rim); *Toth v. Economy Forms Corp.*, 571 A.2d 420, 422-23 (Pa. Super. Ct. 1989) (holding that manufacturer off scaffolding could not be held liable for defective wood planking that it did not manufacture or supply); *Walter Milich v. Anchor Packing Co.*, No. 08-10532 (Pa. Com. Pl., Butler Co., March 16, 2009) (summary judgment granted in favor of Crane Co.; no liability for replacement valve packing); *see also Surre v. Foster Wheeler LLC, et al.*, Case No. 07 Civ. 9431 (DC) (S.D.N.Y. Dec. 20, 2011) (attached as Exhibit "F") (holding that "a manufacturer has no duty to warn against defects in such third-party products so long as the manufacturer had no control over the production of the defective product and did not place it into the stream of commerce.").

[14] *See* Krik Dep. II, at 110:19-111:19.

[15] To withstand summary judgment, Plaintiff must present evidence that could create a reasonable inference that these materials were made by Crane Co., not a mere possibility. *See Jenkins v. Heintz*, 124 F.3d 824, 831 (7th Cir. 1997) (stating that speculation is insufficient to withstand summary judgment).

has no legal responsibility. *See supra* § II, fn.7. The mere fact that Mr. Krik associates the word "Crane" with an asbestos-containing material is not evidence that Crane Co. manufactured that material, and the Court cannot hold Crane Co. responsible for materials it did not manufacture simply because some company with the word "Crane" in its name did manufacture such materials. In order to withstand summary judgment, Plaintiff must demonstrate that the "Crane" packing and gaskets materials to which he was allegedly exposed was manufactured or supplied by Crane Co. as opposed to a different company with the word "Crane" in its name. *See, e.g., Lindstrom v. A-C Prods. Liab. Trust, et al.*, 264 F. Supp. 2d 583, 594 (N.D. Ohio 2003) (holding that Crane Co. cannot be held liable for allegations of exposure to "Crane packing" when the evidence presented by plaintiff does not "clearly establish that Crane Co. was the manufacturer or supplier of a specific asbestos-containing product").

Plaintiff has not presented any evidence that the "Crane" packing and gasket materials to which he was allegedly exposed was manufactured by Crane Co. Viewed in the light most favorable to Plaintiff, the evidence does not demonstrate that Mr. Krik was exposed to asbestos released from a Crane Co. product. Accordingly, the Court should grant summary judgment in favor of Crane Co.

### E. Crane Co. is not legally responsible for alleged exposures to Cochrane products manufactured prior to late 1960 because Crane Co. did not acquire liability for those products.

The well-settled general rule in Illinois is that a corporation that purchases the assets of another corporation is not liable for the debts or liabilities of the transferor company. *See Diguilio v. Goss Intern. Corp.*, 906 N.E.2d 1268, 1275 (Ill. App. Ct. 2009) (internal citations omitted). There are four exceptions to this general rule: (1) the successor expressly or impliedly agrees to assume the liabilities of the predecessor; (2) the transaction is a consolidation or

merger; (3) the successor is a continuation of the seller; or (4) the transaction was an attempt to escape liability for the seller's obligations. *See id.*, at 1275-76.

Crane Co. acquired assets from Cochrane on November 2, 1960, but Crane Co. did not expressly or impliedly assume any liabilities for alleged bodily injury arising from products manufactured or supplied by Cochrane prior to the closing date of the agreement.[16] As a result, the first exception to the general rule regarding assumption of liabilities through an asset acquisition is inapplicable. Furthermore, following Crane Co.'s 1960 purchase of certain Cochrane assets, there was no continuity of management, personnel, or stockholders between the seller and buyer, and the consideration paid by Crane Co. consisted of more than the stock of Crane Co.[17] As such, the second exception does not apply. Moreover, given that there is no evidence that the asset acquisition was fraudulent in any way or that it was an attempt to escape liability for the seller's obligations, the fourth exception cannot apply. As such, the only potentially applicable exception is the continuation exception.

Under the continuation exception, successor liability is imposed when the purchasing corporation goes through a *mere change in form* without significant substance. *Id.*, at 1276. Under those circumstances, the purchaser is essentially the same entity as the seller and may be held liable for the seller's liabilities. The exception does not apply here because, following Crane Co.'s acquisition of Cochrane's assets, the seller of those assets changed its name to McBride[18] and continued business operations as the McBride Corporation for another ten years.[19] Moreover,

---

[16] *See generally* Agreement, Ex. E.

[17] *Id.*

[18] *See* Articles of Amendment of Cochrane Corp. dated December 5, 1960, attached as Exhibit "G".

[19] Subsequent to Crane Co.'s acquisition of Cochrane's assets, the seller continued business operations as the McBride Corporation for ten years. Crane Co. played no role in Cochrane/McBride's dissolution, and

the Crane Co./Cochrane assets sale was conducted at arms length between two independent sophisticated entities for a cash purchase price in excess of $2 million. These facts demonstrate that adequate compensation was paid for the Cochrane assets and that there was no identity of ownership subsequent to the sale. Accordingly, Crane Co. cannot be held liable for any Cochrane products manufactured prior to late 1960 when Crane Co. purchased Cochrane's assets. Crane Co. is entitled to summary judgment with regard to Mr. Krik's alleged exposures to Cochrane products because Plaintiff cannot put forth any evidence that he worked with a Cochrane product manufactured after November 2, 1960. To the extent the Court finds an issue of fact on whether Mr. Krik worked with a Cochrane product made after November 2, 1960, Crane Co. is still entitled to partial summary judgment for any alleged exposures to Cochrane products made prior to late 1960.

**F.     Crane Co. is entitled to summary judgment with respect to Mr. Krik's alleged exposures to Crane Co. products while serving in the Navy because Crane Co. was acting as a government contractor when supplying products to the Navy.**

With respect to Mr. Krik's alleged exposures to Crane Co. products aboard vessels while serving in the Navy, Crane Co. is entitled to summary judgment because Crane Co. was acting as a government contractor when supplying products to the Navy. The evidence here supporting summary judgment is parallel to the evidence in the *Faddish* case where the Court found no

---

nothing in the agreement between Cochrane and Crane Co. required Cochrane/McBride to dissolve. Moreover, Crane Co. and McBride did not have common shareholders or board members, and Crane Co. had no ability to cause McBride to dissolve. *See* Ex. E (Agreement); Ex. G; Articles of Amendment of HSB Corp. dated October 10, 1945, attached as Exhibit "H"; Articles of Amendment of Cochrane Corp. dated June 30, 1958, attached as Exhibit "I"; Articles of Amendment of McBride Corp. dated December 11, 1961, attached as Exhibit "J"; Articles of Amendment of McBride Corp. dated September 17, 1962, attached as Exhibit "K"; and Articles of Dissolution of McBride Industries, Inc. dated April 16, 1971, attached as Exhibit "L".

issues of fact regarding the government contractor defense. *Faddish v. General Electric Co. et al.*, MDL No. 875, No. 09-70626, 2010 WL 4146108, at *6-9 (E.D. Pa. Oct. 20, 2010).[20]

As this Court recently confirmed, government contractors are immune from state law tort claims when (1) the United States Government approved reasonably precise specifications for the product at issue, (2) the equipment conformed to those specifications, and (3) the contractor warned the United States about dangers in the use of the equipment that were known to it, but not known to the United States. *Faddish*, 2010 WL 4146108, at *6 (citing *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988)). This Court has held that the government contractor defense is not limited to design defect causes of action—it also applies to failure to warn claims. *Id.* at *7.

With respect to the first prong, the majority view is that defendants need not present affirmative evidence of a government directive specifically prohibiting a warning from being placed on their products. *Id.* at *7-8. Indeed, the prevailing view is that a "government contractor" does not have to show an express government prohibition on all warnings, but rather, must establish that the government "exercised its discretion" regarding warnings to be placed on defendants' products. *Id.* at *9 (citing *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003 (7th Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997)); *In re Joint Eastern & Southern District New York Asbestos Litigation*, 897 F.2d 626 (2d Cir. 1990); *Kerstetter v. Pacific Scientific Co.*, 210

---

[20] *See, e.g.*, Affidavit of David Sargent, retired Rear Admiral of the United States Navy, Jan. 26, 2010 ("Sargent Aff."), attached as Exhibit "M"; 45V17 (INT), Bureau of Engineering Specification, Valves, Gate, For Air Exhaust, Steam, Oil, or Water Services (Shipboard Use) May 13, 1938 (attached as Exhibit 1 to Sargent Aff..); Mil-V-22052D (SH), Military Specification, Valves, Stop and Stop Check, Globe, Angle, and Y Pattern, Cast or Forced Carbon or Alloy Steel, Outside Screw and Yoke), 20 March 1978 (attached as Exhibit 2 to Sargent Aff.); Report of David Sargent, retired Rear Admiral of the United States Navy, November 15, 2011  ("Sargent Report"), attached as Exhibit "N"; Affidavit of Anthony Pantaleoni, Jan. 25, 2010 ("Pantaleoni Aff.") at ¶¶ 5-6, attached as Exhibit "O"; Affidavit of Dr. Samuel Forman, Jan. 25, 2010 ("Forman Aff."), attached as Exhibit "P"; Report of Dr. Samuel Forman ("Forman Report"), November 16, 2011, attached as Exhibit "Q."

F.3d 431, 437 (5th Cir. 2000); *Tate v. Boeing Helicopters*, 140 F.3d 654, 660 (6th Cir. 1998);

*Butler v. Ingalls Shipping, Inc.*, 89 F.3d 582, 586 (9th Cir. 1996); *Crespo v. Unisys Corp.*, 1996

WL 875565, at *15 (D.N.J. 1996) (adopting the 6th Circuit's standard requiring a showing that

the United States "exercised its discretion and approved warnings"). This Court has already

rejected other plaintiffs' arguments that a defendant must show the Navy specifically forbade it

from placing warnings on its products. *See, e.g., Hanson v. ACandS, Inc.*, Case No. 2:09-66701

(E.D. Pa. June 23, 2011) (attached as Exhibit "R").

     **1.**     **The Navy provided warning directives with respect to the types of products for which Crane Co. is allegedly responsible and Crane Co. complied with those directives.**

Crane Co. has produced extensive evidence regarding the government's involvement and

exercise of discretion in the design and manufacture of products, such as valves and sealing

materials, for shipboard use on U.S. Navy warships. *See*, Sargent Aff. (Ex. M); Sargent Report

(Ex. N). For example, Admiral Sargent confirmed that the Navy developed specifications used in

the contract design package and that thousands of such military specifications were developed

for various specific materials, equipment, components, books, manuals, and label plates. *See*

Sargent Aff. (Ex. M) at ¶ 24. Manufacturers such as Crane Co. were required to comply with

technical specifications in all details in order for the Navy to accept the equipment being

manufactured, tested, and shipped. *Id.* at ¶ 26. Specifically with respect to warnings, Admiral

Sargent explains,

> The Navy had precise specifications as to the nature of any
> markings, communications or directions affixed to or made a part
> of any equipment supplied by manufacturers such as Crane Co. for
> ultimate use aboard Navy ships.  Such manufacturers would not
> have been permitted, under the specifications, associated
> regulations and procedures, nor under the actual practice as it
> evolved in the field, to vary or to deviate in any respect from the
> Navy specifications in supplying equipment, including affixing any
> type of warning or caution statement to equipment intended for

> installation in a Navy ship, beyond those specifically required by
> the Navy without prior discussion and expressed approval by the
> Navy.

*Id.* at ¶ 46. Crane Co.'s corporate witness, Anthony Pantaleoni, confirms that Crane Co.

complied with the applicable government specifications in providing such products. *See*

Pantaleoni Aff. (Ex. O).

Both Admiral Sargent and Mr. Pantaleoni cite illustrative examples of military

specifications applicable to valves supplied to the Navy for shipboard use. *See, e.g.*, 45V17

(INT), Bureau of Engineering Specification, Valves, Gate, For Air Exhaust, Steam, Oil, or Water

Services (Shipboard Use) May 13, 1938 (attached as Exhibit 1 to Sargent Aff.); Mil-V-22052D

(SH), Military Specification, Valves, Stop and Stop Check, Globe, Angle, and Y Pattern, Cast or

Forced Carbon or Alloy Steel, Outside Screw and Yoke, 20 March 1978 (attached as Exhibit 2 to

Sargent Aff.). Each of these specifications provides precise instructions, labeling, and markings

demonstrating that the government exercised its discretion regarding warnings to be placed on

defendants' products. For example, Mil-V-22052D sets forth the exact information that

manufacturers are to include on valve label plates. *See* Mil-V-22052D at ¶ 3.4.2. Likewise,

specification 45V17 also identifies information to be included on the valve by manufactures. *See*

45V17 at ¶ D-11.

### 2. The Navy had superior knowledge about the hazards of asbestos.

This Court recently surveyed extensive, and uncontroverted, evidence regarding the

Navy's historical knowledge regarding certain hazards associated with the use of asbestos-

containing materials. *Faddish*, 2010 WL 4146108, at *9. Similarly, Crane Co. has presented

evidence explaining the extensive depth and breadth of the Navy's historical knowledge

regarding asbestos hazards. *See, e.g.*, Forman Aff. (Ex. P); Forman Report (Ex. Q).

Crane Co. has established that the United States exercised its discretion regarding the type and content of warnings that could be supplied with the various Crane Co. products which were supplied to the Navy, all of which were subject to governing military specifications, and that Crane Co. complied with those specifications. Moreover, the overwhelming evidence is that the United States Navy was a leader regarding hazards associated with asbestos. Accordingly, the elements of the government contractor defense are met here, and Crane Co. is entitled to summary judgment on this basis.

**IV.    CONCLUSION**

Crane Co. is entitled to summary judgment because:

- Plaintiff has failed to establish a genuine issue of material fact on the issue of causation, because Plaintiff has failed to produce any evidence establishing that Crane Co. manufactured or supplied any asbestos-containing product to which he may have been exposed.

- Crane Co. cannot be held liable for products it did not make, design, or sell.

- The "Crane" gasket and packing materials to which Mr. Krik was allegedly exposed were not Crane Co. products.

- Crane Co. is not legally responsible for alleged exposures to Cochrane products that were manufactured prior to late 1960 because Crane Co. did not purchase Cochrane's assets until late 1960.

- Plaintiff's claims with respect to his alleged exposures to Crane Co. products while serving in the Navy are barred by the government contractor defense.

Accordingly, Crane Co. respectfully requests that this Court grant its motion for summary judgment and dismiss Plaintiff's claims in their entirety.

Dated:    January 6, 2012                    Respectfully submitted,


                                             **K&L GATES LLP**


                                             /s/ Michael J. Zukowski
                                             Michael J. Zukowski (Pa. I.D. 84136)
                                             Syed D. Ali (Pa. I.D. 206719)

                                             K&L Gates Center
                                             210 Sixth Avenue
                                             Pittsburgh, PA 15222
                                             T:  412-355-6500
                                             F:  412-355-6501

                                             *Attorneys for Defendant Crane Co.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant Crane Co.'s Motion for Summary Judgment and Defendant Crane Co.'s Memorandum of Law in Support of its Motion for Summary Judgment were electronically served on Plaintiff's counsel and all counsel of record on January 6, 2012 and are available for viewing and downloading from the Court's ECF system.

/s/ Michael J. Zukowski
Attorney for Defendant Crane Co.