## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI) | MDL DOCKET NO. MDL 875 |
| THIS DOCUMENT RELATES TO: THE CASES ON EXHIBIT "A" | |

## PLAINTIFFS' AMENDED BRIEF ON ASBESTOS EXPOSURE PROXIMATE CAUSATION LAW

Plaintiffs submit this memorandum of law in response to summary judgment motions concerning the general principles of proximate causation law as it applies to asbestos exposure in Illinois and Wisconsin.[1]

In summary, the overwhelming body of scientific evidence and opinion regarding the causal link between asbestos exposure and cancer is that each and every exposure to asbestos is a significant and causative factor in the cancer. For this reason, appellate courts in Illinois and Wisconsin have not granted summary judgment to a defendant when there is direct evidence of a plaintiff's exposure to asbestos, no matter how slight the exposure. Similarly, appellate courts in Illinois and Wisconsin have denied summary judgment to a defendant when there is sufficient circumstantial evidence of a plaintiff's exposure to asbestos. Summary judgment has been

---

[1] Plaintiffs' first brief on this topic was filed on January 27, 2012. Because the deposition of one of plaintiffs' primary medical experts, Arthur Frank, MD, was completed only two days before the summary judgment responses were due, plaintiffs have filed, as directed by Magistrate Judge Strawbridge, a motion to permit this amended brief.

granted only when the circumstantial evidence is found insufficient to be considered by the jury.

In ruling on a motion for summary judgment, it is axiomatic that the court is not to resolve conflicts in the evidence, conflicts in the expert evidence, or to weigh the evidence or decide witness credibility. Yet that is precisely what the defendants are doing, in the form of challenging a plaintiff's direct evidence of asbestos exposure or in rejecting medical or scientific opinions about exposures. Simply put, the conflicts between the positions of the parties about whether an exposure is a substantial factor in causing the cancer are for the jury to resolve.

*Scientific/Medical Evidence on Causation of Lung Cancer*

The injured persons in all of these cases had significant cumulative occupational asbestos exposures, and have been diagnosed with cancer. Given the significant cumulative exposures, duration or amount of the exposure to the asbestos from products or premises of a particular defendant has minimal relevance to causation at the summary judgment stage. Medical science establishes asbestos-related lung cancer results from the cumulative exposure and not from a single exposure. According to the Helsinki report, widely regarded as authoritative with regard to diagnosis of asbestos-related lung cancer, "Cumulative exposure, on a probability basis, should thus be considered the main criterion for the attribution of a substantial contribution by asbestos to lung cancer risk." A. Tossavainen, "Asbestos, asbestosis, and cancer: the Helsinki criteria for diagnosis and attribution," 23(4) *Scand. J. Work, Envir't. & Health* 311 at 314 (1997). (Ex. 1).

The attribution of asbestos exposure as a cause of lung cancer is described in the testimony of Dr. Arthur Frank, a medical expert retained by plaintiffs. Dr. Frank was asked at his deposition about a series of statements on the medical science of linking lung cancers to asbestos

exposures. Dr. Frank is a Professor of Public Health at Drexel University in Philadelphia.

Q: Doctor, here's the first statement.

> Medical attribution of lung cancer to asbestos exposure is based on several factors, including without limitation, a history of exposure to asbestos, an appropriate latency period, and information regarding smoking and synergism with asbestos.

A:    **I agree with that.**

(Ex. 8, 166:20-167:1).[2]

In 1980, the Environmental Protection Agency stated that "No safe limit or 'threshold' of exposure is known." (Ex. 2.) Again in 1991, the EPA and National Institute of Occupational Safety and Health (NIOSH) issued a document stating that "NIOSH contends that there is no safe airborne fiber concentration for asbestos." (Ex. 3) In its 5 May 2006 "Position on Asbestos," the World Health Organization also stated that "there is no safe threshold level of exposure." (Ex. 4)

Once the disease has been attributed to asbestos, the question of what role each exposure has in causation is also addressed by expert medical testimony. In the cases pending before this court, plaintiffs' medical experts such as Dr. Frank have provided opinion testimony that all occupational asbestos exposures contributed to each plaintiff's respective asbestos-related conditions. Dr. Frank explained the rationale why each exposure is considered a cause:

---

[2]Other evidence can also be relevant, but not necessary to attribution. For example, evidence of underlying asbestosis or bi-lateral pleural disease strongly supports a medical conclusion that the plaintiff's cancer was caused by asbestos. As explained in the Helsinki report: "The presence of asbestosis is an indicator of high exposure....Pleural plaques are an indicator of exposure to asbestos....Bilateral diffuse pleural thickening is often associated with moderate or heavy exposures, as seen in cases with asbestosis, and should be considered accordingly in terms of attribution." (Ex. 1.)

Q.    Next statement. Once the cancer has been attributed to asbestos, each exposure

can be considered a substantial contributing cause of lung cancer.

A.    **I agree with that.**

(Ex. 8, 167:2-6)

Q.    Next statement, Doctor. The cumulative exposure to asbestos from each and every

product of any and all fiber types contributes to asbestos caused lung cancer.

A.    **I agree with that.**

(Ex. 8, 167:17-21)

Q.    Next statement. It is virtually never possible to know the exact dose from any

product, but it's recognized that any exposure above zero is a contributing factor

to the cumulative exposure.

A.    **I agree with that.**

(Ex. 8, 167:25-168:4)

Q.    Next statement. Since the exposures are cumulative, individual exposures cannot

be ruled out as a cause.

A.    **I agree with that.**

(Ex. 8, 168:10-13)

Q.    Next statement. No minimum duration is needed for an asbestos exposure to be a

cause if the cancer is attributed to the cumulative exposure.

A.    **I agree with that.**

(Ex. 8, 168:16-19)

Q.    What's your basis for saying that every exposure, no matter how small, is

4

significant? What's your methodology for determining that?

A.    The methodology for that is that we know that for carcinogens and very few of them have been studied at very low levels, but for those that have been, there is no safe level of carcinogen. That's been pretty well documented for asbestos where as little as one day of exposure causes cancer, where as little as a month or less of exposure doubles your risk of lung cancer.

We know it for radiation where extremely small doses of radiation can still cause cancer. We have things like benzene where the American Petroleum Institute comes out and writes that there is no safe level of exposure to benzene above zero.

So the concept is that any amount of carcinogen carries some risk, the risk being roughly linear. With increasing dose there's an increasing risk, but there is no safe level above zero. there is methodology for that and plenty for science to support that.

... What I would say is, the risk goes along with the amount of exposure. There's no exposure that you can have that gets a free pass that is said to be noncontributory, noncausative or nonsignificant. It is the relative significance.

(Ex. 8, 44:6-45:4, 45:21-25.)

Because the defendants did not take contemporaneous quantitative measurements of asbestos in air levels historically, or instruct that such measurements be taken, it is scientifically impossible to establish the relative attribution or contribution of any particular exposure to a cancer with a long latency period, such as asbestos-related cancer. As one court has stated, "requiring a daily log of activities and exposures would be impossible and therefore, an intolerable burden on those claiming [asbestos] injuries." *Anderson v. Combustion Engineering*, 647 N.W.2d 460, 465 (Wis. App. 2002).

Other plaintiff medical experts confirm the scientific methodology which Dr. Frank applies to causation of individual exposures, that make up the cumulative whole. Dr. Henry Anderson is another expert for plaintiffs and the Chief Medical Officer for Occupational and

Environmental Medicine in the State of Wisconsin. Dr. Anderson has stated in his reports in these cases "all asbestos exposure experiences while employed ... substantially contribute[] to cause ... cancer." (*E.g.*, ex 6.)   A third medical expert for plaintiffs is Dr. Carlos Bedrossian who has provided reports which state: "total and cumulative exposure to asbestos, from any and all products, containing any and all fiber types, [is] a significant contributing factor to ... asbestos-related cancer." (*E.g.*, ex. 7.). *See also Schultz v. Keene Corp.*, 729 F. Supp. 609, 615 (N.D. Ill. 1990) (because asbestos-related cancer "is the result of many years of inhaling asbestos fibers . . . each exposure contributed to the development of the disease").

According to all of plaintiff's medical experts, each exposure to asbestos is regarded as a significant or substantial contributing cause. To the extent that defendants or their experts dispute plaintiff's scientific evidence, that raises a genuine issue of fact, precluding summary judgment. "At the summary judgment stage, a court is not to weigh the evidence or make credibility determinations. . . . Instead, these tasks are left for the fact-finder." *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.* 998 F.2d 1224, 1230 (3rd Cir. 1993). *See also I.B.E.W. Local Union 380 Pension Fund v. Buck Consultants,* 2008 U.S. Dist. LEXIS 7001 (E. D. Pa. 2008) ("[C]onflicting expert reports create a genuine issue of material fact thereby precluding summary judgment on [a] negligence claim").

In addition, plaintiffs' industrial hygiene experts have also provided opinion testimony that the respective plaintiffs' asbestos exposures were significant although many are of short duration. Plaintiffs' industrial hygiene testimony is discussed in the briefs filed in the individual cases.

*MDL 875 Decisions on Asbestos Causation*

This court has recognized the admissibility of expert testimony that "every exposure to asbestos above background levels contributes to cause mesothelioma." *In re Asbestos Products Liab. Litig. (No. VI),* MDL 875, No. 2: 10-1627, November 2, 2010 order. Judge Strawbridge endorsed as "persuasive" the California Supreme Court decision in *Rutherford v. Owens-Illinois,* 941 P.2d 1203, 16 Cal. 4th 952, 958 (1997), where the court stated that although a plaintiff "must demonstrate to a reasonable medical probability that a product or products supplied by the defendant, to which he became exposed, were a substantial factor in causing his disease or risk of injuries, he is free to further establish that his particular asbestos disease is cumulative in nature, with many separate exposures each having constituted a 'substantial factor.'" *Rabovsky v. Air & Liquid Systems Corp.,* No. 10-cv-03202, Mem. Op. at 8 n. 6 (E. D. Pa., Jan. 25, 2012) (denying motions in limine to exclude "each and every exposure" opinion testimony).

To plaintiffs' knowledge, this court has not addressed any summary judgment motions that raise Illinois law and the issue of proximate cause in asbestos exposure cases. However, the causation law in Illinois is markedly different than the law in the Third Circuit. In *Thacker v. UNR Indust., Inc.,* 151 Ill.2d 343, 362 (1992), the Illinois Supreme Court expressly rejected the Third Circuit's proximate causation approach in *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 378 (3d Cir. 1990). Instead, in *Thacker* the Illinois Supreme Court adopted the "more liberal approach" set forth by the Washington Supreme Court in *Lockwood v. A C & S., Inc.,* 744 P.2d 605 (1987). *See Thacker,* 151 Ill.2d at 362.

This court has previously addressed the proximate causation standards in Wisconsin, noting that "Wisconsin's standards for exposure and product identification are quite liberal." *See,*

7

*e.g., Dion v. Anchor Packing Co.,* 10-cv-64681-ER, Doc. # 168, Oct. 4, 2011 Order, n. 1 at 7 (E. D. Pa. 2011). The court noted "Wisconsin courts have found that when plaintiffs have presented 'credible evidence from which a reasonable person could infer that [plaintiff] was exposed to' defendants' asbestos-containing products, then summary judgment must be denied, and the question of causation must be given to the jury." *Id.,* n. 1 at 4. *See also Brindowski v. Alco Valves, Inc.,* No. 10-cv-64684_ER, Jan. 12, 2012 Order (E. D. Pa.) (applying Wisconsin law).

The basic point is that both Illinois and Wisconsin favor jury resolution of disputed evidence about whether a particular exposure should be considered "a cause."

*Illinois Law on Asbestos Causation*

A plaintiff can present direct or circumstantial evidence of asbestos exposure. Direct evidence is testimony from the injured person (victim) or others that the victim was exposed by being in contact with or otherwise in close proximity to the asbestos products when fibers were released. Circumstantial evidence is evidence the plaintiff worked in an environment where the asbestos products were present and was exposed to asbestos as a result of activities being performed by others involving these products. *See, e.g., Tragarz v. Keene Corp.,* 980 F.2d 411, 418 (7th Cir. 1992) (applying Illinois law in asbestos-related lung cancer case). Direct evidence can include testimony by the injured party "that he or she worked with or in proximity to the defendant's asbestos containing products." *Id.* It can also include "evidence that coworkers saw the plaintiff working with or around defendant's asbestos products." *Id.* In addition, in the absence of or in addition to direct evidence, exposure can be established through "circumstantial evidence that the plaintiff worked in proximity to someone who remembers using the defendant's

8

product." *Id.* The court does not view exposure evidence "in isolation," but instead looks to "the
cumulative effect of the evidence as a whole." *Id.*


*Illinois Direct Evidence Cases*

*Tragarz* case

In *Tragarz v. Keene Corp.,* 980 F.2d 411, 418 (7th Cir. 1992), the jury found for the
plaintiff sheet metal worker and against defendants Owens-Corning and Keene Corp. The
decedent testified he had seen OC's Kaylo-brand insulation at various job sites, he had worked
around pipefitters who removed asbestos pipe covering from a Kaylo box, and he remembered
cutting Kaylo himself, although he could not recall precisely the job site where he had cut it.
*Tragarz* , 980 F.2d at 414-15. On the other hand, the decedent had no recollection of Keene's
Thermasil product, but one of the decedent's co-workers testified he had seen the plaintiff work
in proximity to the decedent with both Kaylo and Thermasil. The court stated:

> Evidence of such exposure can come in several forms. First, the injured party can
> testify that he or she worked with or in proximity to the defendant's asbestos
> containing products or the plaintiff can put forth evidence that coworkers saw the
> plaintiff working with or around the defendant's asbestos products. In addition to
> such direct evidence, the plaintiff can rely on circumstantial evidence that the
> plaintiff worked in proximity to someone who remembers using the defendant's
> product. *Schultz v. Keene Corp.,* 729 F. Supp. 609, 613 (N. D. Ill.1990) (a
> diversity case applying Illinois law).

*Tragarz* , 980 F.2d at 418.

The *Tragarz* court also explained how the "so-called frequency, regularity, and proximity
test" is "less vital in cases involving direct evidence." *Tragarz* , 980 F.2d at 420-21. The court
stated:

9

Moreover, it appears that this test has somewhat diminished importance when a plaintiff relies on direct evidence of exposure as opposed to circumstantial evidence. That is, many of the decisions that have dismissed cases based on the failure to adequately demonstrate frequency, regularity, and proximity, whether or not specifically mentioning this test, have been cases in which the plaintiff attempted to prove exposure through circumstantial evidence that an asbestos product was at a particular place over a particular time and that the injured party was at or near that place at that time. *See, e.g., Zimmer,* 140 Ill.Dec. at 232, 549 N.E.2d at 883; *Lohrmann,* 782 F.2d at 1164

. . . . the frequency, regularity, and proximity ... factors become somewhat less critical when a party puts forth direct evidence of exposure to a defendant's products.

*Tragarz* , 980 F.2d at 420-21.

The court emphasized that in direct evidence cases it is not necessary to establish the specific job site where an exposure took place:

According to OCF and Keene, a plaintiff must link the exposure to a specific job site in order to support a jury verdict of probable exposure. We do not agree with such an interpretation of Illinois law. In fact, neither OCF nor Keene have cited a single Illinois case that has held that *direct evidence* that the injured person worked with or in close proximity to the defendant's asbestos containing product is insufficient to support a finding of probable exposure unless the testifying witness can remember a particular site in which the exposure occurred. Granted, when a plaintiff relies exclusively on *circumstantial evidence* that asbestos was used at a particular site, the failure to adequately place the plaintiff at that site could be fatal to the plaintiff's claim. That is because without such evidence there would often be no proof of proximity and no proof of probable exposure.

*Tragarz* , 980 F.2d at 418-19.

*Schultz* case

In *Schultz v. Keene Corp.,* 729 F. Supp. 609, 615 (N.D. Ill. 1990), a lung cancer case, the court noted a plaintiff may defeat summary judgment "[b]y showing that he 'worked with or in

close proximity' to defendants' asbestos products," or through "testimony of coworkers who can

identify him as working with or around those products." *Schultz*, 29 F. Supp. at 613. Further, a

plaintiff may defeat summary judgment "if he can identify asbestos workers around whom he

worked and those workers can identify the products they used." *Id.*

In *Schultz*, Owens Corning argued the plaintiff's testimony he worked around its asbestos

products at various specific job sites was insufficient because the plaintiff's exposure was

"incidental" to a long construction career. The court rejected that view, holding the length of time

an individual is exposed to asbestos does not by itself determine what exposures are substantial

factors. *Id.* at 611, 615. Upon finding evidence of exposure to the products of one of the

defendants, the court emphasized the length of time of exposure is not dispositive, because "each

exposure contributed to the disease":

> It is true that Schultz' medical condition is the result of many years of inhaling
> asbestos fibers. But each exposure contributed to the development of the disease.
> Since each inhalation of asbestos dust can result in additional damage to lung
> tissue, it is nearly impossible to determine which exposure is directly responsible
> for the disease. *Borel v. Fibreboard Paper Prods. Corp.*, 493 F.2d 1076, 1083
> (5th Cir. 1973), cert. denied, 419 U.S. 869, 42 L. Ed. 2d 107, 95 S. Ct. 127
> (1974); *Blackston*, 764 F.2d at 1486. Defendants urge the court to adopt a broad
> rule requiring exposure to asbestos over an extended period of time before
> causation can be established. See *Lohrmann*, 782 F.2d at 1162-63. Such a rule,
> however, flies in the face of evidence which indicates that short periods of
> exposure -- from one day to three months -- can cause significant damage to the
> lungs. *See Workplace Exposure to Asbestos: Review and Recommendations*, U.S.
> Dep't of Health and Human Servs. and U.S. Dep't of Labor, DHHS (NIOSH)
> Publication No. 81-103, at 3 (Nov. 1980). The length of time that an individual
> was exposed to asbestos does not in itself determine how serious the injury will
> be. Several factors, including individual idiosyncrasy, the intensity of the
> exposure, and the nature of the contaminant all play a part in the development of
> the disease. *Zurich Ins. Co. v. Raymark Indus., Inc.*, 118 Ill.2d 23, 37, 514 N.E.2d
> 150, 156, 112 Ill. Dec. 684 (1987); *Borel*, 493 F.2d at 1083. 4 In the absence of
> any evidence demonstrating that the exposure to defendants' products was
> inconsequential, the court will not minimize the danger of even a relatively light

11

exposure. *See Borel*, 493 F.2d at 1083.

*Schultz,* 729 F. Supp at 615.


*Spain* case

In *Spain v. Owens Corning Corp.,* 710 N.E.2d 528 (Ill. App. 1999),[3] the appellate court

affirmed a plaintiff verdict based on exposure evidence consisting of the decedent's testimony he

saw boxes of defendant's insulation at the worksite, that insulation was stripped and replaced

from the pipes in his presence, and testimony of co-workers and third parties confirming that

defendant's asbestos-containing insulation was used at the work site. In affirming the verdict, the

court rejected the defendant's argument the evidence was insufficient "because decedent did not

know whether the boxes contained Kaylo or fiberglass insulation" and because the other key

witness "was not absolutely sure he installed Kaylo." *Spain* , 710 N.E.2d at 534. The court held

the witness's "uncertainty affects his credibility as a witness, [but] credibility is for the trier of

fact to weigh." *Id.*


*Circumstantial and "Fiber Drift" Cases*

*Thacker* case

In *Thacker v. UNR Indust., Inc.,* 151 Ill.2d 343, 362 (1992), the Illinois Supreme Court

recognized the distinction between direct and circumstantial evidence of asbestos exposure:

As we have noted, proof may be made by either direct or circumstantial evidence.

---

[3] The Illinois Supreme Court later overruled *Spain* on the separate issue of whether the trial court erred in refusing to permit defendants to introduce evidence of the decedent's exposures to other asbestos products. *Nolan v. Weil-McLain,* 910 N.E.2d 549 (Ill. 2009).

Circumstantial proof is "the proof of certain facts and circumstances in a given case from which the jury may infer other connected facts which usually and reasonably follow according to * * * common experience." (*Devine v. Delano* (1916), 272 Ill. 166, 179-80, 111 N.E. 742.) Due to the unique problems posed by asbestos injury, plaintiffs in cases such as this have had to rely heavily upon circumstantial evidence in order to show causation. A brief review of several cases from other jurisdictions is helpful.

*Thacker* , 151 Ill.2d at 357.

*Thacker* involved a widow who sued several defendants for causing her deceased husband to be exposed to asbestos at a manufacturing plant where he worked from 1954 to 1962. *Id.* at 349. The defendants included a group of companies related to Johns Manville as a supplier of asbestos fibers to the decedent's employer. *Id.* at 348-49. The decedent died from lung cancer, "but his death was hastened by the presence of asbestosis." *Id.* at 349. The decedent in Thacker worked for the plant for eight years, all but three months in the pipe-covering department. *Id.* at 349. It was a large open area about 600 feet in length, 300 feet in width, and 95 feet high. *Id.* The plant received at least 25 tons of asbestos from Manville entities in three of the years that decedent worked at the plant. *Id.* at 350. In six of the years that decedent worked at the plant, the plant received some 200 tons per month of asbestos from a different manufacturer. *Id.*

No evidence was offered to show the decedent had direct contact with the Manville product. The decedent gave deposition testimony that he opened bags of fibers from another supplier, but never saw the Manville bags. *Thacker* , 151 Ill.2d at 350. The case against Manville was based completely on the theory of "fiber drift" because the plaintiff worked in the large facility where the Manville product was used and dust was in the air. *Id.* at 350-51. Based on this evidence, the jury returned a verdict for the plaintiff. *Id.* at 351. The Illinois Supreme Court affirmed. The court discussed the cases involving circumstantial evidence of asbestos exposure,

13

particularly fiber drift. *Id.* at 357-59. Citing to the decision in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162-63 (4th Cir. 1986) and related cases, the Illinois Supreme Court stated:

> Each of these opinions focuses on the ability of the plaintiff to show that the injured worker was exposed to the defendant's asbestos through proof that (1) he regularly worked in an area where the defendant's asbestos was frequently used and (2) the injured worker did, in fact, work sufficiently close to this area so as to come into contact with the defendant's product. These requirements attempt to seek a balance between the needs of the plaintiff (by recognizing the difficulties of proving contact) with the rights of the defendant (to be free from liability predicated upon guesswork). (*Sholtis v. American Cyanamid Co.* (1989), 238 N.J.Super. 8, 29, 568 A.2d 1196, 1207.) The defendant has referred to this approach as the "frequency, regularity and proximity" test, and we adopt this test as the rule of law in Illinois.

*Thacker*, 151 Ill.2d at 359.

Applying this standard for circumstantial proof, the court agreed with the appellate court that, "the decedent regularly worked in dangerous proximity to dust generated from Manville's asbestos even if it assumed that Manville's asbestos was initially processed in areas of the plant removed from where the plaintiff worked and that the jury could thereby reasonably infer causation." *Thacker*, 151 Ill.2d at 365.

Separately the *Thacker* court considered the question of whether sufficient Manville asbestos was used in the plant to be considered a cause of the decedent's death. The court cited proof that less than 3% of the asbestos fibers processed at the plant during decedent's employment were supplied by Manville. *Thacker*, 151 Ill. 2d at 360. The court concluded 3% was not insufficient as a matter of law, stating: "In light of plaintiff's medical evidence which indicated that even slight exposure would adversely affect the decedent's health, however, and in light of the total volume of asbestos at the UNARCO facility, we cannot say that 3% is

14

insignificant as a matter of law." *Id.*

Defendants often misinterpret the "frequency, regularity, and proximity" test set forth as requiring specific quantitative proof of asbestos exposure. *Thacker*, 151 Ill. 2d 343. *Thacker* expressly applied that test in the context of circumstantial "fiber drift evidence" when no direct evidence exists, such as eyewitness or expert testimony, to prove the exposure. In *Thacker* defendant Johns Manville (JM) moved for summary judgment based on the victim's admission he did not work with JM asbestos and the absence of direct evidence the victim worked in proximity to JM asbestos. *Id.* at 350. The *Thacker* court held the "proximity" required for exposure can be proved by circumstantial evidence based on scientific fiber drift if the victim was frequently and regularly in areas where defendant's products were used. *Id.* at 366. *Thacker* further held that JM could be liable even though its asbestos constituted "even under the most generous calculation, a maximum of just 3% of the total dust in the plant." *Id.* at 356. The reality of the "frequency, regularity, and proximity" test is that it was intended for use in the legal setting in situations lacking direct evidence of exposure. The standard applies to determine when circumstantial evidence is sufficient to be submitted for jury determination of whether an exposure can be inferred. Once the jury has determined the circumstantial evidence creates an exposure, the separate question remains whether the exposure, like any exposures, is "a cause." Plaintiff's expert Dr. Frank testified to the absence of scientific literature requiring exposures to be "frequent, regular, and proximate" before they can be considered a cause:

Q.      Next statement. The scientific literature did not require an exposure to be

        frequent, regular, or proximate to be considered a cause.

A.      **I agree.**

15

Q.     And you're speaking, when you answer these questions, in reference to asbestos

exposures?

A.     **Yes.**

(Ex. 12, 168:23-169:1, 169:7-9). While plaintiffs do not dispute the "frequency, regularity, and

proximity" test applies in Illinois cases to determine if an exposure can be inferred from

circumstantial evidence, the standard does not have a basis in medical science to determine or

rule out which exposures are "a cause."


*Zimmer* case

        *Zimmer v. Celotex Corp.,* 549 N.E.2d 881 (Ill. App. 1989) is a circumstantial evidence

case involving service in navy shipyards in New York and New Jersey. The plaintiff, a shipfitter,

did not specifically recall working with any particular asbestos-containing product, although he

worked on hundreds of ships with boilermakers, pipe coverers and other asbestos-related trades.

Plaintiff instead relied on product identification testimony from other workers who worked on

some of the same ships in overlapping time periods. The plaintiff only had a specific recollection

of working with one of those co-workers. The court held that because none of the co-workers

could place the plaintiff on a particular ship at a particular time when any of the defendants'

asbestos-containing products were in use, the evidence was "insufficient to create the inference

that plaintiff was exposed to defendants' products":

> Although Rapchick, Paternoster, Morch, and Bauer were able to identify the
> defendants' products, they could not state that a particular product was used in a
> particular month on a particular ship. There was no evidence indicating how long
> these ships were in the shipyards or that these ships were in port only once.
> Moreover, there was no evidence that plaintiff worked on these ships at the exact

16

same time as the other four men or in close proximity to them as the defendants' products were being used.

549 N.E.2d at 884.

*Zimmer* was thus a circumstantial evidence case in which none of the evidence placed the plaintiff in proximity to any particular defendant's product. *Zimmer* does not stand for the proposition that in direct evidence cases, the testimony must specify "that a particular product as used in a particular month on a particular [jobsite]." *Id. See Tragarz,* 980 F.2d at 418-19 (citing *Zimmer* for proposition that "when a plaintiff relies exclusively on *circumstantial evidence* that asbestos was used at a particular site, the failure to adequately place the plaintiff at that site could be fatal to the plaintiff's claim").

*Wehmeier* case

In *Wehmeier,* 213 Ill. App. 3d 31 (4th Dist. 1991), the Fourth District of hte Illinois appellate court considered the issue of fiber drift and held the "quantity" of asbestos fibers is not the basis for applying the substantial factor test. The court in *Wehmeier* stated:

> Further, contrary to the Fund's argument, we do not find the fiber-drift theory contravenes the substantial-factor test for causation. As we construe the Fund's argument, the fiber-drift theory should be rejected because it would allow plaintiffs to recover after establishing exposure to only one asbestos fiber as opposed to many or a *substantial number* of fibers. The substantial factor test is not concerned with the *quantity* of the injury-producing agent or force but rather with its legal significance. (W. Keeton, Prosser & Keeton on Torts § 41, at 267 (5th ed. 1984); *McDowell v. Davis* (1968), 104 Ariz. 69, 448 P.2d 869.. Where there is competent evidence that one or a de minimis number of asbestos fibers can cause injury, a jury may conclude the fibers were a substantial factor in causing a plaintiff's injury.

213 Ill. App. 3d at 31 (emphasis in original).

*Johnson* case

In *Johnson v. Owens-Corning Fiberglas Corp., A.P.,* 313 Ill. App. 3d 230, 236 (2000), the Illinois appellate court upheld a jury verdict in a lung cancer case where the evidence established only that the defendant's asbestos-containing product (Kaylo insulation) was delivered and used at the plant where the plaintiff had worked, and where expert testimony showed asbestos fibers, once released, can remain airborne for a month and travel as far as a mile. The deceased victim in *Johnson* worked for 46 years at Keystone Steel & Wire Company in Bartonville until he was diagnosed with lung cancer. *Id.* at 232-33. The appellate court reversed the granting of a JNOV in favor of two defendants. *Id.* at 232. The evidence at trial did not involve direct exposure where the victim used the products. Instead the plaintiff relied upon fiber drift evidence. *Id.* at 235-36. The appellate court recited the applicable standard for causation in asbestos cases.

> In a cause of action for negligence or strict products liability arising from alleged exposure to asbestos, a plaintiff must prove that the defendant's asbestos was the cause in fact of the injury. *Thacker v. UNR Industries, Inc.,* 151 Ill.2d 343, 177 Ill.Dec. 379, 603 N.E.2d 449 (1992). To prove causation in fact, the plaintiff must prove medical causation, i.e., that exposure to asbestos caused the injury, and that it was the defendant's asbestos-containing product which caused the injury. *Thacker,* 151 Ill.2d 343, 177 Ill.Dec. 379, 603 N.E.2d 449. With respect to the directed verdicts in the case at bar, only the latter burden is at issue.
>
> To meet this burden, a plaintiff must show that the injured party was exposed to the defendant's asbestos through proof that he regularly worked in an area where the defendant's asbestos was frequently used and the injured party worked in sufficient proximity to this area so as to come into contact with the defendant's product. *Thacker,* 151 Ill.2d 343, 177 Ill.Dec. 379, 603 N.E.2d 449. This test is often referred to as the "frequency, regularity and proximity" or "substantial-factor" test.

*Johnson,* 313 Ill. App. 3d at 235.

The operative language is the injured person must "come into contact with the

18

defendant's product." 313 Ill. App. 3d at 235. As the *Johnson* court later explained, the

"frequency, regularity, and proximity" test does not require proof of exposure to a "substantial

number of the defendant's asbestos fibers" or to any particular "quantity of asbestos." *Id.* at 237-

38. The court held: "In actuality, the substantial-factor test is not concerned with the quantity of

asbestos but its legal significance. Where there is competent evidence that one or a *de minimis*

number of asbestos fibers can cause injury, a jury may conclude the fibers were a substantial

factor causing a plaintiff's injury." *Id.* at 237-38 (citing *Wehmeier v. UNR Indus., Inc.*, 213 Ill.

App. 3d 6 (4th Dist. 1991).

 *Johnson* underscores the distinction between 1) inferring the fact of an exposure from

circumstantial evidence in fiber drift cases which do not involve direct exposure, and 2)

determining whether the exposure is a substantial factor which does not require a particular

quantity of fibers. Under *Johnson*, a jury, and the court in ruling on summary judgment, should

be guided by the scientific evidence that small numbers of fibers can cause mesothelioma, i.e. are

a substantial factor.

*Nolan* case

 The recent Illinois Supreme Court decision in *Nolan v. Weil-Mclain*, 233 Ill. 2d 416

(2009) is instructive because it holds that jurors should be allowed to consider evidence of all

exposures. The court considered the case of a mesothelioma victim with a history of 38 years in

the building trades and a variety of asbestos exposures. *Id.* at 420. The court held: "Our case law-

-properly interpreted--stands for the proposition that the jury must be allowed to sort through

competent--and likely conflicting--evidence so that it can fairly resolve whether exposure to a

particular product was the proximate cause of injury." *Id.* at 445.

In reaching the conclusion that the jury should hear the evidence of all exposures, the court in *Nolan* recognized the validity of scientific evidence that "all exposures" contribute to the development of mesothelioma and low levels of exposure cause mesothelioma. "Dr. Mark [plaintiff's medical expert] found it impossible to determine which asbestos exposure during decedent's career was the sole or single cause of his mesothelioma, and opined that 'each and every exposure to asbestos that [decedent] had was a substantial contributing factor in causing his malignant mesothelioma.'" *Id.* at 423. The *Nolan* court also noted that the jury heard evidence that "every asbestos fiber can contribute to the disease." *Id.* at 445. The *Nolan* court confirmed that "*Thacker* allowed the jury to consider all the evidence–including that of other exposures–in deciding whether the defendants were the legal cause of the decedent's injuries" and that "proximate cause is properly a question of fact for the jury to resolve based upon competent evidence." *Nolan,*, 233 Ill. 2d at 435 and 439.

*Wisconsin Law on Asbestos Causation*

In Wisconsin the standards to be applied at the summary judgment stage regarding exposure and causation in asbestos cases are set out in *Horak v. Building Services Industrial Sales Company*, 750 N.W.2d 512 (Wis. App. 2008), and *Zielinski v. A.P. Green Industries, Inc.*, 661 N.W.2d 491 (Wis. App. 2003). *See, e.g., Dion v. Anchor Packing Co.,* 10-cv-64681-ER, Doc. # 168, Oct. 4, 2011 Order, n. 1 at 7 (E. D. Pa. 2011) (discussing Wisconsin law concerning asbestos exposure proximate causation).

As this court has stated, to withstand a defense motion for summary judgment under

20

Wisconsin law a plaintiff in an asbestos case need only show:

    1.     that the plaintiff did "the type of work" that used asbestos;

    2.     plaintiff's employer bought or 'probably bought' asbestos from defendant; and

    3.     a reasonable jury could infer that plaintiff therefore used asbestos in his work.

*Dion,* Oct. 4, 2011 Order, n. 1 at 2.

In Wisconsin, a plaintiff is not required to prove that defendant's asbestos was "*the* cause" of asbestos-related disease, only that it was "*a* cause". *Dion,* Oct. 4, 2011 Order, n. 1 at 2. *See Horak,* 750 N.W.2d at 516. "In Wisconsin, the cause of an accident is not determined by its most immediate factor; rather 'there may be several substantial factors contributing to the same result.'" *Sampson v. Laskin,* 224 N.W.2d 594, 597-98 (Wis. 1975).

Accordingly, a motion for summary judgment must be denied when a Wisconsin plaintiff has presented "credible evidence from which a reasonable person could infer that [plaintiff] was exposed to [defendant's] products." *Zielinski,* 661 N.W.2d at 497. The jury is permitted to "extrapolate" that the victim was repeatedly exposed to asbestos based upon the job duties, the work environment, and limited instances of specific exposures which can be recalled by witnesses. *Anderson v. Combustion Engineering,* 647 N.W.2d 460 (Wis. App. 2002).

*Zielinski* case

In *Zielinski v. A.P. Green Industries, Inc.,* 661 N.W.2d 491 (Wis. App. 2003), the victim worked at a large foundry (Ladish) in Milwaukee. The evidence showed defendant's refractory product, Weber 48, was "probably" used at the foundry and the victim had duties which involved use of this type of refractory product. There were multiple suppliers (approved vendors) of this

type of product to Ladish. There was no evidence to establish: 1) how much Weber 48 was purchased compared to other products of the same type; 2) that the victim actually used the defendant's product; or 3) that the defendant's product was used in proximity to the victim. The *Zielinski* court reversed the grant of summary judgment. The court found circumstantial evidence was sufficient, holding that the reasonable causation inferences which could be drawn from probable supply and the same type of product created a genuine issue of material fact regarding causation. *Zielinski*, 661 N.W.2d at ¶ 20-21. The *Zielinski* court held that the "totality of the circumstances" should be examined in determining whether summary judgment is proper and "decline[d] to adopt a bright-line rule regarding causation for fear of over-simplifying such a complex issue." *Zielinski*, 2003 WI App at ¶ 18.


*Horak* case

In *Horak*, the victim worked for many years for a single employer as an insulator at multiple jobsites. Defendant BSIS sold asbestos products to the victim's employer. The trial court granted summary judgment in favor of BSIS because "There is no evidence to establish that any Building Service [*sic*] product ever went to a particular job site where [the victim] was." *Horak*, 750 N.W.2d at ¶ 7. The appellate court reversed the grant of summary judgment. The court held that there was evidence BSIS's product was supplied to the employer and a reasonable inference could be drawn that the victim was exposed to "*some*" BSIS asbestos during the five years for which the supply relationship had been shown. *Horak,* 750 N.W.2d at ¶ 9-10. Plaintiff need not prove a defendant's asbestos was "*the* cause" of decedent's mesothelioma, she only has to prove that it was "*a* cause". *Horak,* 750 N.W.2d at ¶ 15.

Zielinski and Horak are also significant for what a plaintiff does not have to prove in asbestos cases including: 1) eyewitness testimony of the victim's exposure to the asbestos; 2) the primary source of exposure; or 3) specific dates and locations of exposure. Zielinski and Horak do not require plaintiff to have an eyewitness to an exposure to a specific product or to have evidence of a particular quantity of the product. The question on summary judgment is whether there is a reasonable basis in the record for a jury to find that defendants' asbestos was a cause of decedent's mesothelioma. See, e.g., Horak, 2008 WI App, at ¶ 15-16.

*Anderson* case

The appellate court in *Anderson v. Combustion Engineering, Inc.,* 256 Wis.2d 389, 647 N.W.2d 460, 2002 WI App 143, (2002 affirmed the jury verdict holding boiler manufacturer Combustion Engineering 29% responsible for the mesothelioma of a WEPCO employee. Anderson was a machinist doing maintenance work for WEPCO for many years at a power plant. *Anderson* 256 Wis.2d at ¶ 2. On appeal, Combustion Engineering contended that based on co-worker testimony, "the very most that the jury could reasonably conclude is that Anderson breathed some unknown quantity of 'dust' emanating from Combustion Engineering boilers on four occasions for a few hours over his 40 year career." *Anderson* 256 Wis.2d at ¶ 11. In affirming the jury verdict, *Anderson* held a jury can "extrapolate" from the testimony of coworkers that decedent was repeatedly exposed to asbestos based upon limited recall of specific instances. *Anderson* 256 Wis.2d at ¶ 11. "Requiring a daily log of activities and exposures would be impossible and therefore, an intolerable burden on those claiming [asbestos] injuries."

Absolute certainty thus is not required to defeat a motion for summary judgment in

asbestos cases. The "law must be sensitive to not place unrealistic burdens on those seeking legal redress." *Anderson*, 256 Wis.2d 389, 399 at ¶ 11.

Wisconsin courts recognize there is some degree of speculation in all decisions reached by juries. In *Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, 241 Wis.2d 804, the Wisconsin Supreme Court recognized summary judgment is seldom proper in negligence cases. The court held that the existence of competing inferences, one favoring plaintiff and another favoring defendant, from material facts or disputed material facts were sufficient to deny a motion for summary judgment. 241 Wis. 2d at ¶ 21-27. "If a defendant seeks summary judgment, he or she must produce evidence that will destroy any reasonable inference of negligence or so completely contradict it that reasonable persons could no longer accept it." 241 Wis. 2d ¶ 78. The court in *Lambrecht* rejected the notion that the need for speculation, conjecture, or the presence of inconsistent facts requires the case be removed from jury consideration, stating:

> The defendants' arguments regarding jury speculation seem to us to be overstated. The U.S. Supreme Court has noted that all jury determinations require some level of conjecture or speculation and that cases should be taken away from the jury only when there is a complete absence of probative facts. Where there is an evidentiary basis for the complainant's claim, a fact-finder is free to discard or disbelieve inconsistent facts. If the evidence might reasonably lead to either of two inferences it is for the jury to choose between them. In this sense, circumstantial evidence is like testimonial evidence. The fact-finder uses its experience with people and events in weighing the probabilities.

241 Wis. 2d at ¶ 81, (internal citations omitted).

## Conclusion

Where appropriate, plaintiffs will supplement this discussion of causation law and apply the applicable causation standards in their individual briefs in response to the various motions for summary judgment.

Dated: February 3, 2012

/S/ Robert G. McCoy
Attorneys for Plaintiff

Allen D. Vaughan
Michael P. Cascino
Robert G. McCoy
Cascino Vaughan Law Offices, Ltd.
220 South Ashland Ave.
Chicago, IL 60607
(312) 944-0600
(312) 944-1870 (fax)
bmccoy@cvlo.com