IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES KRIK,<br><br>                    Plaintiff,<br><br>          v.<br><br>BP AMERICA, INC., et al.,<br><br>                    Defendants. | Cause No. 01 MDL 875<br><br><br>Case No. 11-CV-63473 and<br>Case No. 08-CV-91296<br>Consolidated<br><br>*Trans. from IL-ND Case No. 10-CV-07435* |

## PLAINTIFF'S RESPONSE TO CRANE COMPANY'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Charles Krik responds to and opposes Crane Company's motion for summary judgment as follows:

### INTRODUCTION

Crane Co.'s motion for summary judgment raises several issues, but only two are truly germane: (1) Charles Krik cannot show he was exposed to any Crane Co. product that contained asbestos; and (2) the government contractor defense bars Charles Krik's claims for all asbestos exposure during Krik's service in the United States Navy. However, and as will be discussed below, Charles Krik was repeatedly exposed to Cranite, which Crane Co. admits was a product sold by Crane that contained asbestos. Much of Krik's exposure to Cranite was as a civilian and the defenses are not applicable

1

to this civilian exposure.  Further, the experts of plaintiff and the experts of Crane Co. establish that issues of material fact exist about application of the government contractor defense.[1]

## STATEMENT OF FACTS

A.    Crane Co. Was The Exclusive Seller And Promoter Of Cranite, A Product That Contains Asbestos

Anthony Pantaleoni is the corporate designee witness for Crane Co.  (Exhibit 18, Pantaleoni Dep. 1/26/06, p. 122).[2]  According to Pantaleoni, between 1920 and 1972, Crane Co. was the exclusive seller of Cranite brand sheet packing material.  (Exhibit 18 at p. 123; Exhibit 19, Crane Co.'s Interrogatory Answers from Texas State Court case). Cranite was material manufactured for Crane Co., and Cranite was a trade name Crane Co. used for this product.  (Exhibit 20, Pantaleoni Dep. 12/02/03, p. 107-108).  Cranite was sold through a distribution of supply branches and Crane Co. received revenue from the sales.  (Exhibit 21, Pantaleoni Dep. 7/08/09, p. 186).

Crane Co. promoted the use of Cranite in its catalogs.  One such Crane Co. catalog extols "the great number of services for which Cranite sheet packing can be used," touts Cranite's "unusually high quality and its ability to withstand deterioration," and states

---

[1]  Crane Co.'s other arguments are that it owes no duty to warn of the dangers of asbestos in products in neither manufactured nor sold, and Krik was not exposed to asbestos in the Cochrane feed tanks.  Krik's exposure to asbestos contained in Crane Co. products renders moot Crane's assertion it owes no duty to warn of the dangers of asbestos contained in products manufactured or sold by others, and Krik is not making any argument regarding the Cochrane feed tanks.

2  The Exhibits begin with number 18 because one of plaintiff's prior filings in this court entitled "Plaintiffs' Brief on Asbestos Exposure Proximate Causation Law" contains 17 exhibits.

Cranite is "economical to purchase the packing in quantities and to carry it in stock." (Exhibit 21 at p. 66-67, 188).

Cranite can be used both for gasket and packing material. (Exhibit 18 at p. 136). Cranite has always contained asbestos during the entire 52 years Crane Co. was the exclusive seller of Cranite. (Exhibit 18 at p. 123). The sheet gasket material in Cranite contained 75% chrysotile asbestos. (Exhibit 18 at p. 196). There has never been a non-asbestos formulation of Cranite. (Exhibit 21 at p. 66).

Crane Co. did not conduct any studies before the mid-1980s regarding the asbestos exposure from its products. (Exhibit 22, Pantaleoni Dep. 6/14/06, p. 94-95). Crane Co. did not stop selling asbestos products until around 1986. (Exhibit 22 at p. 98-99). Crane Co. did not inform anyone its products contained asbestos until mid-1980. (Exhibit 22 at p. 89).

B.     Plaintiff Charles Krik's Exposure To Cranite

Charles Krik served in the Navy from 1954 to 1970, first as a boilerman and then as a boilermaker. (Exhibit 23, Krik Declaration ¶ 2).3 Krik performed repair and

---

3 This Declaration was executed after Krik's depositions, and Krik anticipates Crane Co. will argue in reply this Declaration is a "sham affidavit" that should be disregarded. However, the Declaration concerns matters upon which Krik was not questioned at his depositions. Specifically, Krik was not questioned regarding his exposure to Cranite, which is a Crane Co. product that contains asbestos, and Krik was not questioned about his experiences in ordering Cranite products while in the Navy. In such a circumstance, it is proper to consider a declaration that does not contradict prior deposition testimony. *See Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 284 (3rd Cir. 2000) ("since Farrell was not asked about DeLong's attitude or demeanor, and the District Court's conclusion rests upon an inference drawn from a narrow reading of the deposition and a broad reading of her certification, we disagree with the District Court and conclude that Farrell's later certification should be considered as evidence"). In fact, it is reversible error not to consider such a declaration. *See EBC, Inc. v. Clark Bldg. Systems, Inc.,* 618 F.3d 253, 269 n.17 (3rd Cir. 2010) ("we have gone so far as to reverse a district court, in part for refusing to

maintenance work on boilers, high-pressure, high-temperature turbines and other steam system equipment on destroyers in the Seventh Fleet in the Pacific and on other vessels. (Exhibit 23 ¶ 2).  Part of Krik's regular duties was to order parts to be used for repair and maintenance work, and this included sheet material to be used for gaskets.  (Exhibit 23 ¶ 3).

Krik routinely ordered Cranite brand products, including sheet material for gaskets, and he ordered these products from the Navy supply catalog.  (Exhibit 23 ¶ 4).4 The sheet material had the name "Cranite" stamped on it.  (Exhibit 24, Illustration of Cranite sheet material from Crane Co. sales catalog).  Krik ordered "a lot" of sheet gasket material from Crane Co., and did so more than 100 times.  (Exhibit 25, Krik Dep, 07/18/11, p. 55-56).  Krik ordered Cranite products at least a hundred times during his Naval career.  (Exhibit 23 ¶ 4).  Some of the work Krik performed included repair work on Crane valves, which required tearing the valves down and replacing the gaskets and packing, and Krik used "a lot" of sheet gasket material in this work.  (Exhibit 25 at p. 58).

The Navy supply catalog listed the trade name "Cranite" as one of the sources for sheet material for gaskets.  (Exhibit 23 ¶ 4).  Krik would complete order forms and send them to the base supply depot, which would order the products.   (Exhibit 23 ¶ 4). Cranite sheet material for gaskets was the primary sheet material Krik worked with. (Exhibit 23 ¶ 4).

---

consider an affidavit that did not in fact contradict the earlier deposition testimony").
4  As discussed in footnote 3, Krik was not questioned at his deposition regarding the term "Cranite."  It therefore is proper for Krik to discuss his use of Cranite in his Declaration.

During most of Krik's 16 year Naval career, he worked with Cranite sheet material on a regular basis on numerous ships. (Exhibit 23 ¶ 5). For instance, between July of 1963 and May of 1965, Krik was stationed on the repair ship Vulcan, and he repaired about ten Crane valves a week during this time. (Exhibit 25 at p. 74). Krik also changed gaskets and packing on Crane valves on the ships Sproston, Jenkins, and Tutuila. (Exhibit 25 at p. 65, 74). Krik used Cranite material in performing this repair and maintenance work. (Exhibit 23 ¶ 5). In performing this repair and maintenance work, Krik first had to remove the existing gasket material, and then Krik would install the new Cranite gaskets. (Exhibit 23 ¶ 5). In performing this work, Krik frequently observed that the existing sheet gasket materials he was repairing or replacing themselves were Cranite product. (Exhibit 23 ¶ 6). Krik knew he was replacing a Cranite product because the Cranite name or mark was still visible on the old gasket. (Exhibit 23 ¶ 6). Krik installed and removed Cranite materials over one hundred times each over his Naval career. (Exhibit 23 ¶ 6).

Krik was honorably discharged from the Navy in 1970. (Exhibit 23 ¶ 7). During Krik's civilian career he continued to work with Cranite on a regular basis. (Exhibit 23 ¶ 7). Krik periodically removed and replaced many Cranite gaskets through the mid to late-1970s. (Exhibit 23 ¶ 8). He did this because the gaskets on valves on high-temperature lines needed to be replaced on average every five years. (Exhibit 23 ¶ 8). Krik's use of Cranite during his civilian career occurred in Illinois. In this civilian work Krik installed and removed Cranite brand over one hundred times each. (Exhibit 23 ¶ 7).

During both his Naval and civilian careers, the repair and maintenance work Krik performed required tearing valves down and replacing the gaskets and packing. (Exhibit 25 at p. 58).  Krik usually cleaned the gaskets of the valves with a scraper and a wire brush. (Exhibit 25 at p. 59).  Krik would use a ball peen hammer to cut the sheet material in order to form gaskets. (Exhibit 25 at p. 56).

C.     Krik Was Exposed To Asbestos By Working With Cranite

Frank Parker is Krik's industrial hygiene expert, and one of Parker's opinions is that "Mr. Krik was occupationally exposed to significant concentrations of asbestos fibers from his and his co-workers' disturbance of asbestos-containing gaskets." (Exhibit 26, Report of Frank Parker ¶ 3a).  Parker's bases for this opinion are "asbestos gaskets also released asbestos fibers whenever they were disturbed by scraping and/or wire brushing as Mr. Krik described.  Any disturbance of these gaskets would have released significant concentrations of asbestos fibers." (Exhibit 26 ¶ 3a).

Another of Parker's opinions concerns Krik's use of a ball peen hammer to cut Cranite sheet material to form gaskets.  Parker states "Mr. Krik's exposures from cutting new sheet gasket material would have created significant exposures to asbestos.  The concentrations were in excess of typical ambient concentrations.  The exposures would have exceeded current standards used by industrial hygienists, but were not probably above the contemporary standards for exposures before 1972.  However the standards before 1972 were not intended to be protective of cancer." (Exhibit 27, Declaration of Frank Parker).

6

As set forth above, Crane Co. was the exclusive seller of Cranite for nearly fifteen years, Cranite contains asbestos, and Krik regularly and routinely used Cranite for two decades. In other words, Krik was exposed to substantial concentrations of asbestos contained in Crane Co.'s own product.

## ARGUMENT

### I.     The Standard Of Review

"A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." *American Eagle Outfitters v Lyle & Scott, Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "All inferences must be viewed in the light most favorable to the nonmoving party, . . . [and] the court construe facts and draws inferences in favor of the party against whom the motion under consideration is made." *J.S. ex rel. Snyder v Blue Mountain School Dist.*, 650 F.3d 915, 925 (3d Cir. 2011). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

### II.    Charles Krik Was Exposed To Asbestos In Crane's Products

Crane Co.'s liability for Krik's exposure to asbestos during his Naval career is governed by federal law, and Crane Co.'s liability for Krik's exposure to asbestos during his civilian career is governed by Illinois law, as this is the site of the latter exposure. *Deuber v Asbestos Corp. Ltd.,* 2011 WL 6415271 (E. D. Pa. December 2, 2011) (Robreno, J.). Plaintiff has already addressed the requirements for proving causation under Illinois and maritime law in the separately filed brief entitled "Plaintiffs' Brief on Asbestos Exposure Proximate Causation Law," and incorporates that discussion.

As discussed above, Crane Co. was the exclusive seller of Cranite from 1920-1972. Cranite contains asbestos, and Krik worked regularly and extensively with Cranite between 1954 and the mid 1970s, in both his Naval and civilian careers. Krik has stated he removed and installed Cranite product over a hundred times each in both his Naval and civilian careers. In the course of this removal and installation work, Krik used a ball peen hammer to cut Cranite sheet material to form gaskets. In other words, Krik had over 400 separate exposures to Cranite over a 20 year period. Krik's industrial hygiene expert has stated Krik's exposure to asbestos was "significant" through the removal and installation of Cranite, and thought the use of a ball peen hammer to cut Cranite sheet material.

"All inferences must be viewed in the light most favorable to the nonmoving party, . . . [and] the court construe facts and draws inferences in favor of the party against whom the motion under consideration is made." *J.S. ex rel. Snyder v Blue Mountain School Dist.,* 650 F.3d 915, 925 (3d Cir. 2011). As a result, this court must take as true

8

that Charles Krik experienced substantial exposure to the asbestos contained in Crane

Co.'s products during the over four hundred times Krik installed or removed Cranite, and

this court therefore should deny Crane's motion for summary judgment.

## III.   The Government Contractor Defense Does Not Apply In This Case

### A.   The Three Prongs Of The Defense

This is not the first time this court has been confronted with a defense motion for

summary judgment that invoked the government contractor defense.  As this court has

already held, "the government contractor defense is an issue of federal law and therefore,

the MDL transferee court applies the law of the circuit where it sits, which in this case is

the law of the United States Court of Appeals for the Third Circuit." *Willis v BW IP*

*International,* 2011 WL 3818515 (E. D. Pa. August 29, 2011) (Robreno, J.).  And as this

court further stated in *Willis*:

> To satisfy the government contractor defense, a defendant must show that: (1) the
> United States approved reasonably precise specifications for the product at issue;
> (2) the equipment conformed to those specifications and; (3) it warned the United
> States about the dangers in the use of the equipment that were known to it but not
> to the United States. . . . The third prong may also be established by showing that
> the government knew as much or more than the defendant contractor about the
> hazards of the product.
>
> As to the first and second prongs, in a failure to warn context, it is not enough for
> defendant to show that a certain product design conflicts with state law requiring

warnings. . . .. Rather, the defendant must show that the government issued

reasonably precise specifications covering warnings – specifications that reflect a

considered judgment about the warnings at issue. . . . Government approval of

warnings must transcend rubber stamping to allow a defendant to be shielded from

state law liability.

*Willis*, 2011 WL 3818515 at *5-6 (internal citations omitted).

## B.    The Defense Does Not Apply To Krik's Civilian Exposure To Cranite

By definition, the government contractor defense requires that the defendant be a

contractor of the United States government.  The defense therefore does not apply beyond

this scope, meaning the defense does not apply to Krik's exposure to Cranite during his

civilian career.  Crane Co. tacitly admits this when it states federal maritime law applies

to Krik's Naval exposure whereas Illinois law applies to Krik's civilian exposure.

Consequently, Crane Co.'s assertion of this defense only applies to Krik's exposure

during his Naval career, or from 1954-1970.  The defense does not apply to Krik's

exposure during the years after his honorable discharge in 1970.

## C.    Genuine Issues Of Material Fact Exist Regarding The First Prong

The first prong of the government contractor defense requires the defendant to

show "the United States approved reasonably precise specifications for the product at

issue."  Krik himself provides affirmative evidence the Navy did not approve, or even

issue, any specifications for the Cranite that Krik used over his 15 year Naval career.

Krik regularly ordered spare or replacement parts and products between 1954 and 1970,

and during this time Krik became familiar with how the Navy supply system operated in terms of ordering piping, valves, and gaskets. (Exhibit 23 ¶ 10). If the Navy wanted a specialty item for a particular application, then the Navy would issue a specification and invite vendors to bid on producing the item. (Exhibit 23 ¶ 10). Krik does not recall any Cranite products that were mandated as components pursuant to any Navy specification for specialty products. (Exhibit 23 ¶ 10). The Navy applications for the work Krik performed involved ordering from a standard list of vendor brands, with Cranite being the primary one Krik ordered and used. (Exhibit 23 ¶ 10).

In addition, Krik submits the report of his own expert, Retired Navy Captain R. Bruce Woodruff. Woodruff served in the Navy for 15 years and he was a Navy Architect and Marine Engineer. (Exhibit 28, Woodruff Report). Woodruff served on Navy ships and worked on boilers and engines; he attended Naval Destroyer Engineering School, and he worked in a Navy shipyard. Based upon his training, education, and experience, Woodruff states the Navy placed primary emphasis on the safety of its personnel, and the Navy would have allowed Crane Co. to provide warnings about the dangers of the asbestos contained in Cranite. (Exhibit 28). Woodruff also confirms the Navy specifications for sheet packing were generic and not specific to Cranite. (Exhibit 28).

This specific, affirmative evidence that (1) the Navy did not issue, let alone approve, any specifications for Cranite, the particular product that Krik used, and (2) that the Navy would have allowed Crane Co. to provide warnings about the dangers of the asbestos sin Cranite, is not refuted by the generic evidence of Crane Co.'s expert David

11

Sargent that the Navy would never have allowed any warnings to be placed on Crane Co.'s products. Sargent offers no specific opinions regarding Cranite, whereas Krik has offered specific evidence the Navy approved no specifications regarding Cranite. Moreover, Sargent cites no specific regulations or specifications to support his bare conclusion the Navy would have never allowed any warnings to be placed on Cranite or any other Crane Co. product for that matter. Further, Sargent has offered contradictory testimony which creates a genuine issue of material fact – i.e. Sargent has testified the Navy did not prohibit Crane Co. from providing warnings regarding the dangers of asbestos:

> Q. (By Mr. lola) So Buffalo Pumps can put whatever they want in there as long as the Navy reviews it and approves it and says it's acceptable, right?
>
> A. 1 would have to say that it would have to be in the format and it would have to fall into the categories that the Navy specification says are there.
>
> Q. (By Mr. lola) And if it did all that, it could be placed into the technical manual, correct?
>
> A. It could be placed in there for review, certainly.
>
> Q. And if it was reviewed and approved by the U.S. Navy, it could be placed in the technical manual that was exchanged with the U.S. Navy?
>
> A. Yes, absolutely, sure.
>
> . . .

Q. *And are you aware of a single prohibition by the United States Navy or the United State Government that ever told Buffalo Pumps, "You are prohibited from warning about the dangers and hazards of asbestos "?*

A. Well, first of all, that presumes that Buffalo Pumps knew there was a hazard at the time frame we are talking about. But no, the Navy did not prohibit what went into manuals. It, in fact, required the categories of information that would be included.

(Exhibit 29, Deposition of Sargent in *Gudmunson v. Buffalo Pumps, Inc.,* February 8, 2005, case no. 03-L-538 (3d Jud. Cir., 1Il.), at 180-81).

Sargent repeated this testimony in another case as well.  In 2006 Sargent again said the Navy did not prohibit Crane Co. from providing warnings regarding the dangers of asbestos:

Q. Mr. Sargent, you haven't seen any Navy regulations which prohibited an equipment manufacturer from placing any type of warning aboard its equipment in the 1950s, have you?

. . .

A. Sir, the Navy does not, in my experience, publish things that prohibit actions. The Navy publishes requirements and specifications that are specific in what is required in documentation and in labeling of equipment. So I couldn't respond directly to your question. I wouldn't expect to find something from the Navy that directed what could not be done.

13

Q. You don't have a single specification from any of these regulatory bodies that
you've been talking about that prohibits Westinghouse Electric Company from
warning workers at Ingalls Shipyard by placing a warning on their turbines about
the hazards of asbestos, do you?

A. We do not because we are unaware of any hazards.

(Exhibit 30, Deposition of Sargent in *Baer v. Ageo Corp.,* March 23, 2006, No. 2004-
70800 (11th Jud. Dist., Tex), p. 57-58).

"All inferences must be viewed in the light most favorable to the nonmoving
party, . . . [and] the court construe facts and draws inferences in favor of the party against
whom the motion under consideration is made." *J.S. ex rel. Snyder v Blue Mountain
School Dist.,* 650 F.3d 915, 925 (3d Cir. 2011). As a result, this court must take as true
Krik's evidence the Navy did not approve any specifications for Cranite and the Navy
would have allowed Crane Co. to provide warnings about the dangers of the asbestos in
Cranite. As for Crane Co.'s expert Sargent, his self-serving affidavit testimony is
contradicted by his deposition testimony that the Navy did not prohibit suppliers from
providing warnings about asbestos. The validity of Sargent's affidavit opinion thus turns
on a weighing of the conflicts with his deposition testimony and a determination of his
credibility. But "at the summary judgment stage, a court is not to weigh the evidence or
make credibility determinations. Instead, these tasks are left for the fact-finder."
*Petruzzi's IGA Supermarkets, Inc. v Darling-Delaware Co., Inc.,* 998 F.2d 1224, 1230
(3d Cir. 1993). This court simply cannot resolve the conflicts in the evidence presented

by Krik's Declaration, Woodruff's Report, and Sargent's affidavit and deposition, nor

can this court make any determinations regarding their credibility.  There are genuine

issues of material fact as to the first prong.  This court therefore should deny Crane's

motion for summary judgment.

This present case is directly on point with this court's prior decision in *Willis*.  This

court denied Crane Co.'s motion for summary judgment on the basis of the government

contractor defense supported by the same opinions and witnesses.  As this court stated

therein:

> Plaintiff has controverted Defendants' evidence by citing to deposition testimony
>
> to cast doubt on the averments of Defendants' experts . . . On cross examination, .
>
> . . Admiral Sargent. . . . testified that they did not know of any specific instance
>
> where the Navy prohibited manufacturers from placing warnings on products. . . . .
>
> Based on the foregoing, there are genuine issues of material fact as to whether the
>
> Navy did or did not reflect considered judgment over whether warnings could be
>
> included on Defendants' products.

*Willis,* 2011 WL 3818515 at *8.

In both *Willis* and in this case, Crane has relied on the same affidavit of Admiral

Sargent, and just as the plaintiff in *Willis* presented evidence of the conflicts in Sargent's

evidence, plaintiff Krik herein has presented evidence of the conflicts in Sargent's

evidence. Therefore, just as this court in *Willis* held "there are genuine issues of material

fact as to whether the Navy did or did not reflect considered judgment over whether

15

warnings could be included on Defendants' products," this court likewise should hold these same genuine issues of material fact are present in this case.

**D.      Genuine Issues Of Material Fact Exist Regarding The Second Prong**

The second prong of the government contractor defense requires the defendant to show "the equipment conformed to those [government] specifications."  Crane has not introduced a government specification that required Cranite to contain asbestos.  Mr. Krik, who was well versed in Navy supply practices and the use of Cranite, states he did not know of such Navy specifications for Cranite or the applications where he used it. Mr. Krik said the Cranite was a standard type of product used in the same civilian and Navy applications.  On this evidence, a disputed issue of material fact exists about whether the Navy specified asbestos to be used in Crane gaskets and packing.

Alternatively, as this court stated in *Willis,* "as this court has found that there is a genuine issue of material fact as to whether the Navy issued reasonably precise specifications for Defendants' products, there is no need to consider the second prong of the *Boyle* test, that is whether Defendants' products conformed to the reasonably precise specifications issued by the Navy." *Willis,* 2011 WL 3818515 at *9.  Either way, this court should deny Crane's motion for summary judgment.

**E.      Genuine Issues Of Material Fact Exist Regarding The Third Prong**

The third prong of the government contractor defense requires Crane to show "it warned the United States about the dangers in the use of the equipment that were known to it but not to the United States. . . . The third prong may also be established by showing

16

that the government knew as much or more than the defendant contractor about the hazards of the product." Crane does not claim to have warned the Navy about the dangers of asbestos. Crane instead claims the Navy was well aware of these dangers, and Crane bases this assertion on the report and affidavit of its expert Samuel Forman.

However, Dr. Forman himself has testified the Navy did not know of the dangers of asbestos. According to Dr. Forman, the Navy relied upon a 1946 asbestos study, known as the Fleischer-Drinker report, which stated there was no significant hazard to end users from working with asbestos thermal insulation products at Navy shipyards. According to Dr. Forman, the Navy relied upon the study for decades in the mistaken belief that Navy shipyard workers were not at an increased risk of disease. In this regard, Dr. Forman testified as follows:

> The Fleisher-Drinker study concluded that asbestosis from the end users of thermal insulation was not a very significant hazard. In hindsight, given what we know now, that was a major error. However, given the state of the science at the time, it was one of the largest studies of asbestos exposure hazards amongst workers that had ever been done to that date and in hindsight was falsely reassuring.

(Exhibit 31, Deposition of Samuel Forman, dated January 7, 2008, in case of *O'Neil v Buffalo Pumps,* Los Angela County, case no. BC 360 274, at page 42.)

Dr. Forman also conceded that the Navy did not understand that the grinding and scraping of asbestos gaskets and packing was dangerous. "The government and Navy . . .

17

in the mid-1960s, was not to have perceived a potential hazard from airborne asbestos dust from working with gaskets and packing at all. Stated another way, work with gaskets and packing was not perceived by the Navy, by the government, nor by any practitioner of mainstream state of the art industrial hygiene, as being hazardous in this timeframe." (Exhibit 31 at 46).

Crane Co.'s other expert, Admiral Sargent, testified that even though he was in the Navy in the late 1960s, he did not learn of the dangers of asbestos until the late 1970s. As Admiral Sargent testified:

Q. When did you personally first become aware of the potential hazard of asbestos and asbestos-containing products to those individuals who worked with it?

A. I would say – I don't remember exactly, but it was in the mid to late '70s.

Q. And how did you become aware of that fact?

A. The Navy had determined by then that, in fact, asbestos did pose a potential hazard not just in an industrial environment but also on board ships where it was installed and there was an aggressive program both to educate and to implement procedures to protect sailors and everybody else on board from those hazards that had been identified. Exactly when that was – I can't tell you the exact year, but it was the late '70s.

(Exhibit 32, Deposition of David Sargent, dated 5/25/04, in the case of *Braaten v Certainteed Corporation,* Brazoria County, Texas, case no. 25489, at pages 96-97)

Forman's affidavit testimony thus is contradicted by his deposition testimony and is contradicted by Sargent's testimony. The validity of Forman's ultimate opinion as proffered by Crane – that the Navy knew the dangers of asbestos during Krik's tour of duty before it ended in 1970 – turns on a weighing of the conflicts in his affidavit and deposition testimony and a determination of his credibility in light of these conflicts and in light of Sargent's conflicting testimony. But "at the summary judgment stage, a court is not to weigh the evidence or make credibility determinations. Instead, these tasks are left for the fact-finder." *Petruzzi's IGA Supermarkets, Inc. v Darling-Delaware Co., Inc.,* 998 F.2d 1224, 1230 (3d Cir. 1993). This court simply cannot resolve the internal conflicts in Forman's affidavit and deposition testimony or its conflicts with Sargent's testimony, nor can this court make any determinations regarding Forman's credibility. The evidence presented by Forman and Sargent, when viewed in its totality, proves the existence of genuine issues of material fact as to the third prong of the government contractor defense. This court therefore should deny Crane's motion for summary judgment.

This present case is directly on point with this court's prior decision in *Willis,* in which this court denied Crane's motion for summary judgment on the basis of the government contractor defense because of the conflicts in Forman's evidence. As this court stated therein:

19

Plaintiff has raised a genuine issue of material fact on this issue by citing to Defendants' expert reports to establish that the Navy was unaware of the dangers of asbestos until the late 1960s or early 1970s. As there is a genuine issue of material fact as to whether the Navy or Defendants had superior knowledge about the dangers of asbestos, Defendants are not entitled to summary judgment as to the third element of the *Boyle* test.

*Willis,* 2011 WL 3818515 at *9.

Crane has relied on its expert Forman to support its position, and just as the plaintiff in *Willis* presented evidence of the conflicts in Forman's evidence, plaintiff Krik herein has presented evidence of the conflicts in this very evidence. Therefore, just as this court in *Willis* held "there is a genuine issue of material fact as to whether the Navy or Defendants had superior knowledge about the dangers of asbestos [and] Defendants are not entitled to summary judgment," in this case this Court likewise should deny Crane's motion for summary judgment.

## IV.    A Recent California Decision Does Not Apply To This Case

Crane Co. filed its motion for summary judgment on January 6, 2012. Days later, on January 12, 2012, the California Supreme Court issued a decision in the case of *O'Neil v Crane Co.,* 2012 WL 88533 (Ca. 2012). Plaintiff Krik expects that Crane will cite this case in its reply, and therefore Krik will discuss the case here.[5]

---

[5] Crane could not cite *O'Neil* in its motion because *O'Neil* was issued after the motion was filed. Plaintiff Krik therefore does not know how Crane will rely on *O'Neil* but instead can only anticipate the

According to the California Supreme Court, "this case involves the limits of a manufacturer's duty to prevent foreseeable harm related to its product: When is a product manufacturer liable for injuries caused by adjacent products or replacement parts that were made by others and used in conjunction with the defendant's product? We hold that a product manufacturer may not be held liable in strict liability or negligence for harm caused by another manufacturer's product unless the defendant's own product contributed substantially to the harm, or the defendant participated substantially in creating a harmful combined use of the products." *O'Neil,* 2012 WL 88533 at *1.

Thus *O'Neil* did not concern a manufacturer's or a seller's liability for harm caused by asbestos containing products sold by the defendant.  This was emphasized further in the *O'Neil* opinion.  "It is undisputed that defendants never manufactured or sold any of the asbestos-containing materials to which plaintiffs' decedent was exposed." *O'Neil,* 2012 WL 88533 at *1.  "To the extent O'Neil was exposed to dust generated during work on pumps and valves, no evidence was presented that any of the asbestos-containing dust came from a product made by Crane or Warren. Neither company manufactured or sold the external insulation or flange gaskets that repairmen removed." *O'Neil,* 2012 WL 88533 at *3.

---

argument Crane may make.  Krik therefore reserves the right to file a sur-reply in the event Crane does rely on the *O'Neil* decision.

But as discussed above, plaintiff Charles Krik's case is all about Krik's exposure to asbestos contained in Crane's own products. The evidence that Crane was the exclusive seller of asbestos containing Cranite sheet packing used for gaskets was not presented in *O'Neil*. The *O'Neil* case is inapplicable to this case. As a result *O'Neil* does not support Crane's motion for summary judgment herein as to the Cranite brand products used by Mr. Krik.

## CONCLUSION

Crane Co.'s motion for summary judgment should be denied as to both the Navy and civilian exposure to the asbestos contained in the Cranite sheet packing used for gaskets.

Robert McCoy
Kevin Hanbury
Cascino Vaughan Law Offices
220 South Ashland
Chicago, IL  60607
312.944.0600