# Exhibit A

Expert Materials of R. Bruce Woodruff for the Charles Krik case

Cascino Vaughan Law Offices (CVLO) submits the following materials as part of the Rule 26 reports for all cases in which Dr. Carlos Bedrossian submits a report.

1.  Mr. Woodruff's qualifications, including a list of all publications authored in the previous 10 years.
2.  A list of all cases in which, during the previous 4 years, Mr. Woodruff has testified as an expert at trial or by deposition.
3.  Facts and data considered in formulating opinions.
4.  Compensation statement.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

CHARLES KRIK,                        )
                                     )
    *Plaintiff*                   )    MDL DOCKET NO. MDL 875
                                     )
                                     )    PAED  Case No. 11-CV-63473
    VS.                          )    PAED  Case No. 08-CV-91296
                                     )
                                     )
BP AMERICA, Inc., AC & S, Inc.,      )
CRANE CO. et al.,                    )
                                     )
    *Defendants.*                 )

## AFFIDAVIT OF CAPTAIN
## R. BRUCE WOODRUFF U.S. NAVY (RET)

### FEBRUARY 2012



I, Robert Bruce Woodruff, declare and state the following:

**1. Qualifications.** My name is R. Bruce Woodruff. As a Naval Architect and Marine Engineer through education, experience, and training, I am an expert in the design, construction, operation, inspection, repair, and maintenance of Naval vessels and commercial ships. A specific subspecialty is marine engineering systems for U.S. Navy ships, including ships powered by steam propulsion, diesel and gas turbine engines. It may be necessary for me to amend this affidavit should facts not known to me prior to my testimony I might give in this matter. My resume is included as enclosure (1), and because it is relevant to subject case, I am listing Navy experience that included the maintenance of shipboard steam systems during the following tours:

- July 1964-August 1966, Destroyer USS Davis (DD 937) Main Propulsion Assistant (Boilers and Main Engines).
- September 1966-March 1967, U.S. Naval Destroyer Engineering School, Newport, RI.(Design/operation of steam plants)
- April 1967-May 1969, Guided Missile Frigate, USS Julius A. Furer (DEG 6), Chief Engineer.
- July 1972-July 1973, Boston Naval Shipyard, Ship Superintendent, Overhaul and repair of multiple steam ships.
- July 1973-July 1975, Destroyer Tender USS Puget Sound (AD 38), Norfolk, VA. Repair Officer -managed 15 shipboard repair shops, including Valve shop & Boiler shop. Department of 350+ Navy personnel, responsible for the maintenance of >50 steam driven destroyers and cruisers in Norfolk, VA.
- August 1975-July 1979, Norfolk Naval Shipyard, Production Engineer & Ship Superintendent.  Overhaul and repair of multiple steam driven ships: destroyers, cruisers, nuclear submarines and aircraft carriers.

**2. Discussion, Statement of Opinions, and Reasons Therefore.**
**a. Purpose.** As requested by Cascino Vaughan Law Offices, LTD., Chicago, IL, I have been asked to provide expert opinion in the matter of  Mr. Charles Krik's exposure to asbestos products provided by Crane Co. The specific request is to address the failure of Crane Co., a large supplier of valves to the U.S.Navy, to identify the  asbestos hazards in their products on board Navy ships. Mr. Krik served from 1954-1970 in the U.S. Navy as a Boiler technician and Boilermaker on board numerous destroyers, a destroyer tender and two repair ships. In forming my opinion, I have relied on Mr. Krik's testimony and other documents listed as references to this affidavit.

**b. Mr. Krik's Career Experience with Crane Co.**  Navy ships in the 1940s and 1950s were designed and built using asbestos as the prevalent gasket and packing material for the shipboard steam systems.  Asbestos was a very durable substance at the high temperatures and pressures seen aboard ship systems.[1]  The authors of Navy specifications exercised strict discipline that focused on the operational requirements and other generic attributes. They were very careful not to require specific manufacturing processes. Each specification had a detailed test procedure and it was up to industry to ensure that their product met the requirements.  For example, there was no Navy specification that told Crane Co. how much asbestos was to be in their Cranite product; the specification cited above actually stated generically  "Gaskets-Compressed asbestos sheet" in the material section.

Mr. Krik describes the repair and replacement of valves, flanges, etc, associated with turbines, boilers, and related steam system equipment when repairing the high temperature steam systems of multiple Navy ships. This included working on Crane valves on an unusually large number of ships, including a list provided of more than forty destroyers that came alongside the destroyer tender USS Bryce Canyon. The two repair vessels, Tutuila and Vulcan, would have been servicing numerous and very large amphibious and auxiliary ships. This is a clear indication that, during his lengthy Navy career, he was actively involved in the replacement of Crane asbestos packing and Cranite gaskets on innumerable steam valves supporting the Navy fleet.

[1] *A relevant Navy specification would be MILSPEC MIL-V-22052 (SHIPS) series; Valves, Stop and Check, Globe, Angle Y Pattern, Cast or Forced Carbon or Alloy Steel, Outside Screw and Yoke, Section 3.2 Materials.*

**c. Duty to Warn About Asbestos Hazards.** The industry position on the subject of asbestos hazards implies that only the government (Navy) was aware of the dangers from asbestos exposure in shipyards and aboard ships. That is, an industry such as Crane was never advised by the Navy of the danger posed by asbestos. Crane Company and other marine vendors were of the opinion that because only the Navy was aware of the hazards and because they required asbestos in their valve specifications, it was the Navy's duty to require product warnings. That logic meant that the manufacturer had no duty to identify the hazards using caution captions and notices on their valve equipment drawings and in the technical manuals that were provided to the Navy with their equipment. In fact, it was a hazardous substance in their valves that Crane never attempted to properly identify to the users, i.e., Navy crew members and shipyard workers. My perception is also the existence of a subtle suggestion by Crane that the Navy may have actually told companies not to put any asbestos warnings in their documents. There are no documents to support that. A final assertion is that the Navy specifications would never have allowed safety warnings for asbestos products even if companies such as Crane had asked.

It is my opinion that the marine equipment industry would or should clearly have been aware of the hazards of the asbestos products that they were shipping off to their customers. This would have been due to the well documented rich and frequent direct marine equipment company correspondence with Navy Department technical manual review personnel at Buships. [2] In addition, industry personnel were then (and to this day are) omnipresent in the shipbuilding and repair yards. Written documentation was available to industry in the Congressional Record as published by the Government Printing Office. In 1939 the public Annual Report of the Surgeon General [3] contains an extensive discussion of hazards in shipyards and identified asbestos exposure in a California shipyard in 1943. [4] There are other examples listed in the references that demonstrate that the hazards were public knowledge.

The Navy unquestionably has always allowed written hazardous warnings and illustrations in the technical manuals and shipping containers distributed to ships' crews and shipyard shops. Review of the manuals and drawings show hazards (other than asbestos) clearly marked and highlighted whenever a vendor such as Crane felt it necessary. One can only conclude that the Navy did not restrict these warnings during the review and final printing of the manuals. If Crane had included asbestos warning notices in the drafts of these technical manuals or placed on the valve drawings, is there any documentation to confirm that the Navy would not have accepted them? Actually, there is insufficient written record to demonstrate that marine vendors like Crane Co. ever attempted to place warnings for asbestos hazards in manuals that were subsequently rejected by the Navy. My conclusion is that the extraordinarily safety conscious Navy would have included asbestos warnings in their technical manuals and drawings had they been submitted.

The research to support this includes speaking with personnel who worked at the Bureau of Ships involved in reviewing technical manuals as early as 1952. [5] One stated that if a Navy manufacturer or vendor had approached the Navy about any hazardous material, they would have received a willing ear and that most warning labels and safety precautions submitted by the equipment vendors were readily approved by the Navy reviewers without second thoughts. Who would know more about their own equipment, the vendor, or the government? During my Naval service, I observed numerous warning labels and safety precautions for hazards other than asbestos

[2] *Bureau of Ships, U.S.Navy-the Wash., DC organization responsible for the acquisition, construction and maintenance of all ships.*
[3] *Annual Report of the Surgeon General, USN, Statistics of Diseases and Injuries in the US Navy, GPO, 1939, p 24*
[4] *Industrial Health and Safety Survey of Richmond Shipyard Number Two, Richmond, CA, May 4-13, 1943, Pp 37& 37 A*
[5] *Captain Joseph F. Yurso, USN (Ret) discussions, April/May 2008 and signed statement confirming same, February 1, 2009*

included in technical manuals and drawings for ship equipment during the period in question. Without doubt or question, it appeared that all of these warnings and cautions came from the equipment vendor, not the Navy. It is very doubtful that the Navy directed each and every one of these warnings as claimed.

I have reviewed many frequent and rich written exchanges between the Navy and industry vendors concerning the contents of drawings and technical manuals for their equipment. My assessment is based on the examination of these abundant written records, letters, and memos from the early 1940s until the early 1970s when asbestos was finally outlawed. Documentation of Navy and government rejections of asbestos cautionary notes may exist of which I am not aware. However, none of the documents or expert opinions reviewed to date has so identified any such evidence. The above exchanges between the Navy and vendors almost without exception addressed equipment specifications and operations--items such as bearing clearances, material properties, troubleshooting procedures, operating parameters, repair parts, special tools, and administrative clerical and format corrections. The implication and conclusion is that the Navy paid minimum time addressing or questioning any kind of vendor warnings included in their technical manuals.

**d. Summary and Conclusions.**  It is my conclusion that valve suppliers such as Crane Co. never submitted asbestos warnings in draft technical manuals or vendor drawings. I have not discovered any cautionary indications, footnotes, annotations, etc, which state that asbestos was classified as hazardous and/or required crewmembers and shipyard workers to take special precautions when coming in contact with or inhaling asbestos particles. The U.S. Navy has always placed personnel safety on the highest pedestal. There were numerous Navy documents issued describing the process for technical manual preparation and the need for always putting safety first throughout the service. Based on an extensive review of the documentation and the lack of any compelling written evidence, it is my steadfast opinion that the U.S. Navy would never have prevented the steam plant equipment manufacturers such as Crane from submitting asbestos caution and warning labels in their draft technical manuals and drawings. That is, there is insufficient written documentation to fully substantiate the opinion that supports the concept that the U.S. Navy would not have included warning labels if they had been requested or even suggested by Navy and marine ship equipment suppliers.

   **3. Exhibits and references used as primary support for the opinions.**
1.  Charles Krik depositions, July 18 and August 4, 2011
2.  MILSPEC MIL-V-22052 (SHIPS) series; Valves, Stop and Check, Globe, Angle Y Pattern, Cast or Forced
        Carbon or Alloy Steel, Outside Screw and Yoke
3.  Books, Instruction--Preparation, Contents and Approval, BUSHIPS Specification, 35B2(INT) 1 July 1945
4.  Warning Labels, Guide for the Prep. of for Hazardous Chemicals, Manuf. Chemists Assoc., 1956, Wash. DC
5.  Uniform Labeling for Hazardous Industrial Chemicals and Materials, Navy Secretary Inst. 5100.8 dated 24 Sept 1956,
6.  Marking for Shipment & Storage, Military Standard MIL-STD-129B, , US Government Printing Office, April 1957
7.  Navy Shipment Marking Handbook, Bureau of Supplies and Account, US Navy Department, December 1942
8.  Safety Review, Executive Office of The Secretary of the Navy Bulletin (NAVEXOS) P-52, Vol 4, No. 1 January 1947
9.  Approval Process Books, Instruction; MIL-B-15071 (SHIPS) 1 April 1950 & 16 Aug 1954
10. Industrial health and Safety Survey of Richmond Shipyard Number Two, Richmond, CA May 4-13, 43
11. US Department of the Navy, Gen. Specs for Machinery, Sect. S1-1 Plans, Para S1-1-h.1.(e),1 November 1940
12. Department of the Navy, Safety Handbook for Pipefitters, Navord Inst. 5100.21,7 January 1958
13. Handbook of the Hospital Corps, USN, Bureau of Medicine and Surgery, 1939
14. Annual Report of the Surgeon General, USN, Statistics of Diseases and Injuries in the US Navy, GPO, 1939



R. Bruce Woodruff, Captain, US Navy (Ret)

## ENCLOSURE (1) RESUME OF EXPERT
## R. Bruce Woodruff, Captain, U.S. Navy (Ret)

*Leader with unique background of manufacturing and engineering management experience working in private/public sector with a wide range of corporations covering the contractual, technical, and quality aspects of the design, construction and maintenance of U.S. Navy and U.S. Coast Guard Ships. Navy Captain (Engineering Duty Officer) with three major commands in program management for the ship construction and repair of Navy ships. Qualified as Chief Engineer for the operation of steam propulsion ships. Expert witness supporting asbestos and Mesothelioma litigation for both Navy and commercial ships, assisting both plaintiff and defendant cases. Knowledge and familiarity with the resolution of large government and industry shipbuilding and ship repair contract claims. Division Vice President and General Manager of high technology manufacturing plant of large turbines and generators for the utility industry nationwide. Significant experience with high dollar manufacturing programs accompanied by strict requirements for quality, schedule, and cost. ISO 9000 start up experience. International business experience in Europe as NATO Frigate Program Manager and Australia in support of FFG 7 Class Frigate construction.*

### PRESIDENT, RICHMOND CONSULTING GROUP, RICHMOND, VA.

Consultant to businesses for program management and manufacturing challenges involving complex systems. Established in 1996 specializing in the design, construction, and repair of commercial ships and Naval vessels. Significant experience with Navy ship construction and technical issues for steam and gas turbine propulsion ships. Certified as Navy Fleet Boiler Inspector. Expert witness experience regarding U.S. Navy and commercial ship design, construction and maintenance with special emphasis on marine steam propulsion systems. In particular, the specifications for and use of asbestos containing insulation materials aboard ship and present in shipyards for operations, shipbuilding, and maintenance applications. This includes victims with Mesothelioma due to use of asbestos for insulation, lagging, gaskets and packing aboard ships and in shipyards on boilers, turbines, main and auxiliary steam systems, as well as the equipment connected to the steam systems, i.e., pumps, valves and traps etc. Familiarity with ship and shipyard production and maintenance with emphasis on lean manufacturing, process improvement, cost reduction, and elimination of waste. Clients include General Dynamics Information Technology, U.S. Navy, Georgia Pacific, L-3 Corp, KPMG Inc., Eaton Corp., and Lockheed Martin. Expert witness experience supporting U.S. Department of Justice, Daimler-Chrysler, Honeywell Corp., U.S. Coast Guard, Siemens (Marine Power Gen. Div), Worthington/Dresser Rand, Georgia Pacific, Crane Valve, Ford Motor Corp., Electrolux SA (Sweden), and numerous law firms nationwide.

### VICE PRESIDENT/ DIVISION GENERAL MANAGER, TURBINE MANUFACTURING DIV. OF ABB (ASEA BROWN BOVERI) POWER GENERATION INC., RICHMOND, VA.

Responsible for all operational aspects of manufacturing with design and engineering support on site. Division consisted of 140 employees in 155K sq.ft. facility performing the manufacture and service of Steam and Gas Turbines and Generators (100+ megawatts) for the utility industry. Initiated root cause/corrective action process to evaluate rework rates. Nine (9) direct reports; assembled first US 206 megawatt GT-24 Gas Turbine in US. Established factory metrics-- ISO 9002 certification achieved in 15 months, significant cost reductions made on all product lines. Revenues $20 million.

### COMMANDING OFFICER, SUPSHIP PASCAGOULA AT INGALLS SHIPBUILDING DIVISION OF LITTON INDUSTRIES, PASCAGOULA, MISSISSIPPI

As Navy Captain and Supervisor of Shipbuilding Pascagoula (Ingalls - 17,000 workers), led staff of 500+ personnel administering contracts for construction and maintenance of Navy, Army and NOAA ships at ten shipyards. Delivered 63 ships in 4 years on the Gulf Coast in Mississippi, Alabama, and Florida. 1992 shipbuilding/repair budget $1.2 billion. On site accountability for technical decisions, contractual obligations, quality assurance, and legal/environmental aspects in a production setting. Source selection authority for major ship repair contracts. Ships under construction/overhaul: Aegis Cruisers (CG 47), Amphibious Assault Ships (LHD 1), Aegis Destroyers (DDG 51), and various Navy and Army vessels.

**PROGRAM MANAGER, CG 47 AEGIS CLASS GUIDED MISSILE CRUISER, NAVAL SEA SYSTEMS COMMAND, PMS 400, WASHINGTON, D.C.**

Navy Program Manager responsible for a program of twenty-seven Aegis gas turbine ships constructed at Ingalls Shipyard and Bath Iron Works. In 1987, $22 billion budget and third largest DOD program, with 5 ships purchased for $4.4 billion dollars. Managed staff of Engineers and Logistician Specialists to support both shipyards. Five Aegis Cruisers delivered on or ahead of schedule with $50 million underrun. Played major role in a $32 million claims settlement. Worked with shipbuilder directly to reduce both direct/indirect costs for both labor and material ship costs.

**PROGRAM MANAGER and TECHNICAL DIRECTOR, FFG 7 CLASS GUIDED MISSILE FRIGATE, NAVSEA PMS 399, WASHINGTON, D.C.**

Program Manager for 55 Ships (4 Australian) built at 3 shipyards, Bath Iron Works, Todd Los Angeles, and Todd Seattle. $9 billion budget, staff of 78. Eight gas turbine powered frigates delivered 50 weeks ahead of schedule with ship cost of $300+ million each. Responsible to Secretary of the Navy for all planning, budgeting, contracting and engineering, including Foreign Military Sales. NATO Frigate (NFR-90) Program Manager for US. As Technical Director, made significant improvements to the class. Participated in 45+ Builders & Acceptance Trials with U.S. Navy Board of Inspection and Survey.

**PRODUCTION ENGINEER, NORFOLK NAVAL SHIPYARD, PORTSMOUTH, VA**

Direct on site teamwork with waterfront Production Shops to improve Industrial Processes and Methods. Norfolk Naval Shipyard is a nuclear certified public shipyard with approximately 10,000 employees performing the repair and overhaul of nuclear/non-nuclear surface ships, submarines, and aircraft carriers. Project Officer for nuclear shore steaming barge design/construction. Led a team of 100 Industrial Engineers/Technicians and conducted numerous Industrial Engineering studies for shipyard foundry, machine shop, plating etc. Major capital improvements approx $15 million over 3 year period.

**SHIPYARD/SHIPBOARD EXPERIENCE**

Repair (maintenance) Officer with 17 production shops and work force of 400 on large nuclear certified Destroyer Tender, USS Puget Sound (AD 38). Assigned to the Boston Naval Shipyard as waterfront Ship Superintendent for the overhaul of destroyers. Qualified as Certified Navy Fleet Boiler Inspector. Early ship steam propulsion experience included commissioning Chief Engineer for the USS Julius A. Furer (DEG-6) and Main Propulsion Assistant on USS Davis (DD 937). Qualified as Surface Warfare Officer and Fleet Officer of the Deck (OOD). Awarded Navy Achievement Medal by CINCPACFLT as Officer of the Deck on Davis when receiving hostile fire off the coast of Vietnam.

**EDUCATION**

United States Naval Academy, Annapolis, MD – B.S. Naval Science (Engineering–With Distinction)
Massachusetts Institute of Technology, Cambridge, MA. M.S. Mechanical Engineering (Propulsion Major)
O. E., Ocean Engineer [6] (Naval Architecture/Marine Engineering)
University of Virginia, Darden School of Business, Charlottesville–The Executive Program
National Defense University, Industrial College of the Armed Forces (ICAF), Washington, DC
(One year Executive Program-Govt.Contracting, Public Policy)
US Naval Destroyer Engineering School (SWOS), Newport, RI
US Navy Nuclear Ship Superintendent's Course, Puget Sound Naval Shipyard, Bremerton, WA
(Reactor Physics and Radiological Control for Submarine S5W Plant)

**PROFESSIONAL ORGANIZATIONS**

American Society of Naval Engineers (ASNE–Past Committee Chair, National Council)
Society of Naval Architects and Marine Engineers (SNAME)
National Society of Professional Engineers        Virginia Chamber of Commerce
Society of Manufacturing Engineers (SME–Past Chairman, Richmond Chapter)
Virginia Ship Repair Association (VSRA)        American Society of Mechanical Engineers (ASME)

---

[6] *The program for the Engineer Degree at MIT requires more advanced and broader competence in engineering and science subjects than for the Master's Degree; the thesis for Engineer Degree does not require basic research as in a Doctoral Program. The Engineer Degree is not commonly awarded at U.S. colleges and universities with engineering programs.*



**RICHMOND CONSULTING GROUP**
SHIP DESIGN • CONSTRUCTION • REPAIR

1. **CONSULTING FEES AND EXPENSES -- JANUARY 1, 2012**

Services are performed with bi-lateral and dated signed agreements (mail, email pdf or fax) in accordance with our standard practices/ best efforts under the following rate structure:

### a. Senior Consultant (R.B. Woodruff only)

|   |   |
|---|---|
| • Basic Research, Written Reports, Document Review, Personal Archivist Examinations | $260/hr |
| • Depositions, Trial Testimony and Preps | $330/hr |
| b. Associate Consultant/Analyst | $165/hr |
| c. Consultant, e.g. Archivist/Document Research | $105/hr |
| e. Clerical |   |
| • Labor | $ 55/hr |
| • Copying & Other Admin: | Cost |
| f. Computer Time: | N/C |
| g. Out-of-Pocket Expenses, e.g. Travel | Cost |
| h. G&A/Overhead | No Charge |

2. **RETAINER**

Because of the out-of-pocket expenses which we must advance to our archivists, researchers and associates and the extended periods which often develop between expenditures and receipt of payment, a $3,500 retainer is requested prior to undertaking engagements. Engagement retainers will be applied against earned billings, and may vary depending on the expected requirements and duration of the assignment. In all cases, the client receives full credit at the end of the engagement.

Billings for research, report or affidavit efforts greater than sixty (60) days old will be billed on an interim basis. For legal assignments, this may occur prior to any testimony or case settlement.

3. **BILLINGS**

Invoices will be normally be submitted at the end of the engagement, but they may be submitted monthly for unusually lengthy assignments. In any event, payment will be due THIRTY (30) days after receipt of invoice. Full details of all charges and work will accompany each invoice.

*Bruce Woodruff* , 1/1/2012

R. Bruce Woodruff, President

NOTICE -THE ABOVE IS PROPRIETARY AND CONFIDENTIAL.
PLEASE RESTRICT DISTRIBUTION TO THOSE WITH A NEED TO KNOW.

## R. BRUCE WOODRUFF-- EXPERT WITNESS CASES DEPOSED- 2002-2011

| DATE | CASE TESTIFIED *REPRESENTED | LAW FIRM & ATTORNEY | COURT/LOC. | DECISION |
|---|---|---|---|---|
| APRIL 26 2002 | ASBESTOS:  POWERS   v.  WORTHINGTON PUMP DRESSER RAND* | GOLLATZ GRIFFIN AND EWING.  CHUCK HOWARD | RICHMOND VA | SETTLED |
| MAY 8 2002  TRIAL | ASBESTOS:  POWERS  v.  WORTHINGTON PUMP DRESSER RAND* | GOLLATZ GRIFFIN AND EWING.  CHUCK HOWARD | NEW YORK NY  TRIAL | SETTLED |
| JULY 17 2002 | ASBESTOS:  MACDONALD  v.  WORTHINGTON PUMP DRESSER RAND* | GOLLATZ GRIFFIN AND EWING.  CHUCK HOWARD | LOS ANGELES CA | SETTLED |
| JUNE 30  2003 | ASBESTOS:  LAVALEE  v.  HONEYWELL/ BENDIX* | PERKINS COIE  DAVID BINDER | ALEXANDRIA VA | SETTLED |
| AUG 13  2003 | ASBESTOS:  VELASQUEZ  v.  BORG-WARNER, FORD, DAIMLER CHRYSLER & GEN MOTORS* | THELAN REID & PRIEST;  GORDON & REIS | ALEXANDRIA VA | SETTLED |
| OCT 03  2003 | ASBESTOS:  BRAINERD  v.  BORG-WARNER, FORD, DAIMLER CHRYSLER & GEN MOTORS* | THELAN REID & PRIEST.  JIM OSTERTAG, | ALEXANDRIA VA | SETTLED |
| APR 23  2004 | ASBESTOS:  BRAATEN  v.  GOULD CORP.* | NAMAN HOWELL.  NEAL PIRKLE | RICHMOND VA | SETTLED |
| JAN 18  2005 | ASBESTOS:  WALRAVEN  V. AMERICAN STANDARD FORD & GEN MOTORS * | KIRKPATRICK, LOCKHART ET AL.  CHRIS TEMPLE | ALEXANDRIA VA | SETTLED |
| MAR 10  2005 | ASBESTOS:  VAUGHN   v.  CRANECO* | KIRKPATRICK, LOCKHART ET AL.  CHRIS TEMPLE | WASHINGTON DC | SETTLED |
| AUG 10  2005 | ASBESTOS:  GENDREAU   v.  HONEYWELL, FORD, DAIMLER CHRYSLER & GEN MOTORS* | THELEN REID & PRIEST.  ROSS PETTY;  DICKINSON WRIGHT, ROBERT  KRAUSE | SAN FRANCISCO CA | SETTLED |
| JULY 13  2006 | ASBESTOS:  BAXTER*   v.  ALFA LAVAL INC. | COADY LAW FIRM  DAVID FINACKUS; CHRIS DUFFY | WASHINGTON DC | SETTLED |
| AUG 1  2006 | ASBESTOS:  SERIO *  v.  AC and S, inc , ET AL | ASHCRAFT & GEREL  DAVID LAYTON | BALTIMORE MD | SETTLED |
| JUNE 15  2007 | ASBESTOS:  CAMPBELL*  v. AC and S , ET AL  VOL I | EARLY, LUDWICK & SWEENEY,  LLC.  RICH BULLOCK | RICHMOND VA | SETTLED |
| AUG 17  2007 | ASBESTOS:  CAMPBELL*  v,  AC and S, inc , ET AL   VOL II | EARLY, LUDWICK & SWEENEY,  LLC. RICH BULLOCK | NEW HAVEN CT | SETTLED |
| JULY 18  2008 | ASBESTOS:  OWENS  V.  ALLIS CHAMERS ET AL,    HONEYWELL/ BENDIX *  & GEORGIA PACIFIC * | PERKINS COIE   LOS ANGELES SC   BRIAN SOFFER/  D. BIDERMAN/D. FRIEDMAN | RICHMOND VA | SETTLED |
| SEPT 12  2008 | ASBESTOS:  VAN KIRK V.  BORG-WARNER MORSE TEC INC ET AL,  HONEYWELL/ BENDIX* | PERKINS COIE LOS ANGELES SC  VICK MANSOURIAN  D. BIDERMAN/ D.FRIEDMAN | RICHMOND VA | SETTLED |
| SEPT 15  2008 | ASBESTOS:  ORNSTEIN  V.  ALFA LAVAL ET AL,  HONEYWELL/ BENDIX* | PERKINS COIE  LOS ANGELES SC VICK MANSOURIAN D.  BIDERMAN/ D. FRIEDMAN | RICHMOND VA | SETTLED |
| JUNE 16  2009 | ASBESTOS:  NIEBAUER  V. 3M CO  HONEYWELL/ BENDIX * | PERKINS COIE LOS ANGELES SC  D. BIDERMAN/ D.FRIEDMAN | RICHMOND VA | SETTLED |
| JUNE 22  2009 | ASBESTOS:  GOEBEL V. BONDEX CORP.  GEORGIA PACIFIC *  & HONEYWELL * | PERKINS COIE  LOS ANGELES SC.  D. BIDERMAN/D. FRIEDMAN | RICHMOND VA | SETTLED |
| OCT 2  2009 | ASBESTOS:  PANTALONE *  V.  A.W. CHESTERTON, ET AL | EARLY, LUDWICK & SWEENEY,  LLC. CHRIS MEISENKOTHEN | NEW HAVEN CT | SETTLED |
| OCT 29  2009 | ASBESTOS:  RAYNOR  V.  ALFA LAVAL ET AL  HONEYWELL * & BONDEX * | JULIE FRIEDMAN  DAVIES, MCFARLAND &  CARROLL | RICHMOND VA | SETTLED |
| JAN 12  2010 | ASBESTOS:  RIEMANN*  V.  AALBORG INDUSTRIES  ET AL  BUFFALO PUMPS | EARLY, LUDWICK & SWEENEY,  LLC. RICH  BULLOCK, DONNI YOUNG | NEW HAVEN CT | OPEN |
| MAR 11  2010 | ASBESTOS: MILLER  V. BORG WARNER  MORSE, HONEYWELL*  ET AL | PERKINS COIE  LOS ANGELES SC  D. BIDERMAN/ D. FRIEDMAN | RICHMOND VA | SETTLED |
| MAR 25  2010 | ASBESTOS:  KEENER *  V.  A.W. CHESTERTON, ET AL  BUFFALO PUMPS | EARLY, LUDWICK & SWEENEY,  LLC.  CHRIS MEISENKOTHEN | NORFOLK VA | OPEN |
| SEPT 22 | ASBESTOS:  BARAGAR  V. ASBESTOS  DEFENDANTS, | PERKINS COIE,  SAN FRANCISCO  SC   D. BIDERMAN/ D. | WASHINGTON DC | SETTLED |

| FEB 10 2011 | ASBESTOS: KEENER * V. A.W. CHESTERTON, ET AL BUFFALO PUMPS | EARLY, LUDWICK & SWEENEY, LLC.  CHRIS MEISENKOTHEN | RICHMOND VA | OPEN |