IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES KRIK, | : | CONSOLIDATED UNDER |
| | : | MDL 875 |
| Plaintiff, | : | |
| | : | |
| | : | Transferred from the Northern |
| v. | : | District of Illinois |
| | : | (Case No. 10-07435) |
| | : | |
| BP AMERICA, INC. | : | |
| ET AL., | : | E.D. PA CIVIL ACTION NO. |
| | : | 2:11-63473-ER |
| Defendants. | : | |

FILED MAY 16 2012 MICHAEL E. KUNZ, Clerk By_____Dep. Clerk

## O R D E R

**AND NOW**, this **16th** day of **May, 2012**, it is hereby

**ORDERED** that the Motion to Strike of Defendant ExxonMobil Oil

Corp. (Doc. No. 240) is **GRANTED**; the Motion for Summary Judgment

of Defendant ExxonMobil Oil Corp. (Doc. No. 171) is **DENIED**.[1]

---

[1] This case was transferred in February of 2011 from the United States District Court for the Northern District of Illinois to the United States District Court for the Eastern District of Pennsylvania as part of MDL-875.

Plaintiff Charles Krik ("Plaintiff") worked as a boilerman and boilermaker during his Navy career, from 1954 to 1970. His duties included pipefitting and insulation work. Plaintiff worked on repair ships for about six (6) years of his naval career, including some work in the valve shop when repairing the USS Tutuila. During his civilian career, Plaintiff worked as a boilermaker and pipefitter, including work for two unions in the Chicago area. In 1990, he received training in asbestos removal to recognize what materials were asbestos. Defendant ExxonMobil Oil Corporation ("ExxonMobil") was the owner of a worksite where Plaintiff worked during two separate time periods. The alleged exposure pertinent to Defendant occurred while Plaintiff worked as an employee of one of ExxonMobil's contractors (Hudson Heating & Plumbing) at the following location during the following periods:

- Mobil Oil Refinery – Joliet, IL – 1970s
  – late 1980s

Plaintiff was diagnosed with lung cancer in November of 2008 and bilateral pleural plaque formations in June of 2011. He was deposed for two (2) days in July and August of 2011.

Plaintiff has brought claims against various defendants. Defendant ExxonMobil has moved for summary judgment, arguing that (1) Plaintiff has failed to identify sufficient evidence to support a finding of causation with respect to any asbestos-containing product(s) on its premises, (2) it owed no duty to Plaintiff and cannot be liable for any injury he experienced during his work as the employee of an independent contractor working for ExxonMobil, (3) Plaintiff's claims are barred by the Illinois Construction Statute of Repose, and (4) it is not liable to Plaintiff, who was an invitee on its premises, for the "open and obvious" hazard posed by any asbestos on its premises. The parties agree that Illinois law applies.

**I.   Legal Standard**

   A.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." <u>Am. Eagle Outfitters v. Lyle & Scott Ltd.</u>, 584 F.3d 575, 581 (3d Cir. 2009) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." <u>Pignataro v. Port Auth. of N.Y. & N.J.</u>, 593 F.3d 265, 268 (3d Cir. 2010) (citing <u>Reliance Ins. Co. v. Moessner</u>, 121 F.3d 895, 900 (3d Cir. 1997)). While

the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

B.  The Applicable Law

The parties have agreed that Illinois substantive law applies. Therefore, this Court will apply Illinois law in deciding ExxonMobil's Motion for Summary Judgment. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); see also Guaranty Trust Co. v. York, 326 U.S. 99, 108 (1945).

C.  Illinois Construction Statute of Repose

The Illinois Construction Statute of Repose invoked by Defendant ExxonMobil provides that:

> (b) No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission. However, any person who discovers such act or omission prior to expiration of 10 years from the time of such act or omission shall in no event have less than 4 years to bring an action as provided in subsection (a) of this Section.

735 ILCS 5/13-214(b).

The Supreme Court of Illinois has held that, whether an item constitutes an improvement to real property is a question of law, though its resolution is grounded in fact. St. Louis v. Rockwell Graphic Systems, Inc., 153 Ill.2d 1, 3 (Ill. 1992). It has vacated an appellate court's grant of summary judgment on grounds of the statute of repose where it determined that the record was not sufficiently developed to permit a determination as to whether a product (a printing press manufactured and installed by the defendant) was an "improvement to real property" within the meaning of the statute. Id. at 5-6.

3

D. The "Sham Affidavit" Doctrine

The "sham affidavit doctrine" is recognized pursuant to Federal Rule of Civil Procedure 56 as a way of showing that there is no genuine dispute as to any material fact. Given that the "sham affidavit doctrine" is an issue of federal law, the MDL transferee court applies the federal law of the circuit where it sits, which in this case is the law of the United States Court of Appeals for the Third Circuit. In re Asbestos Prods. Liability Litig. (No. VI), 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009) (citing In re Diet Drugs Liability Litig., 294 F. Supp. 2d 667, 672 (E.D. Pa. 2003)).

In Baer v. Chase, the United States Court of Appeals for the Third Circuit described the "sham affidavit" doctrine noting that, "we have held that a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." 392 F.3d 609, 624 (3d Cir. 2004) (citing Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991)).

Although the "sham affidavit doctrine" has traditionally been applied to strike affidavits filed after depositions have been taken, it applies with equal force to affidavits filed prior to the taking of a deposition. In re: Citx Corp., 448 F.3d 672, 679 (3d Cir. 2006). The United States Court of Appeals for the Third Circuit noted, "[w]e perceive no principle that cabins sham affidavits to a particular sequence." Id. (internal citations omitted). Testimony taken in a deposition, rather than sworn to in an affidavit, is considered more favorable for summary judgment purposes since testimony sworn to in an affidavit is not subject to cross-examination. 448 F.3d at 680 (citing 10B Charles Alan Wright & Mary Kay Kane, Federal Practice and Procedure § 2722 at 373, 379).

E. Product Identification/Causation Under Illinois Law

This Court has previously set forth the standard for product identification evidence necessary to support a finding of causation under Illinois law. In Goeken v. ACandS, the Court wrote:

In order to establish causation for an asbestos claim under Illinois law, a plaintiff must show that the

4

defendant's asbestos was a "cause" of the illness. Thacker v. UNR Industries, Inc., 151 Ill.2d 343, 354 (Ill. 1992). In negligence actions and strict liability cases, causation requires proof of both "cause in fact" and "legal cause." Id. "To prove causation in fact, the plaintiff must prove medical causation, i.e., that exposure to asbestos caused the injury, and that it was the defendant's asbestos-containing product which caused the injury." Zickhur v. Ericsson, Inc., 962 N.E.2d 974, 983 (Ill. App. (1st Dist.) 2011)(citing Thacker, 151 Ill.2d at 354). Illinois courts employ the "substantial factor" test in deciding whether a defendant's conduct was a cause of a plaintiff's harm. Nolan v. Weil-McLain, 233 Ill.2d 416, 431 (Ill. 2009)(citing Thacker, 151 Ill.2d at 354-55). Proof may be made by either direct or circumstantial evidence. Thacker, 151 Ill.2d at 357. "While circumstantial evidence may be used to show causation, proof which relies upon mere conjecture or speculation is insufficient." Id. at 354.

In applying the "substantial factor" test to cases based upon circumstantial evidence, Illinois courts utilize the "frequency, regularity, and proximity" test set out in cases decided by other courts, such as Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156 (4th Cir. 1986). Thacker, 151 Ill.2d at 359. In order for a plaintiff relying on circumstantial evidence "to prevail on the causation issue, there must be some evidence that the defendant's asbestos was put to 'frequent' use in the [plaintiff's workplace] in 'proximity' to where the [plaintiff] 'regularly' worked." Id. at 364. As part of the "proximity" prong, a plaintiff must be able to point to "sufficient evidence tending to show that [the defendant's] asbestos was actually inhaled by the [plaintiff]." This "proximity" prong can be established under Illinois law by evidence of "fiber drift," which need not be introduced by an expert. Id. at 363-66.

In a recent case ([involving Ericsson, Inc. as a defendant], as successor to Anaconda), an Illinois court made clear that a defendant cannot obtain summary judgment by presenting testimony of a corporate representative that conflicts with a plaintiff's evidence pertaining to product identification –

5

specifically noting that it is the province of the jury to assess the credibility of witnesses and weigh conflicting evidence. See Zickuhr, 962 N.E.2d at 985-86. In Zickhur, the decedent testified that he worked with asbestos-containing Anaconda wire from 1955 to 1984 at a U.S. Steel facility, and that he knew it was asbestos-containing because the wire reels contained the word "asbestos" on them - and the word "asbestos" was also contained on the cable and its jacket. A co-worker (Scott) testified that, beginning in the 1970s, he had seen cable spools of defendant Continental (which had purchased Anaconda) that contained the word "asbestos" on them. A corporate representatives (Eric Kothe) for defendant Continental (testifying about both Anaconda and Continental products) provided contradictory testimony that Anaconda stopped producing asbestos-containing cable in 1946 and that the word "asbestos" was never printed on any Anaconda (or Continental) cable reel. A second corporate representative (Regis Lageman) provided testimony, some of which was favorable for the plaintiff; specifically, that Continental produced asbestos-containing wire until 1984, that asbestos-containing wires were labeled with the word "asbestos," and that, although defendant did not presently have records indicating where defendant had sent its products, U.S. Steel had been a "big customer" of a certain type of defendant's wire that contained asbestos.

After a jury verdict in favor of the plaintiff, Defendant appealed, contending that (1) there was no evidence that defendant's cable/wire contained asbestos, and (2) there was no evidence that defendant's cable/wire caused decedent's mesothelioma. The appellate court affirmed the trial court (and upheld a jury verdict in favor of the plaintiff), holding that the issues of whether the cable and wire decedent worked with contained asbestos, and whether the defendant's cable and wire were the cause of the decedent's mesothelioma, were questions properly sent to the jury for determination. The appellate court noted that "the jury heard the evidence and passed upon the credibility of the witnesses and believed the plaintiff's witnesses over... Kothe." Id. at 986.

No. 10-68122, Doc. No. 197 (E.D. Pa. Apr. 3, 2012)(Robreno, J.).

6

Defendant urges this Court to reconsider the standard previously set forth, arguing that Illinois courts employ the Lohrmann "frequency, regularity, and proximity" test in all cases, and not just those in which a plaintiff relies upon circumstantial evidence. Specifically, Defendant cites to Zickhur and Nolan in support of this argument. The Court has considered Defendant's argument and the cases upon which it relies.

The Court reiterates that Thacker is a decision of the Supreme Court of Illinois that directly addresses the product identification standard for asbestos cases brought under Illinois law. In Thacker, the decedent had testified to opening bags of asbestos of a kind not supplied by the defendant and had testified that he did not recall seeing the defendant's product anywhere in the facility. The only evidence identifying the defendant's product was testimony of a co-worker that the defendant's product had been seen in a shipping and receiving area of the facility, although the co-worker had not witnessed the product in the decedent's work area. In assessing the sufficiency of the plaintiff's evidence, the Court applied the "frequency, regularity, and proximity" test, noting that "plaintiffs in cases such as this have had to rely heavily upon circumstantial evidence in order to show causation." 151 Ill.2d at 357. After discussing the Lohrmann "frequency, regularity, and proximity" test, the Thacker court set forth its rationale for applying the test to the evidence at hand, noting that "[t]hese requirements attempt to seek a balance between the needs of the plaintiff (by recognizing the difficulties of proving contact) with the rights of the defendant (to be free from liability predicated upon guesswork)." Id. at 359. This Court notes that the rationale of the Thacker court would not apply where a plaintiff relied upon direct evidence, as there would be no danger of "guesswork" and little (if any) difficulty of proving contact. The Court therefore concludes, as it has previously, that Thacker indicates that the "frequency, regularity, and proximity" test is applicable in cases in which a plaintiff relies on circumstantial evidence. This is not inconsistent with the holding of Lohrmann. See Lohrmann, 782 F.2d at 1162.

Defendant argues that the decision of the Supreme Court of Illinois in Nolan makes clear that the "frequency, regularity, and proximity" test is applicable in all cases, regardless of whether a plaintiff is relying on direct or circumstantial evidence. Nolan, however, did not directly address the product identification standard for asbestos cases under Illinois law.

7

Rather, the question considered by the court was whether the trial court erred in excluding from trial all evidence of a plaintiff's exposure to asbestos from other manufacturers' products when a sole defendant was remaining at trial. Nolan, 233 Ill.2d at 428. In deciding that issue, the court rejected the intermediary appellate court's conclusion that, when the "frequency, regularity, and proximity" test is met, legal causation has been established. Although it is true that Nolan makes reference to the Lohrmann test without clarifying that it is only applicable in cases based upon circumstantial evidence, the Nolan court was not deciding whether the trial court had applied the proper product identification standard, and it cannot be fairly or accurately said that Nolan sets forth the Illinois standard for product identification, nor that it stands for the proposition that the "frequency, regularity, and proximity" test is applicable in all cases. Nothing in Nolan indicates that the Supreme Court of Illinois intended to alter the standard it set forth in Thacker.

Finally, the Court has considered Defendant's argument that Zickhur indicates that the "frequency, regularity, and proximity" test is applicable in all cases, regardless of the type of evidence relied upon by a plaintiff. As an initial matter, the Court notes that a decision from an intermediary appellate court will not, by itself, displace a rule of law issued by the highest court of the state. However, Zickhur does not contradict Thacker. Rather, the Zickhur court makes clear that the "frequency, regularity, and proximity" test is not always applicable - noting that "the 'frequency, regularity and proximity' test may be used...[and] that a plaintiff can show exposure to defendant's asbestos" with it. 962 N.E.2d at 986 (emphasis added). Moreover, while it is true that Zickhur involved some pieces of direct evidence, it is worth noting that the court's resolution of the issue of the sufficiency of the evidence to withstand a motion for a directed verdict turned on its analysis of circumstantial evidence, in the context of direct and conflicting evidence presented by parties on both sides of the case. Therefore, it cannot be fairly or accurately said that Zickhur sets forth the Illinois standard for product identification, nor that it stands for the proposition that the "frequency, regularity, and proximity" test is applicable in all cases.

Having considered Defendant's argument seeking a modification of the standard applied by the MDL court for assessing the sufficiency of a plaintiff's evidence pertaining to

product identification under Illinois law – and each of the cases relied upon by Defendant – the Court concludes that its recitation of the standard in <u>Goeken</u> is proper. Therefore, it will continue to utilize the standard set forth therein.

> F. <u>Duty of Premises Owner to Invitee re "Open and Obvious" Hazard on the Premises</u>

Under Illinois law, a person is a business invitee on the land of another if (1) the person enters by express or implied invitation; (2) the entry is connected with the owner's business or with an activity conducted by the owner on the land; and (3) the owner receives a benefit. <u>See</u> <u>Sameer v. Butt</u>, 343 Ill.App.3d 78, 86 (Ill. App. 1st Dist. 2003); <u>see also</u> <u>Dearing v. Baumgardner</u>, 358 Ill.App.3d 540, 544 (Ill. App. 3d Dist. 2005). A premise owner has a duty of reasonable care to maintain its premises in a reasonably safe condition. <u>Deibert v. Bauer Brothers Construction Co.</u>, 141 Ill.2d 430, 438 (Ill. 1990); <u>Clifford v. Wharton Business Group, L.L.C.</u>, 353 Ill.App.3d 34 (Ill. App. 1st Dist. 2004).

Illinois courts have adopted the "open and obvious" doctrine set forth in the Restatement (Second) of Torts, which provides, <u>inter alia</u>, that a premises owner has no duty to warn an invitee of a hazardous condition on the premises that is "open and obvious." <u>Deibert</u>, 141 Ill.2d at 436. However, an exception to this rule exists where the premises owner should have anticipated this harm. <u>Id.</u> The Supreme Court of Illinois has held in at least one situation that an employer and premises owner faced potential liability because it should have anticipated harm to a worker from an "open and obvious" hazard on the premises, given that the worker's job required him to encounter this harm. <u>LaFever v. Kemlite Co.</u>, 185 Ill.2d 380 (Ill. 1998). This has been labeled the "deliberate encounter exception" to the "open and obvious doctrine." <u>Id.</u>

In <u>Deibert</u>, the Supreme Court of Illinois wrote:

> **Generally, under section 343, as well as under common law, a possessor of land owes its invitees a duty of reasonable care to maintain the premises in a reasonably safe condition.** (<u>Ward</u>, 136 Ill.2d at 141, 146, 143 Ill.Dec. 288, 554 N.E.2d 223.) **Section 343A provides that a possessor of land cannot be liable for an invitee's injury if the condition of the land which caused the injury was known or obvious to the invitee.**

9

(Restatement (Second) of Torts § 343A(1), at 218 (1965).) **Section 343A, however, contains an exception: Even if the condition of the land was obvious to the invitee, a possessor of land may be liable if the possessor should have anticipated the harm.** (Restatement (Second) of Torts § 343A(1), at 218 (1965).) Under comment f to section 343A, one instance in which a possessor of land should anticipate such harm is when the possessor has reason to expect the invitee's attention may be distracted so that the invitee would not discover the condition despite its obviousness. Restatement (Second) of Torts § 343A, comment f, at 220 (1965).

A duty of care arises when the parties stand in such a relationship to one another that the law imposes upon defendant an obligation of reasonable conduct for the benefit of plaintiff. (Ward, 136 Ill.2d at 140, 143 Ill.Dec. 288, 554 N.E.2d 223.) **Whether defendant owes plaintiff a duty of care is a question of law for determination by the court.** (Ward, 136 Ill.2d at 140, 143 Ill.Dec. 288, 554 N.E.2d 223; Mieher v. Brown (1973), 54 Ill.2d 539, 541, 301 N.E.2d 307.) **Factors relevant in determining whether a duty exists include: the foreseeability of injury, the likelihood of injury, the magnitude of the burden of guarding against the injury, the consequences of placing that burden on the defendant, and the possible seriousness of the injury.** (Ward, 136 Ill.2d at 151, 143 Ill.Dec. 288, 554 N.E.2d 223.) The considerations expressed in sections 343 and 343A should be taken into account when deciding whether the injury was reasonably foreseeable. Ward, 136 Ill.2d at 151, 143 Ill.Dec. 288, 554 N.E.2d 223.

We agree with the decision of the circuit court and appellate court, and hold that **defendant owed plaintiff a duty of care. We conclude that the injury here was reasonably foreseeable.**

. . .

**Whether defendant breached its duty was a question of fact for resolution by the jury.** (See Ward, 136 Ill.2d at 156, 143 Ill.Dec. 288, 554 N.E.2d 223; Mieher, 54

10

Ill.2d at 544, 301 N.E.2d 307; Shaffer, 140 Ill.App.3d at 783, 95 Ill.Dec. 83, 489 N.E.2d 35.) **It was for the jury to decide whether defendant failed to exercise reasonable care in protecting plaintiff from harm and whether such failure was the proximate cause of plaintiff's injury.** "Whether in fact the condition itself served as adequate notice of its presence or whether additional precautions were required to satisfy the defendant's duty are questions properly left to the trier of fact." (Ward, 136 Ill.2d at 156, 143 Ill.Dec. 288, 554 N.E.2d 223.) Therefore, even though a possessor of land may have a duty to an invitee, the possessor may not be liable to the invitee if the jury finds that the possessor exercised reasonable care.

If defendant in the case at bar had taken some precaution, the jury could have found that the precaution fulfilled defendant's duty even though it did not prevent plaintiff's injury. For example, if defendant had told the workers not to throw debris off the balcony and plaintiff was aware or should have been aware of this action, the jury might have determined defendant had exercised reasonable care. Likewise, reasonable care does not necessarily mean defendant had to eliminate all of the ruts on the construction site. The jury could have found, however, that defendant did not exercise reasonable care because it did not take any action to warn of, prevent the creation of, or eliminate ruts in front of the bathroom-an area where defendant could reasonably expect many of the construction workers to walk. All of these circumstances the jury could take into account. In the case at bar, there is no indication defendant undertook any precautions, and the jury could certainly determine that the condition itself did not serve as adequate notice of the danger.

141 Ill.2d at 436-42. (Emphasis added.)

In LeFever, the Supreme Court of Illinois wrote:

**Whether the possessor of the premises should guard against harm to the invitee, despite the obviousness of the hazard, depends on two considerations.** According to committee comments appended to section 343A (Restatement (Second) of Torts § 343A, Comment f, at

11

220 (1965)), the possessor of the premises should anticipate harm to an invitee when the possessor "has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." Ward, 136 Ill.2d at 149-50, 143 Ill.Dec. 288, 554 N.E.2d 223. **Similarly, harm may be reasonably anticipated when the possessor "has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk."** Restatement (Second) of Torts § 343A, Comment f, at 220 (1965). Some courts refer to the second exception as the "deliberate encounter exception." Jackson v. Hilton Hotels Corp., 277 Ill.App.3d 457, 464, 214 Ill.Dec. 31, 660 N.E.2d 222 (1995).

185 Ill.2d at 391. (Emphasis added.) The LeFever court went on to conclude that an employer could reasonably foresee an "economic compulsion" driving an employee to deliberately encounter an open and obvious hazard on the job (i.e., for fear of being terminated or penalized for failing to perform the work involving the hazard). Id.

## II. Defendant ExxonMobil's Motion for Summary Judgment

### A. Defendant's Arguments

Illinois Construction Statute of Repose

ExxonMobil argues that the Illinois construction statute of repose bars Plaintiff's claims pertaining to unit heaters because Plaintiff's claim arises from exposure to asbestos insulation that was (1) installed during the initial construction of the facility, and (2) involved work constituting "improvements to real property" (i.e., replacing unit heaters) – and the statute requires these claims to be brought within ten years of the construction or the improvement's substantial completion or be absolutely and forever barred.

Motion to Strike Plaintiff's Declaration (Sham Affidavit)

ExxonMobil contends that Plaintiff's declaration is a "sham affidavit" with respect to its allegations pertaining to

12

ExxonMobil. Specifically, it contends that, at his deposition, Plaintiff testified he was not exposed to any asbestos during his second period of work at ExxonMobil, while his declaration states that he was so exposed, and fails to set forth any explanation for the conflicting testimony.

Product Identification / Causation

ExxonMobil argues that Plaintiff has not identified sufficient evidence to support an inference that plaintiff was actually exposed to and inhaled asbestos fibers in sufficient quantities to cause disease through his work on the Mobil premises.

Duty of Premises Owner re "Open and Obvious" Hazard

ExxonMobil contends that, under Illinois law, it had no duty to warn Plaintiff (an invitee) of "open and obvious" hazards. ExxonMobil contends that, because OSHA regulations pertaining to asbestos were enacted by June of 1972, Plaintiff and his employer were both on at least constructive notice of the hazards of asbestos such that ExxonMobil had no duty to warn Plaintiff. Therefore, ExxonMobil contends it cannot be liable to Plaintiff for any injury he experienced on ExxonMobil's premises.

Duty of Employer to Warn Independent Contractor

ExxonMobil argues that, under Illinois law, because Plaintiff worked for an independent contractor on ExxonMobil's premises, and because ExxonMobil did not control the means and method of Plaintiff's work on its premises, it owed no duty (as an employer) to Plaintiff and cannot be liable for any injuries he suffered during the course of that work.

**B. Plaintiff's Arguments**

Illinois Construction Statute of Repose

Plaintiff argues that (1) this issue should be remanded for a court in Illinois to decide, (2) even if it is not remanded, the Court should deny summary judgment because there are genuine issues of fact as to whether the work giving rise to the asbestos exposure took place during "improvements" to the facility – as opposed to "maintenance or repair" to which the statute of repose does not apply.

Motion to Strike Plaintiff's Declaration (Sham Affidavit)

Plaintiff does not respond to Defendant's argument that his declaration testimony pertaining to ExxonMobil is in direct conflict with his testimony and is a sham affidavit.

Product Identification / Causation

In response to Defendant's untimely motion, Plaintiff argues that there is sufficient product identification evidence regarding asbestos used on ExxonMobil's premises, and to which Plaintiff was exposed. In support of this argument, Plaintiff cites the following evidence:

- Deposition Testimony of Plaintiff
  Plaintiff testified that he worked at an ExxonMobil oil facility in the 1970s and again in the late 1980s, where he replaced 25 unit heaters, which required removing insulation from steam lines. He testified that he believed the insulation was made of asbestos. He testified that he process of removing the insulation created dust, and that h cleaned up the dust by sweeping it with a broom into a dustpan. He testified that he did not wear any protective gear during his first period of work at Mobil during the 1970s.

  (Pl. Ex. 1, Doc. No. 224-1 at 76-80, 213-14.)

- Declaration of Plaintiff
  Plaintiff's declaration states, "During a major shut-down at the Mobil facility that took place in the mid-1980s, Mobil employees were present to provide myself and other pipefitters with asbestos-containing gaskets. Mobil employees also observed me as I performed work that involved scraping and wire brushes during removal of gaskets and installing new gaskets."

  (Pl. Ex. 6, Doc. No. 224-6 ¶ 9.)

14

- Standard Oil Company Study (1937)
  Plaintiff points to a 1937 study performed by Standard Oil Company. Plaintiff contends that the study indicates that ExxonMobil knew of the dangers of asbestos at the time of Plaintiff's work on its facilities because the study states that its purpose is to provide guidance to the entire oil industry.

(Pl. Ex. 16, Doc. No. 224-16.)

Duty of Premises Owner re "Open and Obvious" Hazard

Plaintiff contends that, even if the asbestos hazard at its premises was "open and obvious," Illinois law holds Defendant liable despite the "open and obvious" doctrine, under an exception pertaining to "deliberate encounters." Plaintiff contends that his work required him to touch or otherwise be exposed to asbestos in the course of his work at Mobil and that this is a classic example of the deliberate encounter exception. In support of this argument, Plaintiff relies upon LaFever v. Kemlite Co., 185 Ill.2d 380 (Ill. 1998).

Duty of Employer to Warn Independent Contractor

Plaintiff contends that ExxonMobil's argument on this point is irrelevant because Plaintiff is not asserting a claim under Restatement (Second) of Torts § 414. Rather, Plaintiff's theories of premise owner liability are based on Restatement (Second) of Torts § 343 and Illinois case law.

**C. Analysis**

Illinois Construction Statute of Repose

As an initial matter, the Court considers Defendant ExxonMobil's argument that Plaintiff's claims are barred by the Illinois Construction Statute of Repose. First, Defendant has not identified evidence to establish that the asbestos and/or unit heaters at issue were installed during the initial construction of the facility. Second, neither the Supreme Court of Illinois nor any appellate court in Illinois has determined whether a "unit heater" is an "improvement to real property" under the statute. Defendant has not cited to any case with facts that are clearly analogous to the "unit heaters" at issue in this case. The statute of repose is an affirmative defense on which the

15

Defendant bears the burden, see Ocasek v. City of Chicago, 275 Ill.App.3d 628, 636 (Ill. App. 1st Dist. 1995). Because Defendant has failed to establish that the statute of repose is applicable to the claims brought against it, its motion for summary judgment on this basis is denied. See St. Louis, 153 Ill.2d at 5-6 (noting the propriety of vacating a summary judgment order where the record was not sufficiently developed to permit a determination as to whether the product at issue was an "improvement to real property" within the meaning of the statute).

Motion to Strike Plaintiff's Declaration (Sham Affidavit)

Next, the Court considers ExxonMobil's motion to strike Plaintiff's declaration with respect to its testimony pertaining to ExxonMobil. During his deposition, Plaintiff testified he was not exposed to any asbestos during his second period of work at ExxonMobil (during the late 1980's) and that all asbestos exposure there was during his first period of work there (during the 1970s). Plaintiff's subsequent declaration, in contradiction, states that he was exposed to asbestos gaskets during his second period of work there. Plaintiff has failed to set forth any explanation for the conflicting testimony, either in his declaration or in his brief. Therefore, Plaintiff's declaration testimony pertaining to ExxonMobil should be stricken as an inadmissible "sham affidavit." See Baer, 392 F.3d at 624.

Product Identification / Causation

Plaintiff alleges exposure to asbestos from insulation encountered by Plaintiff while working at Exxon Mobil's premises as an employee of an independent contractor (Hudson Heating & Plumbing). As a preliminary matter, the Court notes that, because Plaintiff is relying on direct, rather than circumstantial evidence, he need not satisfy the Lohrmann "frequency, regularity, and proximity test." Thacker, 151 Ill.2d at 359-64.

There is evidence that Plaintiff was exposed to asbestos from insulation he removed from steam lines while replacing unit heaters in 25 control rooms on ExxonMobil's premises, including during the sweeping of the insulation dust into the dustpan while not wearing any protective gear. Therefore, a reasonable jury could conclude that Plaintiff was exposed to asbestos from insulation while he was working on ExxonMobils's premises and that this insulation was a cause of his illness. Nolan, 233 Ill.2d at 431; Thacker, 151 Ill.2d at 354-55. This is true even without considering any of the evidence

pertinent to ExxonMobil that was set forth in Plaintiff's declaration. Having determined that Plaintiff has provided sufficient evidence to establish exposure to an asbestos product while working on Defendant ExxonMobil's premises, the Court turns next to the issue of Defendant's potential liability to Plaintiff as a premises owner and/or employer.

Duty of Premises Owner to Invitee re "Open and Obvious" Hazard

Under Illinois law, Plaintiff was an invitee on Defendant's premises because Defendant requested that he come work on its premises for a business-related purpose, and this work was to the benefit of Defendant. Sameer, 343 Ill.App.3d at 86. Therefore the Court considers the factors set forth in Deibert in order to determine whether Defendant had a duty toward Plaintiff:

There is evidence in the record that indicates that Defendant knew of the dangers of asbestos. It is undisputed that, during his first period of work at ExxonMobil, Defendant did not warn Plaintiff of those dangers or provide him any sort of safety device to utilize when working around the asbestos on its premises. It is at least somewhat likely that a worker would sustain an asbestos-related injury when doing work removing and replacing asbestos products such as insulation and gaskets without protective gear. It would have been relatively inexpensive to provide (or at least recommend) protective gear to workers on the premises, and/or to provide warnings to them. The consequences of asbestos exposure are quite serious, as they include pain, suffering, and even death. The consequence of placing on defendant the burden of warning would be to impose liability on defendant for those injuries that the jury deems products on its premises to have caused, and with respect to which the jury deems Defendant to have failed to satisfy its duty. After factoring in each of these various considerations, the Court concludes that Defendant ExxonMobil owed Plaintiff a duty of reasonable care to maintain the premises in safe condition for Plaintiff to work thereon. Deibert, 141 Ill.2d at 436-42. Whether Defendant satisfied this duty is a fact question for the jury, thus precluding summary judgment. Id.

With respect to Defendant's argument that it had no such duty because there is evidence suggesting that Plaintiff had notice of the hazard of asbestos such that it was a hazard that was "open and obvious" to Plaintiff, the Court agrees with and adopts the rationale of the Supreme Court of Illinois in holding

17

that the "deliberate encounter exception" to the "open and obvious doctrine" applies in this case. Because Plaintiff was a worker whose job duties required him to remove asbestos insulation, ExxonMobil could reasonably foresee an "economic compulsion" driving Plaintiff to encounter the asbestos hazards on its premises despite any awareness he may have had of those hazards. See LeFever, 185 Ill.2d at 391-92. Therefore, summary judgment in favor of Defendant is not warranted on the grounds of the "open and obvious" doctrine.

Duty of Employer to Warn Independent Contractor

Defendant's argument for summary judgment on grounds that it had no duty as an employer to warn Plaintiff of asbestos hazards is directed toward a theory of liability that is separate from that of Plaintiff's above theory of liability of Defendant as a premises owner (i.e, it seeks to eliminate an alternate theory of liability). Therefore, even assuming for the sake of argument that Defendant cannot be liable to Plaintiff as an employer for failing to warn of asbestos hazards (because he was not its employee but an employee of an independent contractor working for it), Defendant would not be entitled to complete summary judgment because it can still be liable as a premises owner. Accordingly, the case will be remanded to the transferor court regardless of whether Defendant had a duty as an employer to warn Plaintiff of asbestos hazards. The Court believes it is preferable to avoid reaching this issue of Illinois law since it is not necessary to do so in order to determine whether Defendant may be eliminated from this case and, thus, whether it must continue to defend against this action upon remand to the transferor court in Illinois. Furthermore, the Court has determined that there would be no decrease in judicial efficiency (nor any lessening of the incentive for the parties to settle) for the Court to decline to decide this issue, as the case will need to proceed toward trial on an alternate and independent theory of liability based on largely the same facts and evidence.

**D. Conclusion**

Defendant's motion for summary judgment on grounds of the Illinois Construction Statute of Repose is denied because Defendant has not satisfied its burden of establishing that it is entitled to this affirmative defense.

Defendant's motion to strike Plaintiff's declaration is granted because it contradicts Plaintiff's deposition testimony

E.D. PA NO. 2:11-63473-ER	**AND IT IS SO ORDERED.**

_____
EDUARDO C. ROBRENO, J.

and Plaintiff has not offered any explanation or justification for this apparent contradiction.

Defendant's motion for summary judgment on grounds of insufficient asbestos exposure evidence is denied because Plaintiff has identified sufficient evidence to support a finding of causation with respect to asbestos-containing product(s) on its premises.

Defendant's motion for summary judgment on grounds that it had no duty as a premises owner to warn Plaintiff of "open and obvious" hazards on its premises is denied because the "deliberate encounter" exception to the "open and obvious" doctrine is applicable to Plaintiff as a worker on Defendant's premises.

Defendant's motion for summary judgment on grounds that it had no duty as an employer to warn Plaintiff (as the employee of an independent contractor on its premises) is denied without prejudice because the Court has determined that there is no compelling reason to decide this issue of Illinois state law in the MDL, in light of the facts that the case will be remanded to the transferor court in Illinois on the alternate theory of liability as a premises owner, and there would be no decrease in judicial efficiency – or in the parties' incentive to settle this case – by allowing this issue to be considered by the transferor court at the time of trial.

19