IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHARLES KRIK,                  :    CONSOLIDATED UNDER
                               :    MDL 875
     Plaintiff,                :
                               :
                               :    Transferred from the Northern
     v.                        :    District of Illinois
                               :    (Case No. 10-07435)
                               :
BP AMERICA, INC.,              :
ET AL.,                        :    E.D. PA CIVIL ACTION NO.
                               :    2:11-63473-ER
     Defendants.               :

FILED MAY 16 2012 MICHAEL E. KUNZ, Clerk By_____Dep. Clerk

## O R D E R

**AND NOW**, this **16th** day of **May, 2012**, it is hereby

**ORDERED** that the Motion for Summary Judgment of Defendant BP

Amoco Chemical (Doc. No. 150) is **DENIED**.[1]

---

[1]   This case was transferred in February of 2011 from the
United States District Court for the Northern District of
Illinois to the United States District Court for the Eastern
District of Pennsylvania as part of MDL-875.

   Plaintiff Charles Krik ("Plaintiff") worked as a
boilerman and boilermaker during his Navy career, from 1954 to
1970. His duties included pipefitting and insulation work.
Plaintiff worked on repair ships for about six (6) years of his
naval career, including some work in the valve shop when
repairing the USS Tutuila. During his civilian career, Plaintiff
worked as a boilermaker and pipefitter, including work for two
unions in the Chicago area. In 1990, he received training in
asbestos removal to recognize what materials were asbestos.
Defendant BP Amoco Chemical ("BP Amoco") was the owner of two
worksites where Plaintiff worked.  The alleged exposure pertinent
to Defendant BP Amoco occurred while Plaintiff worked as an
employee of one of BP Amoco's contractors (Hudson Heating &
Plumbing) at the following location:

   •   Amoco Chemical Refinery - Joliet, IL

Plaintiff was diagnosed with lung cancer in November of 2008 and bilateral pleural plaque formations in June of 2011. He was deposed for two (2) days in July and August of 2011.

Plaintiff has brought claims against various defendants. Defendant BP Amoco has moved for summary judgment, arguing that (1) Plaintiff has failed to identify sufficient evidence to support a finding of causation with respect to any asbestos-containing product(s) on its premises, (2) it owed no duty to Plaintiff and cannot be liable for any injury he experienced during his work as the employee of an independent contractor working for BP Amoco, and (3) it is not liable to Plaintiff, who was an invitee on its premises. The parties agree that Illinois law applies.

## I.  Legal Standard

### A.  Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

2

B. <u>The Applicable Law</u>

The parties have agreed that Illinois substantive law applies. Therefore, this Court will apply Illinois law in deciding BP Amoco's Motion for Summary Judgment. See <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938); see also <u>Guaranty Trust Co. v. York</u>, 326 U.S. 99, 108 (1945).

C. <u>Product Identification/Causation Under Illinois Law</u>

This Court has previously set forth the standard for product identification evidence necessary to support a finding of causation under Illinois law. In <u>Goeken v. ACandS</u>, the Court wrote:

> In order to establish causation for an asbestos claim under Illinois law, a plaintiff must show that the defendant's asbestos was a "cause" of the illness. <u>Thacker v. UNR Industries, Inc.</u>, 151 Ill.2d 343, 354 (Ill. 1992). In negligence actions and strict liability cases, causation requires proof of both "cause in fact" and "legal cause." <u>Id.</u> "To prove causation in fact, the plaintiff must prove medical causation, i.e., that exposure to asbestos caused the injury, and that it was the defendant's asbestos-containing product which caused the injury." <u>Zickhur v. Ericsson, Inc.</u>, 962 N.E.2d 974, 983 (Ill. App. (1st Dist.) 2011)(citing <u>Thacker</u>, 151 Ill.2d at 354). Illinois courts employ the "substantial factor" test in deciding whether a defendant's conduct was a cause of a plaintiff's harm. <u>Nolan v. Weil-McLain</u>, 233 Ill.2d 416, 431 (Ill. 2009)(citing <u>Thacker</u>, 151 Ill.2d at 354-55). Proof may be made by either direct or circumstantial evidence. <u>Thacker</u>, 151 Ill.2d at 357. "While circumstantial evidence may be used to show causation, proof which relies upon mere conjecture or speculation is insufficient." <u>Id.</u> at 354.

> In applying the "substantial factor" test to cases based upon circumstantial evidence, Illinois courts utilize the "frequency, regularity, and proximity" test set out in cases decided by other courts, such as <u>Lohrmann v. Pittsburgh Corning Corp.</u>, 782 F.2d 1156 (4th Cir. 1986). <u>Thacker</u>, 151 Ill.2d at 359. In order for a plaintiff relying on circumstantial evidence "to prevail on the causation issue, there must

3

be some evidence that the defendant's asbestos was put to 'frequent' use in the [plaintiff's workplace] in 'proximity' to where the [plaintiff] 'regularly' worked." Id. at 364. As part of the "proximity" prong, a plaintiff must be able to point to "sufficient evidence tending to show that [the defendant's] asbestos was actually inhaled by the [plaintiff]." This "proximity" prong can be established under Illinois law by evidence of "fiber drift," which need not be introduced by an expert. Id. at 363-66.

In a recent case ([involving Ericsson, Inc. as a defendant], as successor to Anaconda), an Illinois court made clear that a defendant cannot obtain summary judgment by presenting testimony of a corporate representative that conflicts with a plaintiff's evidence pertaining to product identification – specifically noting that it is the province of the jury to assess the credibility of witnesses and weigh conflicting evidence. See Zickuhr, 962 N.E.2d at 985-86. In Zickhur, the decedent testified that he worked with asbestos-containing Anaconda wire from 1955 to 1984 at a U.S. Steel facility, and that he knew it was asbestos-containing because the wire reels contained the word "asbestos" on them – and the word "asbestos" was also contained on the cable and its jacket. A co-worker (Scott) testified that, beginning in the 1970s, he had seen cable spools of defendant Continental (which had purchased Anaconda) that contained the word "asbestos" on them. A corporate representatives (Eric Kothe) for defendant Continental (testifying about both Anaconda and Continental products) provided contradictory testimony that Anaconda stopped producing asbestos-containing cable in 1946 and that the word "asbestos" was never printed on any Anaconda (or Continental) cable reel. A second corporate representative (Regis Lageman) provided testimony, some of which was favorable for the plaintiff; specifically, that Continental produced asbestos-containing wire until 1984, that asbestos-containing wires were labeled with the word "asbestos," and that, although defendant did not presently have records indicating where defendant had sent its products, U.S. Steel had been a "big customer" of a certain type of defendant's wire that contained asbestos.

4

After a jury verdict in favor of the plaintiff, Defendant appealed, contending that (1) there was no evidence that defendant's cable/wire contained asbestos, and (2) there was no evidence that defendant's cable/wire caused decedent's mesothelioma. The appellate court affirmed the trial court (and upheld a jury verdict in favor of the plaintiff), holding that the issues of whether the cable and wire decedent worked with contained asbestos, and whether the defendant's cable and wire were the cause of the decedent's mesothelioma, were questions properly sent to the jury for determination. The appellate court noted that "the jury heard the evidence and passed upon the credibility of the witnesses and believed the plaintiff's witnesses over... Kothe." Id. at 986.

No. 10-68122, Doc. No. 197 (E.D. Pa. Apr. 3, 2012)(Robreno, J.).

Defendant urges this Court to reconsider the standard previously set forth, arguing that Illinois courts employ the Lohrmann "frequency, regularity, and proximity" test (or some variation thereof) in all cases, and not just those in which a plaintiff relies upon circumstantial evidence. Specifically, Defendant cites to Zickhur in support of this argument. The Court has considered Defendant's argument and the caselaw cited by various Defendants in this case.

The Court reiterates that Thacker is a decision of the Supreme Court of Illinois that directly addresses the product identification standard for asbestos cases brought under Illinois law. In Thacker, the decedent had testified to opening bags of asbestos of a kind not supplied by the defendant and had testified that he did not recall seeing the defendant's product anywhere in the facility. The only evidence identifying the defendant's product was testimony of a co-worker that the defendant's product had been seen in a shipping and receiving area of the facility, although the co-worker had not witnessed the product in the decedent's work area. In assessing the sufficiency of the plaintiff's evidence, the Court applied the "frequency, regularity, and proximity" test, noting that "plaintiffs in cases such as this have had to rely heavily upon circumstantial evidence in order to show causation." 151 Ill.2d at 357. After discussing the Lohrmann "frequency, regularity, and proximity" test, the Thacker court set forth its rationale for applying the test to the evidence at hand, noting that "[t]hese requirements attempt to seek a balance between the needs of the

5

plaintiff (by recognizing the difficulties of proving contact) with the rights of the defendant (to be free from liability predicated upon guesswork)." Id. at 359. This Court notes that the rationale of the Thacker court would not apply where a plaintiff relied upon direct evidence, as there would be no danger of "guesswork" and little (if any) difficulty of proving contact. The Court therefore concludes, as it has previously, that Thacker indicates that the "frequency, regularity, and proximity" test is applicable in cases in which a plaintiff relies on circumstantial evidence. This is not inconsistent with the holding of Lohrmann. See Lohrmann, 782 F.2d at 1162.

Defendant argues that the decision of the Supreme Court of Illinois in Nolan makes clear that the "frequency, regularity, and proximity" test is applicable in all cases, regardless of whether a plaintiff is relying on direct or circumstantial evidence. Nolan, however, did not directly address the product identification standard for asbestos cases under Illinois law. Rather, the question considered by the court was whether the trial court erred in excluding from trial all evidence of a plaintiff's exposure to asbestos from other manufacturers' products when a sole defendant was remaining at trial. Nolan, 233 Ill.2d at 428. In deciding that issue, the court rejected the intermediary appellate court's conclusion that, when the "frequency, regularity, and proximity" test is met, legal causation has been established. Although it is true that Nolan makes reference to the Lohrmann test without clarifying that it is only applicable in cases based upon circumstantial evidence, the Nolan court was not deciding whether the trial court had applied the proper product identification standard, and it cannot be fairly or accurately said that Nolan sets forth the Illinois standard for product identification, nor that it stands for the proposition that the "frequency, regularity, and proximity" test is applicable in all cases. Nothing in Nolan indicates that the Supreme Court of Illinois intended to alter the standard it set forth in Thacker.

Finally, the Court has considered Defendant's argument that Zickhur indicates that the "frequency, regularity, and proximity" test is applicable in all cases, regardless of the type of evidence relied upon by a plaintiff. As an initial matter, the Court notes that a decision from an intermediary appellate court will not, by itself, displace a rule of law issued by the highest court of the state. However, Zickhur does not contradict Thacker. Rather, the Zickhur court makes clear

that the "frequency, regularity, and proximity" test is not always applicable - noting that "the 'frequency, regularity and proximity' test _may_ be used...[and] that a plaintiff _can_ show exposure to defendant's asbestos" with it. 962 N.E.2d at 986 (emphasis added). Moreover, while it is true that Zickhur involved some pieces of direct evidence, it is worth noting that the court's resolution of the issue of the sufficiency of the evidence to withstand a motion for a directed verdict turned on its analysis of circumstantial evidence, in the context of direct and conflicting evidence presented by parties on both sides of the case. Therefore, it cannot be fairly or accurately said that Zickhur sets forth the Illinois standard for product identification, nor that it stands for the proposition that the "frequency, regularity, and proximity" test is applicable in all cases.

Having considered Defendant's argument seeking a modification of the standard applied by the MDL court for assessing the sufficiency of a plaintiff's evidence pertaining to product identification under Illinois law - and each of the cases relied upon by Defendant - the Court concludes that its recitation of the standard in Goeken is proper. Therefore, it will continue to utilize the standard set forth therein.

D. Duty of Premises Owner to Invitee re "Open and Obvious" Hazard on the Premises

Under Illinois law, a person is a business invitee on the land of another if (1) the person enters by express or implied invitation; (2) the entry is connected with the owner's business or with an activity conducted by the owner on the land; and (3) the owner receives a benefit. See Sameer v. Butt, 343 Ill.App.3d 78, 86 (Ill. App. 1st Dist. 2003); see also Dearing v. Baumgardner, 358 Ill.App.3d 540, 544 (Ill. App. 3d Dist. 2005). A premise owner has a duty of reasonable care to maintain its premises in a reasonably safe condition. Deibert v. Bauer Brothers Construction Co., 141 Ill.2d 430, 438 (Ill. 1990); Clifford v. Wharton Business Group, L.L.C., 353 Ill.App.3d 34 (Ill. App. 1st Dist. 2004).

Illinois courts have adopted the "open and obvious" doctrine set forth in the Restatement (Second) of Torts, which provides, inter alia, that a premises owner has no duty to warn an invitee of a hazardous condition on the premises that is "open and obvious." Deibert, 141 Ill.2d at 436. However, an exception to this rule exists where the premises owner should have

7

anticipated this harm. Id. The Supreme Court of Illinois has held
in at least one situation that an employer and premises owner
faced potential liability because it should have anticipated harm
to a worker from an "open and obvious" hazard on the premises,
given that the worker's job required him to encounter this harm.
LaFever v. Kemlite Co., 185 Ill.2d 380 (Ill. 1998). This has been
labeled the "deliberate encounter exception" to the "open and
obvious doctrine." Id.

In Deibert, the Supreme Court of Illinois wrote:

> **Generally, under section 343, as well as
> under common law, a possessor of land owes its invitees
> a duty of reasonable care to maintain the premises in a
> reasonably safe condition.** (Ward, 136 Ill.2d at 141,
> 146, 143 Ill.Dec. 288, 554 N.E.2d 223.) **Section 343A
> provides that a possessor of land cannot be liable for
> an invitee's injury if the condition of the land which
> caused the injury was known or obvious to the invitee.**
> (Restatement (Second) of Torts § 343A(1), at 218
> (1965).) **Section 343A, however, contains an exception:
> Even if the condition of the land was obvious to the
> invitee, a possessor of land may be liable if the
> possessor should have anticipated the harm.**
> (Restatement (Second) of Torts § 343A(1), at 218
> (1965).) Under comment f to section 343A, one instance
> in which a possessor of land should anticipate such
> harm is when the possessor has reason to expect the
> invitee's attention may be distracted so that the
> invitee would not discover the condition despite its
> obviousness. Restatement (Second) of Torts § 343A,
> comment f, at 220 (1965).
>
> A duty of care arises when the parties stand
> in such a relationship to one another that the law
> imposes upon defendant an obligation of reasonable
> conduct for the benefit of plaintiff. (Ward, 136 Ill.2d
> at 140, 143 Ill.Dec. 288, 554 N.E.2d 223.) **Whether
> defendant owes plaintiff a duty of care is a question
> of law for determination by the court.** (Ward, 136
> Ill.2d at 140, 143 Ill.Dec. 288, 554 N.E.2d 223; Mieher
> v. Brown (1973), 54 Ill.2d 539, 541, 301 N.E.2d 307.)
> **Factors relevant in determining whether a duty exists
> include: the foreseeability of injury, the likelihood
> of injury, the magnitude of the burden of guarding**

**against the injury, the consequences of placing that burden on the defendant, and the possible seriousness of the injury.** (Ward, 136 Ill.2d at 151, 143 Ill.Dec. 288, 554 N.E.2d 223.) The considerations expressed in sections 343 and 343A should be taken into account when deciding whether the injury was reasonably foreseeable. Ward, 136 Ill.2d at 151, 143 Ill.Dec. 288, 554 N.E.2d 223.

We agree with the decision of the circuit court and appellate court, and hold that **defendant owed plaintiff a duty of care. We conclude that the injury here was reasonably foreseeable.**

. . .

**Whether defendant breached its duty was a question of fact for resolution by the jury.** (See Ward, 136 Ill.2d at 156, 143 Ill.Dec. 288, 554 N.E.2d 223; Mieher, 54 Ill.2d at 544, 301 N.E.2d 307; Shaffer, 140 Ill.App.3d at 783, 95 Ill.Dec. 83, 489 N.E.2d 35.) **It was for the jury to decide whether defendant failed to exercise reasonable care in protecting plaintiff from harm and whether such failure was the proximate cause of plaintiff's injury.** "Whether in fact the condition itself served as adequate notice of its presence or whether additional precautions were required to satisfy the defendant's duty are questions properly left to the trier of fact." (Ward, 136 Ill.2d at 156, 143 Ill.Dec. 288, 554 N.E.2d 223.) Therefore, even though a possessor of land may have a duty to an invitee, the possessor may not be liable to the invitee if the jury finds that the possessor exercised reasonable care.

If defendant in the case at bar had taken some precaution, the jury could have found that the precaution fulfilled defendant's duty even though it did not prevent plaintiff's injury. For example, if defendant had told the workers not to throw debris off the balcony and plaintiff was aware or should have been aware of this action, the jury might have determined defendant had exercised reasonable care. Likewise, reasonable care does not necessarily mean defendant had to eliminate all of the ruts on the construction site. The jury could have found, however, that defendant did

9

> not exercise reasonable care because it did not take
> any action to warn of, prevent the creation of, or
> eliminate ruts in front of the bathroom-an area where
> defendant could reasonably expect many of the
> construction workers to walk. All of these
> circumstances the jury could take into account. In the
> case at bar, there is no indication defendant undertook
> any precautions, and the jury could certainly determine
> that the condition itself did not serve as adequate
> notice of the danger.

141 Ill.2d at 436-42. (Emphasis added.)

In LaFever, the Supreme Court of Illinois wrote:

> **Whether the possessor of the premises should guard against harm to the invitee, despite the obviousness of the hazard, depends on two considerations.** According to committee comments appended to section 343A (Restatement (Second) of Torts § 343A, Comment f, at 220 (1965)), the possessor of the premises should anticipate harm to an invitee when the possessor "has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." Ward, 136 Ill.2d at 149-50, 143 Ill.Dec. 288, 554 N.E.2d 223. **Similarly, harm may be reasonably anticipated when the possessor "has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk."** Restatement (Second) of Torts § 343A, Comment f, at 220 (1965). Some courts refer to the second exception as the "deliberate encounter exception." Jackson v. Hilton Hotels Corp., 277 Ill.App.3d 457, 464, 214 Ill.Dec. 31, 660 N.E.2d 222 (1995).

185 Ill.2d at 391. (Emphasis added.) The LaFever court went on to conclude that an employer could reasonably foresee an "economic compulsion" driving an employee to deliberately encounter an open and obvious hazard on the job (i.e., for fear of being terminated or penalized for failing to perform the work involving the hazard). Id.

## II. Defendant BP Amoco's Motion for Summary Judgment

### A. Defendant's Arguments

<u>Product Identification / Causation</u>

BP Amoco argues that Plaintiff has not identified sufficient evidence to support a finding of exposure to and/or causation with respect to any asbestos-containing product(s) on its premises.

<u>Duty of Premises Owner re "Open and Obvious" Hazard</u>

BP Amoco contends that, under Illinois law, Plaintiff was an invitee on the land, and, as such, would be required to prove that the source of his asbestos exposure was a "condition on the land." BP Amoco argues that the condenser in connection with which Plaintiff alleges exposure was not a "condition on the land" and that it, therefore, cannot be liable to Plaintiff as an invitee for any injury he experienced on BP Amoco's premises. In support of this assertion, BP Amoco relies upon <u>Gregory v. Beazer East</u>, 382 Ill.App.3d 178, 188, 892 N.E.2d 563, 574 (Ill. 2008) and Restatement (Second) of Torts § 343, as well as <u>Quinton v. Kuffer</u>, 582 N.E.2d 296 (Ill. App. 1991) and <u>Cochran v. George Sollitt Construction Co.</u>, 832 N.E.2d 355 (Ill. App. 2005).

During oral argument, in reply to Plaintiff's assertion that he is covered by the "deliberate encounter exception" to the "open and obvious doctrine," BP Amoco argued that Plaintiff is not entitled to that exception and that Defendant is protected by the "open and obvious" doctrine.

<u>Duty of Employer to Warn Independent Contractor</u>

In its brief, BP Amoco argues that, under Illinois law, because Plaintiff worked for an independent contractor on BP Amoco's premises, and because BP Amoco did not control the means and method of Plaintiff's work on its premises, it owed no duty to Plaintiff and cannot be liable for any injuries he suffered during the course of that work. In support of this assertion, BP Amoco relies upon <u>Gregory v. Beazer East</u>, 382 Ill.App.3d 178, 188, 892 N.E.2d 563, 574 (Ill. 2008) and Restatement (Second) of Torts § 414.

### B. Plaintiff's Arguments

Product Identification / Causation

Plaintiff argues that there is sufficient evidence of exposure by Plaintiff to asbestos used on BP Amoco's premises to support a finding of causation. In support of this argument, Plaintiff cites the following evidence:

- Deposition Testimony of Plaintiff
  Plaintiff testified that he worked at an Amoco Chemical facility in the 1970s, where he repaired condensers. He testified that he believed that the condensers were covered with asbestos. When asked what asbestos was disturbed during that work, he testified that "whenever you pull a head apart, you're pulling insulation off." He testified in a later deposition that he had removed some insulation from heads of a condenser and from the exterior of the heat exchanger itself. When asked later whether he had been told by anyone that this external insulation contained asbestos, he answered that he had not, and that "I don't recall that we tore up that much of it, anyway."

  He testified that he had to clean off gaskets when doors of heat exchangers were pulled apart. He testified that he believed the gaskets were made of "Garlock--or that type of material," and that he believed the gaskets had asbestos in them, though he couldn't guarantee it. He testified that these gaskets were supplied to him by BP Amoco.

  (Pl. Exs. 1-2, Doc. Nos. 224-1 and 224-2.)

- Declaration of Plaintiff
  Plaintiff's declaration states, "When I worked at BP Amoco, the insulation on the condensers that had to be removed was about 2 inches thick and covered the entire head. Removal of the insulation was done with hammers."

  (Pl. Ex. 6, Doc. No. 224-6 ¶ 8.)

12

- **Standard Oil Company Study (1937)**
  Plaintiff points to a 1937 study performed by Standard Oil Company, which Plaintiff states is the predecessor of BP Amoco. Plaintiff contends that the study indicates that BP Amoco knew of the dangers of asbestos at the time of Plaintiff's work on its facilities.

(Pl. Ex. 16, Doc. No. 224-16.)

<u>Duty of Premises Owner re "Open and Obvious" Hazard</u>

Plaintiff does not respond in detail to this argument, but states generally that Plaintiff's theories of premise owner liability are based on Restatement (Second) of Torts § 343 and Illinois case law.

Plaintiff's brief states on page 14 that its argument on this issue is set forth more fully in a separately-filed "Brief on Illinois premise liability." However, Plaintiff failed to file that brief. Plaintiff's counsel informed the Court that the separate and more detailed brief was mistakenly not filed due to oversight. Plaintiff filed it the day prior to the hearing.

<u>Duty of Employer to Warn Independent Contractor</u>

Plaintiff contends that BP Amoco's argument on this point is irrelevant because Plaintiff is not asserting a claim under Restatement (Second) of Torts § 414. Rather, Plaintiff's theories of premise owner liability are based on Restatement (Second) of Torts § 343 and Illinois case law.

**C. Analysis**

<u>Product Identification / Causation</u>

Plaintiff alleges exposure to asbestos from insulation and gaskets encountered by Plaintiff while working at BP Amoco premises as an employee of an independent contractor (Hudson Heating & Plumbing). As a preliminary matter, the Court notes that, because Plaintiff is relying on direct, rather than circumstantial evidence, he need not satisfy the <u>Lohrmann</u> "frequency, regularity, and proximity test." <u>Thacker</u>, 151 Ill.2d at 359-64. The evidence pertaining to each alleged source of exposure is considered separately below:

13

- Gaskets
  There is evidence that Plaintiff removed and replaced gaskets on a heat exchanger, including "cleaning" them off the door. There is evidence that the gaskets to which Plaintiff was exposed contained asbestos. There is evidence that the gaskets were supplied to Plaintiff by Defendant BP Amoco. Therefore, a reasonable jury could conclude that Plaintiff was exposed to asbestos from a gasket supplied by BP Amoco to Plaintiff while he was working on its premises and that the gasket was a cause of his illness. Nolan, 233 Ill.2d at 431; Thacker, 151 Ill.2d at 354-55.

- Insulation
  There is evidence that Plaintiff was exposed to asbestos from insulation he removed from heads of condensers while working on BP Amoco's premises. Therefore, a reasonable jury could conclude that Plaintiff was exposed to asbestos from insulation while he was working on BP Amoco's premises and that the gasket was a cause of his illness. Nolan, 233 Ill.2d at 431; Thacker, 151 Ill.2d at 354-55.

Having determined that Plaintiff has provided sufficient evidence to establish exposure to an asbestos product while working on Defendant BP Amoco's premises, the Court turns next to the issue of Defendant's potential liability to Plaintiff as a premises owner and/or employer.

Duty of Premises Owner to Invitee re "Open and Obvious" Hazard

As a preliminary matter pertaining to the issue of Defendant's duty to Plaintiff as a premises owner, the Court notes that Plaintiff's separate brief on the issue was not considered by the Court, as it was untimely.

Under Illinois law, Plaintiff was an invitee on Defendant's premises because Defendant requested that he come work on its premises for a business-related purpose, and this work was to the benefit of Defendant. Sameer, 343 Ill.App.3d at 86. Therefore the Court considers the factors set forth in Deibert in order to determine whether Defendant had a duty toward Plaintiff:

14

There is evidence in the record that indicates that Defendant knew of the dangers of asbestos. It is undisputed that, during his work on its premises, Defendant did not warn Plaintiff of those dangers or provide him any sort of safety device to utilize when working around the asbestos on its premises. It is at least somewhat likely that a worker would sustain an asbestos-related injury when doing work removing and replacing asbestos products such as insulation and gaskets without protective gear. It would have been relatively inexpensive to provide (or at least recommend) protective gear to workers on the premises, and/or to provide warnings to them. The consequences of asbestos exposure are quite serious, as they include pain, suffering, and even death. The consequence of placing on defendant the burden of warning would be to impose liability on defendant for those injuries that the jury deems products on its premises to have caused, and with respect to which the jury deems Defendant to have failed to satisfy its duty. After factoring in each of these various considerations, the Court concludes that Defendant BP Amoco owed Plaintiff a duty of reasonable care to maintain the premises in safe condition for Plaintiff to work thereon. Deibert, 141 Ill.2d at 436-42. Whether Defendant satisfied this duty is a fact question for the jury, thus precluding summary judgment. Id.

With respect to Defendant's argument that the hazard of any asbestos on the premises was "open and obvious" to Plaintiff and that Plaintiff is not covered by the "deliberate encounter exception," the Court agrees with and adopts the rationale of the Supreme Court of Illinois in holding that the "deliberate encounter exception" to the "open and obvious doctrine" applies in this case. Because Plaintiff was a worker whose job duties required him to remove asbestos insulation, BP Amoco could reasonably foresee an "economic compulsion" driving Plaintiff to encounter the asbestos hazards on its premises despite any awareness he may have had of those hazards. See LaFever, 185 Ill.2d at 391-92. Therefore, summary judgment in favor of Defendant is not warranted on the grounds that, as a premises owner, Defendant had no duty to warn Plaintiff because of, inter alia, the "open and obvious" doctrine.

The Court notes that it has considered the cases relied upon by Defendant and finds them unpersuasive. Cochran is distinguishable because, unlike the case at hand, Cochran involved a situation where the defendant did not know of the unsafe condition on the premises, thus precluding it from being

15

in a position to warn the plaintiff. Quinton was decided by an intermediate appellate court almost a decade prior to the ruling of the Supreme Court of Illinois in LeFever. Moreover, the alleged hazard in Quinton was a warning label, about which the court ruled there was no duty to warn. The court finds the hazard at issue in Quinton to be of a nature distinguishable from that of the asbestos at hand in the present case, and more similar to the hazardous "edge trim" that existed in LeFever.

Duty of Employer to Warn Independent Contractor

Defendant's argument for summary judgment on grounds that it had no duty as an employer to warn Plaintiff of asbestos hazards is directed toward a theory of liability that is separate from that of Plaintiff's above theory of liability of Defendant as a premises owner (i.e, it seeks to eliminate an alternate theory of liability). Therefore, even assuming for the sake of argument that Defendant cannot be liable to Plaintiff as an employer for failing to warn of asbestos hazards (because he was not its employee but an employee of an independent contractor working for it), Defendant would not be entitled to complete summary judgment because it can still be liable as a premises owner. Accordingly, the case will be remanded to the transferor court regardless of whether Defendant had a duty as an employer to warn Plaintiff of asbestos hazards. The Court believes it is preferable to avoid reaching this issue of Illinois law since it is not necessary to do so in order to determine whether Defendant may be eliminated from this case and, thus, whether it must continue to defend against this action upon remand to the transferor court in Illinois. Furthermore, the Court has determined that there would be no decrease in judicial efficiency (nor any lessening of the incentive for the parties to settle) for the Court to decline to decide this issue, as the case will need to proceed toward trial on an alternate and independent theory of liability based on largely the same facts and evidence.

**D. Conclusion**

Defendant's motion for summary judgment on grounds of insufficient asbestos exposure evidence is denied because Plaintiff has identified sufficient evidence to support a finding of causation with respect to asbestos-containing product(s) on Defendant's premises.

Defendant's motion for summary judgment on grounds that it had no duty as a premises owner to warn Plaintiff – especially

16

E.D. PA NO. 2:11-63473-ER					**AND IT IS SO ORDERED.**

*/s/ Eduardo C. Robreno*
_____
EDUARDO C. ROBRENO, J.

---

regarding "open and obvious" hazards on its premises – is denied because the "deliberate encounter" exception to the "open and obvious" doctrine is applicable to Plaintiff as a worker on Defendant's premises and, with respect to the asbestos hazard on its premises, the Court finds that Defendant had a duty toward Plaintiff of reasonable care.

     Defendant's motion for summary judgment on grounds that it had no duty as an employer to warn Plaintiff (as the employee of an independent contractor on its premises) is denied without prejudice because the Court has determined that there is no compelling reason to decide this issue of Illinois state law in the MDL, in light of the facts that the case will be remanded to the transferor court in Illinois on the alternate theory of liability as a premises owner, and there would be no decrease in judicial efficiency – or in the parties' incentive to settle this case – by allowing this issue to be considered by the transferor court at the time of trial.